No. 24-5176

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

DENA GRIFFITH, ET AL.,
individually and on behalf of those similarly situated,
Plaintiff-Appellant,

v.

AMAZON, INC.,
Defendant-Appellee.

_____

Appeal from the United States District Court
for the Western District of Washington
Civil Case No. 2:22-cv-00743-TL
(Honorable Tana Lin)

_____

**PLAINTIFF-APPELLANT'S OPENING BRIEF**

_____

ADAM J. BERGER
SCHROETER, GOLDMARK & BENDER
401 Union Street, Suite 3400
Seattle, WA 98101
Telephone: 206/622-8000

BORDE LAW PLLC
Manish Borde, WSBA #39503
600 Stewart St., 400
Seattle, WA 98101

LAW OFFICES OF
  RONALD A. MARRON
Ronald A. Marron (pro hac vice)
Michael T. Houchin (pro hac vice)
Lilach Halperin (pro hac vice)
651 Arroyo Drive
San Diego, CA 92103

*Attorneys for Plaintiff-Appellant*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...........................................................................................1

JURISDICTIONAL STATEMENT .................................................................3

STATEMENT OF THE ISSUES......................................................................3

STATEMENT OF THE CASE..........................................................................4

  I.  Factual Background ...............................................................................4

  II.  Procedural History ...............................................................................9

STANDARD OF REVIEW ............................................................................12

SUMMARY OF ARGUMENT ......................................................................12

ARGUMENT .................................................................................................15

  I.  Plaintiff Plausibly Alleged that Amazon Has Engaged in Deceptive and Unfair Conduct in Violation of the Washington Consumer Protection Act. ...............................................................................15

      A.  The FAC plausibly alleged that Amazon's advertising of free grocery delivery for Prime members contained deceptive misrepresentations and omissions. .......................................15

      B.  The FAC plausibly alleged that termination of the free Whole Foods delivery service without refund or recourse is unfair conduct under the WCPA. .......................................23

  II.  Plaintiff Plausibly Pled Breach of Contract...................................28

      A.  Plaintiff Plausibly Alleged that Amazon's Specific Promise of Free Whole Foods Market Delivery Was Integrated in the Prime Membership Agreement. .......................................28

i

**TABLE OF CONTENTS, continued**                                    **Page**

B.    Plaintiff Plausibly Alleged that Amazon Breached Its Prime
      Membership Agreement by Terminating Free Whole Foods
      Delivery without Consideration to Consumers. ..................................32

C.    The District Court's Conclusion that Amazon Could Unilaterally
      Terminate the Free Whole Foods Delivery Service Improperly
      Makes the Prime Membership Agreement an Illusory Contract. .......35

D.    Amazon's Agreement with Prime Customers Is Not a
      Terminable-At-Will Contract. ...........................................................39

III.  Plaintiff Plausibly Alleged Breach of the Duty of Good Faith
      and Fair Dealing. ...............................................................................41

CONCLUSION .......................................................................................49

# TABLE OF AUTHORITIES

**Page(s)**

## State Cases

*Accretive Tech. Grp., Inc. v. Adobe Sys., Inc.*,
　No. C15-309RSM, 2015 WL 4920079 (W.D. Wash. Aug. 17, 2015) ......... *passim*

*Adams v. Johnson*,
　355 F.3d 1179 (9th Cir. 2004) ............................................................................. 12

*Badgett v. Second State Bank*,
　807 P.2d 356 (Wash. 1991) ................................................................................. 42

*Bell Atl. Corp. v. Twombly*,
　550 U.S. 544 (2007) ..................................................................................... 12, 41

*Berg v. Hudesman*,
　801 P.2d 222 (Wash. 1990) ........................................................................... 29, 30

*Buyken v. Ertner*,
　205 P.2d 628 (Wash. 1949) ................................................................................. 29

*Capitol Pros, Inc. v. Vadata, Inc.*,
　No. C17-1410-JCC, 2018 WL 883870 (W.D. Wash. Feb. 14, 2018) ................. 39

*Cascade Auto Glass, Inc. v. Progressive Cas. Ins. Co.*,
　145 P.3d 1253 (Wash. Ct. App. 2006) ............................................................... 40

*Congrove v. W. Mesquite Mines, Inc.*,
　No. 08-CV-01191-H (PCL), 2010 WL 11508664 (S.D. Cal. Apr. 15, 2010) ...... 31

*Craig v. Pillsbury Non–Qualified Pension Plan*,
　458 F.3d 748 (8th Cir. 2006) ............................................................................. 42

*Encore D.E.C., LLC v. APES I, LLC*,
　No. 14-6006 RJB, 2015 WL 5007773 (W.D. Wash. Aug. 20, 2015) ................. 45

*Federal Trade Commission v. Neovi, Inc.*,
　604 F.3d 1150 (9th Cir. 2010) ........................................................................... 23

*Felice v. Clausen*,
　590 P.2d 1283 (Wash. Ct. App. 1979) ............................................................... 37

**TABLE OF AUTHORITIES, continued**                                    **Page(s)**

*FTC v. Crescent Publ'g Grp.*,
   129 F. Supp. 2d 311 (S.D.N.Y. 2001) ...................................................24

*Greenberg v. Amazon.com, Inc.*,
   553 P.3d 626 (Wash. 2024) ......................................................... 16, 23, 24

*Griffith v. Centex Real Estate Corp.*,
   969 P.2d 486 (Wash. Ct. App. 1998) ...................................................24

*Haywood v. Amazon.com, Inc* nor *Smale v. Cellco Partnership*
   2:22-CV-01094-JHC, 2023 WL 4585362 (W.D. Wash. July 18, 2023)..............26

*Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*,
   170 P.3d 10 (Wash. 2007) ........................................................... 20-21

*Interchange Assocs. v. Interchange, Inc.*,
   557 P.2d 357 (Wash. Ct. App. 1976) ............................................... 35, 36, 37, 38

*Kennewick Irrigation Dist. v. U.S.*,
   880 F.2d 1018 (9th Cir.1989)................................................................36

*Klem v. Washington Mut. Bank*,
   295 P.3d 1179 (Wash. 2013) ...................................................................23

*Marquez v. Amazon.com, Inc.*,
   69 F.4th 1262 (11th Cir. 2023).............................................. *passim*

*Matrixx Initiatives, Inc. v. Siracusano*,
   563 U.S. 27 (2011) .................................................................................46

*Microsoft Corp. v. Motorola, Inc.*,
   963 F. Supp. 2d 1176 (W.D. Wash. 2013) ...........................................43

*Nihon Ki-In Go Inst. of the W. v. Nihon Ki-In*,
   No. C12-0804RSL, 2012 WL 12941689 (W.D. Wash. June 27, 2012)..............31

*Norcal Waste Sys., Inc. v. Apropos Tech., Inc.*,
   No. C 06-3410 CW, 2006 WL 2319085 (N.D. Cal. Aug. 10, 2006) ..................31

*Pacific Coast Horseshoeing Sch., Inc. v. Kirchmeyer*,
   961 F.3d 1062 (9th Cir. 2020)................................................................12

**TABLE OF AUTHORITIES, continued**            **Page(s)**

*Panag v. Farmers Ins. Co.*,
   204 P.3d 885 (Wash. 2009) ...................................................................16

*Pinnacle Armor, Inc. v. United States*,
   648 F.3d 708 (9th Cir. 2011) ...............................................................12

*Puget Soundkeeper All. v. APM Terminals Tacoma, LLC*,
   No. C17-5016 BHS, 2020 WL 12583074 (W.D. Wash. Nov. 19, 2020)............44

*Rekhter v. State, Dep't of Soc. & Health Servs.*,
   323 P.3d 1036 (Wash. 2014) .................................................................42

*Ruiz-Torres v. Mercer Canyons, Inc.*,
   835 F.3d 1125 (9th Cir. 2016) ...............................................................18

*S.D. Deacon Corp. of Washington v. Gaston Bros. Excavating*,
   206 P.3d 689 (Wash. Ct. App. 2009) ......................................................30

*SAK & Assocs., Inc. v. Ferguson Const., Inc.*,
   357 P.3d 671 (Wash. Ct. App. 2015) ........................................... 47, 48

*Scribner v. Worldcom, Inc.*,
   249 F.3d 902 (9th Cir.2001) .................................................................42

*Skansgaard v. Bank of Am., N.A.*,
   896 F. Supp. 2d 944 (W.D. Wash. 2011) ................................. 42, 43, 44

*Smale v. Cellco*,
   547 F. Supp. 2d 1181 (W.D. Wash. 2008) ..............................................26

*Smartwings, a.s. v. Boeing Co.*,
   No. C21-918, 2022 WL 579342 (W.D. Wash. Feb. 25, 2022) .............. 42, 43, 46

*State v. E.A.J.*,
   67 P.3d 518 (Wash. Ct. App. 2003) .......................................................36

*State v. Hirocke*,
   17 Wash. App. 2d 1024, 2021 WL 1575231 (Wash. Ct. App. 2021) ........... 36, 37

*State v. Mandatory Poster Agency, Inc.*,
   398 P.3d 1271 (Wash. Ct. App. 2017) ........................................ *passim*

**TABLE OF AUTHORITIES, continued**  **Page(s)**

*Stein Distrib. Inc. v. Pabst Brewing Co.*, LLC,
No. C17-5150-RBL, 2017 WL 2313489 (W.D. Wash. May 26, 2017)..............41

*Taylor v. Shigaki*,
930 P.2d 340 (Wash. Ct. App. 1997) .......................................... 36, 39

*United Fin. Cas. Co. v. Coleman*,
295 P.3d 763 (Wash. Ct. App. 2012) ......................................... 28-29

*Walters v. Vitamin Shoppe Indus., Inc.*,
701 F. App'x 667 (9th Cir. 2017) ........................................... 22

*Weston Family P'ship v. Twitter, Inc.*,
29 F.4th 611 (9th Cir. 2022).................................... 3, 5, 7, 8

*Williams v. Gerber Prod. Co.*,
552 F.3d 934 (9th Cir. 2008)................................................ 22

*Young v. Toyota Motor Sales, U.S.A.*,
472 P.3d 990 (Wash. 2020) ................................................... 23

**Statutes**
15 U.S.C. § 45(n) ............................................................. 23
28 U.S.C. § 1291 .............................................................. 3
28 U.S.C. § 1332(d) ........................................................... 3
RCW 19.86...................................................................... 9
RCW 19.86.020................................................................. 15
RCW 19.86.090................................................................. 15

**Rules**
Fed. R. Civ. P. 9(b) ......................................................... 10

# INTRODUCTION

In 2018, Defendant-Appellee Amazon.com, Inc., one of the largest corporations in the world, acquired popular retail grocer Whole Foods Market. It then specifically promoted free delivery from Whole Foods Market as a benefit of membership in its Prime subscription service as a means of inducing consumers to sign up for Prime. This promotion had the desired effect, and helped Amazon significantly boost Prime membership *and* increase the annual cost of a Prime subscription in the three years following Amazon's acquisition of Whole Foods Market.

However, in October 2021, Amazon pulled the rug out from under its Prime members, and began charging them $9.95 for Whole Foods deliveries, even while it continued to advertise free grocery deliveries as a benefit of Prime. Prime members did not receive any refund or rebate of their annual subscription fee when Amazon made this change, nor did they have any ability to cancel their annual subscription and receive a refund in response to Amazon's action.

Plaintiff Dena Griffith is one of the consumers who was caught by Amazon's bait and switch advertising and Amazon's unilateral termination of the free Whole Foods delivery service. She signed up for Prime after seeing Amazon's ads for free Whole Foods delivery and was taken by surprise when Amazon surreptitiously

1

slipped in the $9.95 fee to one of her purchases. After seeing Amazon's ongoing advertisements of free grocery deliveries for Prime members, she brought this putative class action lawsuit to challenge Amazon's unfair and deceptive conduct and its breach of its Prime contract with her and other consumers.

At issue here is whether a huge multinational corporation can be held to account for its promises to its customers: whether Amazon's advertising, which promised free grocery delivery for Prime members, and did not mention Amazon's alleged authority to unilaterally drop this benefit at any time, had the capacity to mislead ordinary consumers within the meaning of the Washington Consumer Protection Act ("CPA"); whether Amazon's termination of the service without refund or recourse to annual Prime subscribers was unfair under the CPA; and whether Amazon breached its contract with Prime members, or at minimum breached its duty of good faith and fair dealing, by unilaterally removing the service. The district court erred in holding that Griffith did not state plausible claims on these grounds and in dismissing her complaint as a matter of law and undisputed fact and with no opportunity for discovery.

# JURISDICTIONAL STATEMENT

The district court had jurisdiction over this putative class action under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). On August 28, 2024, the district court entered final judgment in favor of Amazon.com, Inc. 2-ER-345-346. Plaintiff noticed her appeal on August 15, 2024. 2-ER-339-344. This Court has jurisdiction over Plaintiff's appeal under 28 U.S.C. § 1291. *See Weston Family P'ship v. Twitter, Inc.*, 29 F.4th 611, 618-19 (9th Cir. 2022) (holding that the Court had jurisdiction over a premature appeal where the district court subsequently entered a final judgment).

# STATEMENT OF THE ISSUES

1. Whether Plaintiff plausibly pled that Amazon engaged in deceptive and unfair conduct in violation of the Washington Consumer Protection Act where she alleged that Amazon charged Prime members $9.95 for deliveries from Whole Foods Markets while advertising free grocery deliveries, including from Whole Foods Markets, as a benefit of Prime membership, and where those advertisements omitted any notice or disclosure that Amazon could eliminate the free Whole Foods Market delivery service at any time?

2. Whether Plaintiff plausibly pled that Amazon engaged in unfair conduct in violation of the Washington Consumer Protection Act where she alleged that Amazon failed to provide any refund or recourse to annual Prime subscribers after terminating the free Whole Foods Market delivery service?

**3.** Whether Plaintiff plausibly pled a claim for breach of contract where she alleged that Amazon's promise of free Whole Foods Market deliveries for Prime members, as set forth in its advertising, became a term integrated into the Prime membership contract?

**4.** Whether the district court's construction of the Prime membership contract, which gives Amazon unfettered unilateral discretion to terminate any Prime member benefit at any time without recourse by the consumer, would improperly turn the agreement into an illusory contract?

**5.** Whether Plaintiff plausibly pled a claim for breach of the implied duty of good faith and fair dealing where she alleged that Amazon's termination of the free Whole Foods Market delivery service abused its discretion to remove benefits under the Prime contract, evaded the spirit of its bargain with Prime consumers, and willfully rendered imperfect performance under the contract, especially in light of its specific promotion of free Whole Foods Market deliveries as an inducement to Prime memberships and its surreptitious collection of the delivery fee.

**STATEMENT OF THE CASE**

## I.    Factual Background

Defendant Amazon.com, Inc. ("Amazon") is the world's largest online marketplace. 1-ER-203 (First Amended Consolidated Class Action Complaint, or "FAC") ¶ 5.

Amazon offers a service called Amazon Prime, which is a paid subscription service that gives members access to additional services otherwise unavailable or available at a premium to other Amazon customers. FAC ¶ 7, 1-ER-204. As of January 2024, Amazon charged its customers approximately $14.99 per month or

4

$139 per year for an Amazon Prime membership. *Id.* ¶ 8. The terms of Amazon's relationship with its Prime members are set forth in part in Amazon's Prime Terms and Conditions, FAC Ex. 1, 1-ER-224-228, and Amazon's Conditions of Use, 1-ER-96-103 (Buckley Decl., Ex. A).

In August 2017, Amazon acquired Whole Foods Market ("WFM"), a supermarket chain with approximately 500 stores in North America that is popularly known for its selection of organic foods. FAC ¶ 10, 1-ER-206. Following this acquisition, Amazon began advertising "FREE Delivery" and "FREE 2-Hour Grocery Delivery," including deliveries from Whole Foods Market, as a benefit of Prime membership. FAC ¶¶ 9, 11-12, 35, 1-ER-204-207, 213-214. Amazon made these representations on its website and in television and print advertisements. *Id*. ¶¶ 9, 11 (including photos of "representative examples" from website).

Amazon's acquisition of Whole Foods Market and promotion of free Whole Foods delivery corresponded with a tremendous growth in the number of Prime subscribers and the annual fees charged by Amazon for Prime membership. On May 11, 2018, Amazon raised the cost of an annual Prime membership from $99 to $119, with the price increase going into effect for renewing members on June 16, 2018. FAC ¶ 20, 1-ER-211. At that time, Amazon had approximately 100 million Prime members worldwide. *Id.* By April 2021, when the cost of an annual Prime

membership had climbed to $139, Amazon reported that Prime had more than 200 million subscribers worldwide. FAC ¶ 7-8, 1-ER-204.

Amazon understood that offering free Whole Foods delivery to Prime members increased the monetary value of Prime. In 2018, Amazon's Chief Financial Officer, Brian Olsavsky, claimed that the increased cost of a Prime membership was a natural consequence of the growing benefits associated with a Prime membership, which would include free deliveries from Whole Foods. FAC ¶ 21, 1-ER-211. Moreover, deliveries from Whole Foods Market proved wildly popular, especially during the Covid-19 pandemic, when Whole Foods Market deliveries more than tripled from 2019 to 2020. *Id.* ¶ 22.

Contrary to the advertised benefit of free deliveries, however, Amazon began charging Prime members a $9.95 "service fee" for all grocery deliveries from Whole Foods Market in approximately October 2021. FAC ¶ 13, 1-ER-207-208. Amazon did not reduce the cost of a Prime membership after ending the free Whole Foods delivery service, nor did it provide any refund of membership fees or recourse to existing Prime members. FAC ¶¶ 23, 34, 1-ER-211-213. Moreover, with very limited exceptions, Prime members with an annual membership could not cancel their subscription in response to Amazon's termination of the free Whole Foods Market delivery program until their next annual renewal date. *Id.*, ¶ 23; *see also*

FAC Ex. 1, 1-ER-225 (providing that Amazon will refund an annual Prime membership fee only if cancelled within three days of the start of the membership or if the subscriber has not used any Prime benefits before cancelling).

Despite the addition of the delivery service fee in October 2021, Amazon continued to advertise "Fast, free delivery" of groceries and "2-hour delivery on a wide selection of fresh ingredients" after the fee was imposed. FAC ¶ 35, 1-ER-213-214 (including photo). Plaintiff Dena Griffith saw at least one such advertisement on the Amazon website on or around October 21, 2022. *Id.*

The delivery service fee is not disclosed on the first page of the Whole Foods delivery section of Amazon's website, where various grocery items are displayed alongside the price of those items. FAC ¶¶ 15-16, 1-ER-208 (including photo). When a customer clicks on a grocery item, the next page states in opaque text "$9.95 for 2-hour delivery." FAC ¶ 17, 1-ER-209. (including photo). The text is in small font and is unlikely to be noticed by a reasonable consumer. *Id.* The fee is also presented in a smaller font and different color than the advertised price of the grocery item. *Id.* Once a customer clicks on the "add to cart" icon, there is a series of webpages asking for payment and delivery information before the customer arrives at the final "place your order" page. FAC ¶ 18, 1-ER-210 (including photo). On the "place your order"

page, the service fee is shown above the total price of delivery in small text that is unlikely to be noticed by a reasonable consumer. *Id.*

Plaintiff Dena Griffith's experience is representative of Amazon consumers. Griffith saw Amazon's online advertisements of free delivery of Whole Foods groceries to Prime members at various times in early and mid-2021. FAC ¶ 24, 1-ER-212. She saw the ads for "FREE Delivery" and "FREE 2-Hour Grocery Delivery" when visiting Amazon's platform on various occasions. *Id.* These ads were substantively identical or similar to the advertisements included in the FAC. *Id.* In June 2021, in reliance on these ads, Griffith purchased a one-year Prime membership subscription. *Id.* ¶ 25. She decided to subscribe to Prime to avail herself of free deliveries of merchandise during the COVID-19 pandemic, including free deliveries of groceries from Whole Foods, where she had shopped in person for many years. *Id.* ¶ 27.

On June 5, July 6, and October 7, 2021, Griffith made purchases of Whole Foods groceries totaling at least $40 each time, and she was not charged a service fee. FAC ¶¶ 28–30, 1-ER-212-213. However, on January 22, 2022, Griffith was charged a $9.95 service fee for a similar purchase. *Id.* ¶ 31. Griffith did not expect this service fee based on the ads she had viewed and the absence of a fee on her prior purchases. *Id.* She does not recall ever having received or seen a specific,

8

conspicuous notice of Amazon's addition of the delivery service fee. *Id.* ¶ 32. After discovering the service fee, Griffith did not place any further orders for delivery from Whole Foods. *Id.* She did, however, continue to see advertisements for free grocery delivery on the Amazon website. FAC ¶ 35, 1-ER-213-214.

Griffith's Prime subscription automatically renewed in June 2022 before she got around to cancelling it. *Id*. ¶ 36. Offended by the change in pricing for Whole Foods deliveries, she cancelled her subscription in June 2023. *Id.* ¶ 37.

## II.    Procedural History

Griffith filed her class action complaint in this matter in the Western District of Washington on June 7, 2022, alleging that Amazon had violated the Washington Consumer Protection Act ("WCPA"), RCW Ch. 19.86, and various California consumer protection laws, and had engaged in negligent misrepresentation, concealment/nondisclosure, fraud, and unjust enrichment in its promotion and subsequent termination of the free Whole Foods Market delivery benefit. On June 23, 2022, Griffith filed a motion to consolidate her action with *Pecznick v. Amazon.com, Inc.*, No. 2:22-cv-00743-TL (W.D. Wash.), which also alleged violation of the WCPA as well as breaches of contract and of the duty of good faith and fair dealing arising out of the same conduct and transactions. On September 27, 2022, the district court granted Griffith's motion to consolidate, designated *Pecznick*

9

as the lead case, recaptioned the case as *In re Amazon Service Fee Litigation*, and appointed Griffith's attorneys as interim class counsel. 1-ER-2-14.

On October 25, 2022, Griffith filed a Consolidated Class Action Complaint ("CAC") incorporating all causes of action from the original *Griffith* and *Pecznick* complaints as well as a claim for declaratory relief. 1-ER-15-58. On December 19, 2022, Amazon filed a motion to dismiss the CAC and strike the class allegations. 1-ER-59-93. On December 7, 2023, the district court granted Amazon's motion without hearing, dismissing the claims for breach of contract, unjust enrichment, declaratory relief, and violation of the California statutes without leave to amend. 1-ER-180-201. In dismissing the breach of contract claim, the court found that Amazon's Terms and Conditions allowed Amazon to remove Prime membership benefits at any time at its sole discretion and that this authority and Amazon's elimination of the free Whole Foods delivery benefit did not render the contract illusory because other Prime benefits remained. 1-ER-193-196. The court also dismissed Griffith's good faith and fair dealing claim but with leave to amend. 1-ER-195-196. Finally, the court dismissed Griffith's claims for violation of the WCPA and her common law fraud-based claims for failure to plead with particularity under Fed. R. Civ. P. 9(b) but granted Griffith leave to amend. 1-ER-190-192.

On January 8, 2024, Griffith filed a First Amended Consolidated Class Action Complaint ("FAC") asserting claims for violation of the WCPA and breach of the duty of good faith and fair dealing. Griffith did not include common law fraud or misrepresentation claims in the FAC. 1-ER-202-223. Amazon moved to dismiss the FAC on February 5, 2024. 1-ER-229-258. On June 18, 2024, the district court heard argument on the motion to dismiss, and on July 19, 2024, the court granted the motion. 2-ER-317-338. The court held that Griffith had pled her WCPA claims with sufficient particularity but that Amazon's alleged conduct was not deceptive or unfair and did not breach the duty of good faith and fair dealing as a matter of law. The court granted Griffith leave to amend regarding one theory under the WCPA – that Amazon's conduct misled consumers into believing that free Whole Foods Market delivery was guaranteed during the entirety of their Prime memberships -- finding that Griffith did not allege this theory in the FAC. The court dismissed all other claims and theories without leave to amend. *Id.*

Rather than amend, Griffith filed her notice of appeal on August 15, 2024. 2-ER-339-344. Upon Griffith's motion, the Court entered a final Judgment and Amended Judgment in Amazon's favor on August 28, 2024, curing any finality and timeliness issues with Griffith's appeal. 2-ER-345, 346.

## STANDARD OF REVIEW

This Court reviews "*de novo* the district court's grant of a motion to dismiss for failure to state a claim." *Pacific Coast Horseshoeing Sch., Inc. v. Kirchmeyer*, 961 F.3d 1062, 1067 n.3 (9th Cir. 2020). In reviewing the sufficiency of Griffith's complaint, this Court must accept "all allegations of material fact as true and construe them in the light most favorable" to Plaintiff. *See Pinnacle Armor, Inc. v. United States*, 648 F.3d 708, 714 (9th Cir. 2011) (internal quotation marks omitted). A plaintiff is required to allege only "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Dismissal is proper only "if it appears beyond doubt that the non-movant can prove no set of facts to support its claims." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

## SUMMARY OF ARGUMENT

The district court wrongly concluded that Griffith did not plausibly allege claims for deceptive and unfair conduct under the WCPA, for breach of contract, and for breach of the duty of good faith and fair dealing.

First, Griffith plausibly alleged that Amazon engaged in unfair and deceptive practices under the WCPA by representing that Prime members would receive "FREE Delivery" and "FREE 2-Hour Grocery Delivery," including deliveries from

Whole Foods. FAC ¶¶ 9-13, 1-ER-204-208. The FAC provided specific examples of Amazon's free delivery advertisements of the type seen by Griffith. FAC ¶¶ 9, 11, 35, 1-ER-204-207, 213-214. Griffith alleged that these advertisements are likely to deceive ordinary consumers because Amazon began charging its customers a $9.95 service fee "for all grocery deliveries from Whole Foods Market" in October 2021. FAC ¶ 13, 1-ER-207-208. Moreover, Amazon's advertisements did not disclose to consumers that Amazon reserved the right to unilaterally terminate this service at any time, without refund or recourse to Prime subscribers, a material omission that is itself deceptive and unfair under the CPA. These representations and omissions combined had the capacity to mislead consumers into believing they would receive free Whole Foods Market deliveries for the duration of their annual Prime memberships.

Second, Griffith plausibly alleged that Amazon acted unfairly under the WCPA by terminating the free Whole Funds delivery program and instituting a hidden delivery fee, without providing a refund to Prime members or opportunity to cancel their annual memberships. FAC ¶¶ 23, 61, 70, 1-ER-211-212, 218, 220.

Third, Griffith also plausibly alleged that Amazon's specific promise of free Whole Foods Market delivery became an integrated and material term in the contract between Prime members and Amazon, and that Amazon breached its contract with

13

her and other Prime members when it unilaterally terminated the service without consideration. CAC ¶¶ 121-125, 1-ER-40-41.

Finally, Griffith plausibly alleged that Amazon breached its duty of good faith and fair dealing by unilaterally terminating the free Whole Foods delivery service and failing to provide her with free Whole Foods delivery during the duration of her annual Prime subscription. FAC ¶¶ 69-70, 1-ER-220. In so doing, Amazon abused its discretion to remove the free Whole Foods delivery Prime benefit under the contract, evaded the spirit of its bargain with Griffith and other Prime customers, and willfully rendered imperfect performance under the contract, especially in light of its specific promotion of free Whole Foods deliveries as an inducement for Griffith and other consumers to join Prime and its surreptitious disclosure and collection of the delivery fee.

Griffith's experience typifies these claims. Griffith is a consumer who saw and reasonably relied on Amazon's online advertisements of free delivery of Whole Foods groceries for Prime customers, and she purchased an annual Prime membership in reliance on those ads. FAC ¶¶ 24-26, 1-ER-212. In January 2022, she was unexpectedly charged a $9.95 service fee for delivery when placing a Whole Foods delivery order. FAC ¶ 31, 1-ER-213. She does not recall having received or seen a specific conspicuous notice of Amazon's addition of a $9.95 service fee, and

after realizing she had been charged a fee, she did not place any further Wholes Foods orders for delivery. *Id.*, ¶ 32. In short, Griffith plausibly alleged that she was deceived by and relied upon Amazon's misleading bait and switch advertising and was injured by Amazon's breach of contract and the duty of good faith and fair dealing in terminating the free delivery service, which significantly diminished the value of the annual Amazon Prime subscription that she had already paid for. The district court erred in dismissing her claims on the pleadings and without any discovery.

## ARGUMENT

I. **Plaintiff Plausibly Alleged that Amazon Has Engaged in Deceptive and Unfair Conduct in Violation of the Washington Consumer Protection Act.**

A. **The FAC plausibly alleged that Amazon's advertising of free grocery delivery for Prime members contained deceptive misrepresentations and omissions.**

The Washington Consumer Protection Act prohibits deceptive or unfair acts and practices in trade or commerce and grants a private right of action to consumers injured by such practices. RCW 19.86.020, .090. Under the WCPA, "[d]eception exists if there is a misrepresentation, omission, or practice that is likely to mislead a reasonable consumer." *State v. Mandatory Poster Agency, Inc.*, 398 P.3d 1271, 1277 (Wash. Ct. App. 2017) (internal citations omitted). "A plaintiff need not show the

act in question was intended to deceive, only that it had the capacity to deceive a substantial portion of the public." *Panag v. Farmers Ins. Co.*, 204 P.3d 885, 894 (Wash. 2009). Whether a communication is deceptive depends on the "net impression" it creates, and even technically accurate information can be deceptive if the overall representation is likely to mislead a reasonable consumer. *Mandatory Poster Agency*, 398 P.3d at 1279.

"[W]here the facts are undisputed, the court will review whether the conduct is unfair or deceptive as a matter of law." *Greenberg v. Amazon.com, Inc.*, 553 P.3d 626, 649 (Wash. 2024). However, "where the underlying facts regarding the defendant's conduct is disputed," whether the conduct is unfair or deceptive is a question for the jury. *Id.* at 647.

Here, the representations and omissions in Amazon's advertising are likely to mislead reasonable consumers into believing that they would receive free Whole Foods Market shipping during the terms of their Prime membership. In addition, there are unknown facts regarding when Amazon made the decision to terminate the free Whole Foods delivery service and when it stopped advertising this specific benefit that made it inappropriate for the district court to dismiss Griffith's WCPA false advertising claim without opportunity for discovery and as a matter of law.

In the FAC, Griffith alleged that Amazon falsely advertised free WFM delivery as a benefit of Prime membership when, in fact, it began charging $9.95 for such service. Griffith provided specific examples of such advertisements in the FAC. Nevertheless, Amazon argued and the district court found that the company's advertising of free grocery delivery as alleged in the FAC was not deceptive for several reasons. None of Amazon's arguments warranted dismissal of Griffith's claims at the pleading stage.

First, Amazon argued, and the district court accepted, that the advertisements cited in the FAC are not misleading because they were true when made. *See* 2- ER-329-330. This is incorrect for several reasons. To begin, Amazon contends that the advertisement pictured at paragraph 9 of the FAC, 1-ER-205-206, was true when made because it was still offering "FREE 2-Hour Grocery Delivery" from Whole Foods at the time. However, in the absence of discovery, only Amazon knows when it stopped using this ad or when it decided to terminate or started contemplating termination of the free Whole Foods delivery service.[1] For example, if these advertisements continued even after Amazon knew it might terminate the benefit,

---

[1] The FAC alleges that Griffith saw this advertisement before Amazon started imposing the $9.95 service fee but does not state when Amazon stopped publishing the ads. Similarly, the FAC indicates that Amazon announced the termination of free delivery in September 2021 but does not allege when Amazon started contemplating or decided to end the service.

that would undoubtedly constitute deceptive bait and switch advertising under the WCPA. Thus, Amazon's argument about the veracity and non-misleading nature of these ads depends on facts outside the pleadings and the record, that remain to be determined in discovery, and that are plausibly raised by the FAC: namely, whether Amazon continued to disseminate advertisements promising or appearing to promise free Whole Foods deliveries *after* deciding to terminate the service.

Even aside from such questions, this advertisement omits critical information that would be material to an ordinary consumer about the promise of free Whole Foods deliveries: that Amazon asserts the right to terminate the service at any time without refunding or rebating the related Prime membership subscription, thereby significantly diminishing the value of the subscription. A reasonable consumer reading this ad could believe they would be entitled to free Whole Foods delivery for the duration of their Prime membership. Omission of the non-guaranteed nature of the benefit, whether or not Amazon had the present intent to terminate the program, was itself deceptive. *See e.g., Ruiz-Torres v. Mercer Canyons, Inc.*, 835 F.3d 1125, 1135-36 (9th Cir. 2016) (recognizing that non-disclosure of material

information about job opportunities stated a cognizable claim for deceptive conduct under the WCPA).[2]

Amazon similarly argued that the advertisement at paragraph 35 of the FAC, 1-ER-213-214, which Griffith saw in October 2022 *after* Amazon terminated free Whole Foods deliveries, is literally true because it only promised "free" "2-hour delivery" of "Groceries" without specifically mentioning Whole Foods. Amazon argued this promotion is not misleading because it refers to deliveries from another Amazon division, Amazon Fresh, which also is not mentioned in the ad. However, under the WCPA, "[d]eception exists if there is a misrepresentation, omission, or practice that is likely to mislead a reasonable consumer." *Mandatory Poster Agency, Inc.*, 398 P.3d at 1277 (internal citations omitted). Whether a communication is

---

[2] The district court incorrectly concluded that the FAC did not allege the theory that Amazon's advertising could mislead consumers into believing they would receive free Whole Foods delivery for the term of their annual Prime membership. The court could reach this conclusion only be reading the FAC narrowly and failing to draw all reasonable inferences in Griffith's favor. Indeed, the court recognized that Griffith alleged (1) that Amazon acted unfairly and deceptively by inducing consumers to sign up for Prime memberships with the promise of free Whole Foods Market delivery while later refusing to refund or permit cancellation of the annual memberships when free delivery was terminated, and (2) that Amazon "fail[ed] to perform under the contract by continuing to provide Plaintiff with free Whole Foods Market delivery … during the duration of Plaintiff's annual contract." 2-ER-327, 335 (quoting FAC ¶ 69). The only fair reading of the FAC is that it encompassed and asserted this theory regarding the capacity of Amazon's advertising to mislead ordinary consumers.

deceptive depends on the "net impression" it creates. *Id.* at 1279. Thus, even technically accurate information can be deceptive if the overall representation is likely to mislead a reasonable consumer. *Id.*

Here, a reasonable consumer could be misled into believing this ad promises free Whole Foods deliveries in light of Amazon's past promotion and provision of free Whole Foods Market deliveries, its well-publicized ownership of Whole Foods, and the omission from the ad of any qualifiers (*e.g.*, that it does not apply to Whole Foods or only applies to Amazon Fresh). Moreover, an ordinary consumer would not learn they had been misled until after they purchased a non-refundable Prime membership and were charged a service fee for a Whole Foods order. Taking the entire context into consideration, the FAC plausibly alleges that this ongoing advertisement of free groceries delivery is deceptive under the WCPA.

The district court nonetheless discounted Griffith's allegations relating to this advertisement because she saw it only after she discovered that Amazon was charging delivery fees and therefore could not have "relied on this ad." 2-ER-330. In so ruling, the district court fundamentally misunderstood the applicable standards under the WCPA. Reliance is not a required element under the WCPA, and it is not even necessary that the plaintiff was actually deceived. Rather, the test is whether a communication has the *capacity* to deceive a reasonable consumer. *See Indoor*

20

*Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*, 170 P.3d 10, 14 (Wash. 2007) (reversing summary judgment dismissal of WCPA claim even though plaintiff suspected nature of disputed fee was misrepresented before paying invoice). Indeed, the district court's approach would undermine the purpose of the WCPA's citizen's suit provision by disabling consumers from challenging ongoing deceptive practices once they themselves recognized the deception.

Finally, Amazon argued below that its advertisements are not likely to mislead a reasonable consumer because it disclosed the service fee during the check-out process and informed consumers of the provisional nature of its promises in the Prime Terms and Conditions. This argument misses the mark.

Amazon's "FREE Delivery" and "FREE 2-Hour Grocery Delivery" advertisements have the capacity to induce a reasonable consumer to sign up for the Prime service. As the FAC alleges, "Plaintiff and the Class were deceived by Defendant's unfair and deceptive misrepresentations of material fact in deciding to enter into contracts or continue doing business with Defendant" and "would have acted differently knowing that the Defendant charges a service fee in connection with grocery deliveries from Whole Foods Market." FAC ¶ 63, 1-ER-219-220. Consumers would not recognize the deceptive nature of the ads until they had paid for their non-refundable Prime subscription and incurred a service charge for Whole

Foods Market delivery orders. In other words, disclosure of the delivery fee at the time of order is simply too little, too late.

Moreover, even if Amazon elsewhere provided notice of the service fee or the provisional nature of its promise, this does not cure (as a matter of law, no less) the misleading nature of its advertisements that explicitly promise "FREE 2-Hour Grocery Delivery." *See Mandatory Poster Agency*, 398 P.3d at 1279 ("courts have recognized that disclaimers do not always cure the potential for deception"). As this Court has stated, "We disagree with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 939 (9th Cir. 2008). The same reasoning applies here. A reasonable consumer should not be expected to look beyond Amazon's misleading advertisements to discover the truth from small print buried in the Prime Terms. *See Walters v. Vitamin Shoppe Indus., Inc.*, 701 F. App'x 667, 670 (9th Cir. 2017) (plaintiff "did not have a duty to validate claims on the front of a product's label by cross-checking them against information contained in small print on the back[.]").

In sum, the FAC plausibly alleged that Amazon's advertising of free grocery delivery contained misleading representations and omissions that had the capacity

to deceive a reasonable consumer. The Court should reverse the district court's dismissal of Griffith's false advertising claim under the WCPA and remand for further proceedings on that claim.

> **B.** **The FAC plausibly alleged that termination of the free Whole Foods delivery service without refund or recourse is unfair conduct under the WCPA.**

The WCPA does not define "unfair" conduct, and the Washington Supreme Court has not "explore[d] in detail how to define unfair acts." *Klem v. Washington Mut. Bank*, 295 P.3d 1179, 1187 (Wash. 2013). Rather, the statute is intended to be flexible and must be liberally construed to reach any unfair or deceptive acts in the conduct of trade or commerce. *Young v. Toyota Motor Sales, U.S.A.*, 472 P.3d 990, 995–96 (Wash. 2020). Business practices can be unfair without being deceptive. *Klem*, 295 P.3d at 1187.

"[A] practice is unfair if it causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and is not outweighed by countervailing benefits." *Klem*, 295 P.3d at 1187 (quoting 15 U.S.C. § 45(n)). "An act or practice can cause 'substantial injury' by doing a 'small harm to a large number of people….'" *Federal Trade Commission v. Neovi, Inc.*, 604 F.3d 1150, 1157 (9th Cir. 2010) (internal citations omitted) (quoted approvingly in *Greenberg*, 553 P.3d at 641). However, the substantial injury test is not the only way

23

of proving unfair conduct under the CPA; rather, "there may even be additional ways that a plaintiff can show that an act or practice that is unregulated by statute is unfair," and a "plaintiff needs to show only that the defendant's conduct is in violation of public interest." *Greenberg*, 553 P.3d at 641. In making this assessment, courts must view the totality of a defendant's conduct, including its acts before, during, and after the transactions at issue, and the impact those actions had on consumers. *See FTC v. Crescent Publ'g Grp.*, 129 F. Supp. 2d 311, 322 (S.D.N.Y. 2001) (finding "free tours" promotion unfair based on manner in which defendants obtained credit card numbers and difficulty consumers had challenging charges); *Griffith v. Centex Real Estate Corp.*, 969 P.2d 486, 492 (Wash. Ct. App. 1998) (stating that the "CPA applies to activities both before and after a sale").

Here, Griffith alleged that Amazon acted unfairly by inducing consumers to sign up for annual Prime subscriptions with the promise of free Whole Foods delivery, then refusing to refund or permit members to cancel those subscriptions when it unilaterally terminated the service with little or no warning. This plausibly alleged an unfair business practice under the WCPA because it caused substantial injury to a vast number of consumers that they could not reasonably avoid by themselves, and the only countervailing benefit was to Amazon's bottom line. Amazon's conduct undermined the public interest in securing the fulfillment of

reasonable consumer expectations, preventing bait and switch promotions, and protecting consumers from the unilateral exercise of unequal bargaining and marketplace power by mega-corporations.

The district court nonetheless concluded that Amazon's conduct was not unfair because its termination of the free Whole Foods delivery service was permitted by the Prime Terms and that consumers could reasonably avoid the harm by reading the Terms and declining to sign up for Prime membership in the first place. 2- ER-334. In so holding, the district court erred both legally and factually.[3] First, the court erred by concluding that the substantial injury test is the only standard for unfair conduct under the WCPA. Second, and more fundamentally, the court erred by failing to apprehend that a mega-corporation behaves unfairly and against the public interest by offering a specific inducement for consumers to sign up for an annual membership, not disclosing the conditional nature of the inducement in the promotion, and not allowing the consumers any recourse when it unilaterally changes the terms of the deal and terminates the benefit. Put another way, a corporation cannot simply avoid liability for unfair conduct under the WCPA by burying a disclosure of the contingent nature of its promises in terms and conditions

---

[3] This is even assuming that Amazon could terminate the free Whole Foods delivery service without breaching its contract with Prime customers, an incorrect conclusion as explained below.

that ordinary consumers do not read. That is precisely the kind of *caveat emptor* defense the WCPA was adopted to cure.

Nor do the cases cited by the district court counsel a different conclusion. Neither *Haywood v. Amazon.com, Inc.* nor *Smale v. Cellco Partnership* involved any deceptive conduct, specific inducement, or midstream termination of a promised benefit. Rather, in *Smale* there was nothing deceptive about the company's billing, and its agreement "unambiguously" disclosed it could add charges "related to [its] governmental costs." 547 F. Supp. 2d 1181, 1186 (W.D. Wash. 2008). And in *Haywood*, Amazon's conditions of use "expressly provide" it could ban an individual from posting reviews for violation of its community guidelines. No. 2:22-CV-01094-JHC, 2023 WL 4585362, at *7 (W.D. Wash. July 18, 2023).

Similarly, *Marquez v. Amazon.com, Inc.* did not involve any claim of false advertising. 69 F.4th 1262, 1272 (11th Cir. 2023). Rather, the WCPA claim in *Marquez* was completely derivative of the contract claim in that case. As the Eleventh Circuit explained, the *Marquez* plaintiffs alleged that Amazon violated the WCPA because it "breach[ed] its contract" with Prime members and "'the least sophisticated consumer' was 'likely to [be] misl[ed]' *by the contract's terms*." 69 F.4th at 1275 (emphasis added). By contrast, the WCPA allegations in this case are independent of the Prime Terms and Conditions and do not rely on any assertion

they are misleading. Instead, Griffith's claims hinge on Amazon's misleading advertising of free WFM delivery and its unfair conduct in terminating this service without refund of recourse to Prime subscribers notwithstanding that specific inducement. Griffith's fraudulent inducement and unfair termination claims can be adjudicated without finding the terms of the Prime contract deceptive and thus the claims *sub judice* are distinguishable from the WCPA claims in *Marquez*.[4]

In short, Griffith plausibly alleged that Amazon acted unfairly by specifically promoting free Whole Foods market delivery as an inducement to Prime membership, then unilaterally terminating that service without refund or consideration to consumers, significantly diminishing the value of the membership they had already paid for. The Court should reverse the district court's order dismissing this claim without discovery and as a matter of law and remand for further proceedings.

---

[4] Further distinctions between the facts and claims in the two cases are discussed in Section II.B *infra*, including the fact that *Marquez* involved an emergency, temporary suspension of certain services, compared to the permanent termination of benefits here.

## II.     Plaintiff Plausibly Pled Breach of Contract.

### A.     Plaintiff Plausibly Alleged that Amazon's Specific Promise of Free Whole Foods Market Delivery Was Integrated in the Prime Membership Agreement.

Griffith also alleged a plausible claim for breach of contract, and the district court erred in concluding otherwise.

In the CAC, Griffith alleged that "Plaintiff and Class Members entered into a contract with Amazon for a Prime membership that included free Whole Foods Market delivery with a minimum $35 purchase for a yearly fee of $119" and that "Amazon's representations that it offers 'FREE Delivery' and 'FREE 2-hour grocery delivery' from Whole Foods Market are terms that were integrated into the Amazon prime membership contract." CAC ¶ 121, 1-ER-40.

Thus, Griffith clearly alleged that free Whole Foods delivery was a term that was integrated into the applicable contract. "Under Washington law, the parol evidence rule requires that 'all conversations and parol agreements between the parties prior to a written agreement are so merged therein that they cannot be given in evidence for the purpose of changing the contract or showing an intention or understanding different from that expressed in the written agreement.'" *Accretive Tech. Grp., Inc. v. Adobe Sys., Inc.*, No. C15-309RSM, 2015 WL 4920079, at *4 (W.D. Wash. Aug. 17, 2015) ("*Accretive*") (quoting *United Fin. Cas. Co. v.*

28

*Coleman*, 295 P.3d 763, 767-68 (Wash. Ct. App. 2012) and *Buyken v. Ertner*, 205 P.2d 628, 632 (Wash. 1949)). "The parol evidence rule, however, 'only applies to a writing intended by the parties as an 'integration' of their agreement, i.e. a writing intended as a final expression of the agreement's terms.'" *Id*. (quoting *Berg v. Hudesman*, 801 P.2d 222, 230 (Wash. 1990)). "Where a contract is only partially integrated, i.e., the writing is a final expression of those terms which it contains but not a complete expression of all terms agreed upon, the terms not included in the writing may be proved by extrinsic evidence provided that the additional terms are not inconsistent with the written terms." *Id*.

In *Accretive,* the defendant argued that the court could not consider extra-contractual representations because the contract was fully integrated. 2015 WL 4920079, at *4. Here, Amazon cannot argue that the applicable contract is fully integrated. Neither the Amazon Prime Terms and Conditions nor the Amazon Conditions of Use contain an integration clause. *See* FAC, Ex. 1, 1-ER-224-228; 1-ER-96-103 (Buckley Decl., Ex. A). Indeed, the Conditions of Use expressly contemplate that other terms may be added to the agreement. They state, "Amazon makes no representations … as to the operation of the Amazon services … *unless otherwise specified in writing*." 1-ER-100. Here, Griffith has alleged that Amazon

did specify in writing, in its advertisements, the promise to provide free Whole Foods delivery to Prime customers.

Moreover, "integration of a contract is generally a question of fact." *Accretive*, 2015 WL 4920079, at *5 (citing *S.D. Deacon Corp. of Washington v. Gaston Bros. Excavating*, 206 P.3d 689, 693 (Wash. Ct. App. 2009)). "In determining whether an agreement is integrated, 'the court may consider evidence of negotiations and circumstances surrounding the formation of the contract.'" *Id.* (citations omitted). In this case, such evidence would include Amazon's representations about "FREE Delivery" and "FREE 2-hour grocery delivery" from Whole Foods Market.

As in *Accretive,* "[w]hether or not the Agreement has been fully integrated is in dispute." *Id.* There, the court explained the limits on its review in such circumstances:

> [The court] cannot, at this juncture, 'consider evidence of negotiations and circumstances surrounding the formation of the contract,' nor can it determine questions of fact. Instead, the Court must accept as true the facts of the Complaint. The Court thus assumes that the Agreement was partially integrated for purposes of this 12(b)(6) Motion, allowing for consideration of extrinsic terms not inconsistent with the written terms of the Agreement.

*Id.* (citing *Berg*, 801 P.2d at 230). Likewise, on Amazon's Rule 12(b)(6) motion to dismiss in this case, the district court should have found plausible Griffith's allegations that "FREE Delivery" and "FREE 2-hour grocery delivery" from Whole

30

Foods Market are terms that are integrated into her contract with Amazon. *See*, *e.g.*, *Nihon Ki-In Go Inst. of the W. v. Nihon Ki-In*, No. C12-0804RSL, 2012 WL 12941689, at *1 (W.D. Wash. June 27, 2012) ("[t]aking plaintiff's allegations as true, the contract between the parties was partially integrated, with the oral component supporting plaintiff's claims."); *Norcal Waste Sys., Inc. v. Apropos Tech., Inc.*, No. C 06-3410 CW, 2006 WL 2319085, at *5 (N.D. Cal. Aug. 10, 2006) ("[I]n order for the Court to decide, as Defendant urges, that the License Agreement was intended by the parties to be a final and complete expression of their agreement, the Court would have to consider preliminarily all credible parol evidence, including all evidence relating to the allegations in Plaintiff's complaint. Such an analysis is not possible on Defendant's Rule 12(b)(6) motion."); *Congrove v. W. Mesquite Mines, Inc.*, No. 08-CV-01191-H (PCL), 2010 WL 11508664, at *4 (S.D. Cal. Apr. 15, 2010) ("For purposes of this motion to dismiss, the Court cannot conclude that the Agreement between the parties is considered integrated.").

In addition, Griffith also plausibly alleged that "[t]he imposition of the $9.95 service fee constituted a modification of the contract with Amazon without consideration to Plaintiff and the Class Members." CAC ¶ 123, 1-ER-40. Thus, Griffith stated a plausible *prima facie* case that Amazon breached its contract with her.

**B.** **Plaintiff Plausibly Alleged that Amazon Breached Its Prime Membership Agreement by Terminating Free Whole Foods Delivery without Consideration to Consumers.**

In its motion to dismiss, Amazon disputed this allegation on two grounds.

First, Amazon argued and the district court agreed that the company acted consistently with, and did not modify, the Prime Terms. 1-ER-194. This is incorrect. Although Amazon's Prime Terms and Conditions provide that "[f]rom time to time, Amazon may choose in its sole discretion to add or remove Prime membership benefits" and "may in our discretion change these Terms … or any aspect of Prime membership, without notice to you," FAC, Ex. 1, 1-ER-226, the "FREE Delivery" and "FREE 2-hour grocery delivery" from Whole Foods Market are terms that are integrated into the contract as discussed above. Amazon did not simply "add or remove benefits" or change its terms. Instead, Amazon breached the contract by beginning to charge an additional service fee above and beyond the price of Prime membership for the Whole Foods Market delivery service.[5]

In reaching a contrary conclusion, the district court relied on the Eleventh Circuit decision in *Marquez v. Amazon.com, Inc.*, 69 F.4th at 1262. Although there may be some superficial resemblance between the breach of contract claims in

---

[5] For this reason, the "FREE Delivery" and "FREE 2-hour grocery delivery" terms are not inconsistent with the terms of the written contract and may be considered integrated. *See Accretive*, 2015 WL 4920079, at *5.

*Marquez* and here, the two cases are factually and legally distinct in significant ways. *Marquez* therefore provides no meaningful support for the district court's order here.

To begin, the gravamen of the alleged wrongdoing is fundamentally different in the two cases. *Marquez* arose out of Amazon's decision to temporarily suspend "Rapid Delivery" of non-essential items at the start of the COVID-19 pandemic to prioritize delivery of medical supplies, food, and other essential goods. 69 F.4th at 1266. The emergent nature of the situation permeates the court's analysis. *Id.* at 1266, 1268, 1275 n.14, 1276. By contrast, the core of Griffith's allegations here are that Amazon induced her and other consumers to purchase Prime memberships with the specific promise of free Whole Foods Market delivery, a promise that became integrated into the membership contract, and then breached that promise by charging a $9.95 delivery fee. Imposition of that delivery fee was not an emergency response to an unprecedented global pandemic; it was corporate profit-taking through breach of contract and bait-and-switch advertising.

In addition, while the Eleventh Circuit "assume[d] that Amazon's contract with Prime subscribers included a promise to provide Rapid Delivery," it also noted that Rapid Delivery "is *not a contract term*." 69 F.4th at 1269, 1266 n.1 (emphasis added). In other words, the *Marquez* plaintiffs did not and could not point to any contract term that guaranteed them Rapid Delivery. By contrast, Griffith alleged here

that Amazon's advertised promise of "free" Whole Foods delivery was integrated into the Prime contract and that Amazon breached this specific promise when it began charging Whole Foods delivery fees.

Next, *Marquez* found that Amazon had the "right to limit Rapid Delivery" *temporarily* to essential items during the early days of the pandemic, in response to the public emergency and pursuant to contractual terms that allowed it to remove membership benefits or provide them on an "as is" and "as available" basis. 69 F.4th at 1270-71. Here, however, Amazon *permanently* eliminated a specifically promised benefit not because of any exigent circumstance but to boost its own profits. Indeed, there can be no argument that free Whole Foods delivery was no longer "available" – Amazon continued to provide the delivery service, it just began charging for it.

Finally, *Marquez* reasoned that the temporary limitation on Rapid Delivery was not unconscionable and did not breach the contract because Prime subscribers had "the option to cancel their Prime membership *at any time*." 69 F.4th at 1273. By contrast, Griffith's complaint points out the factual flaws in this reasoning. Prime subscribers with annual memberships, like Griffith, could not cancel their membership at any time. Rather, Prime members who used any Prime benefit more than three days after the start of their annual membership could not cancel their membership or receive a refund in response to the termination of the "free" Whole

Foods delivery program until their next annual renewal date. CAC ¶ 23, 1-ER-25; FAC ¶ 23, 1-ER-211-212; FAC, Ex. 1, 1-ER-225. The Eleventh Circuit's conclusions regarding breach of contract and unconscionability are undermined by its failure to either be apprised of or acknowledge this severe constraint on consumers' ability to cancel their Prime memberships.

In sum, Griffith plausibly alleged that Amazon breached its contract with Prime members by terminating a specifically promised and integrated benefit term without consideration. The Court should reverse the district court's dismissal and remand for further proceedings on this claim.

> **C.** **The District Court's Conclusion that Amazon Could Unilaterally Terminate the Free Whole Foods Delivery Service Improperly Makes the Prime Membership Agreement an Illusory Contract.**

To the extent Amazon argues, and the district court here agreed, that the company has unconditional discretion to eliminate any and all Prime benefits at any time, including those specifically promised and that are material in inducing a consumer to enter into a Prime contract, the Prime contract would be illusory. *See Interchange Assocs. v. Interchange, Inc.*, 557 P.2d 357, 359 (Wash. Ct. App. 1976), "When an absolute right to cancel a promised performance is retained, the promise is illusory and insufficient consideration to support enforcement of the return

promise." *Id*. Here, of course, Griffith already performed her "return promise" by paying for a non-refundable annual Prime membership. *Id*. Allowing Amazon to "unilaterally avoid" its corresponding obligation to provide free WFM delivery would render the contract illusory, a result that "cannot be sanctioned" under Washington law. *Taylor v. Shigaki*, 930 P.2d 340, 344 (Wash. Ct. App. 1997) (citing *Kennewick Irrigation Dist. v. U.S.,* 880 F.2d 1018, 1032 (9th Cir.1989)) ("If a client is allowed to use an attorney's services to obtain a settlement offer and then fire the attorney before accepting to escape paying a contingency fee, the obligation to pay the fee could be unilaterally avoided. Such a result cannot be sanctioned.").

The district court nonetheless concluded that the contract is not illusory because Prime subscribers still get *some* benefits even if Amazon can cancel any service or suite of services at any time. 1-ER-195-196. This conclusion is inconsistent with Washington law. A "'promise' may be illusory because it is so indefinite that it cannot be enforced, or because provisions contained in the promise make its performance optional or entirely discretionary on the part of the promisor." *State v. Hirocke*, 17 Wash. App. 2d 1024, 2021 WL 1575231, at *3 (Wash. Ct. App. 2021) (unpublished) (quoting *State v. E.A.J.*, 67 P.3d 518, 521 (Wash. Ct. App. 2003)). "An 'illusory promise' is a purported promise that actually promises nothing because it leaves to the speaker the choice of performance or nonperformance...

When the provisions of the supposed promise leave the promisor's performance optional or entirely within the discretion, pleasure and control of the promisor, the 'promise' is illusory." *Interchange Associates*, 557 P.2d at 358; *see also Felice v. Clausen*, 590 P.2d 1283, 1285 (Wash. Ct. App. 1979) ("If the provisions of an agreement leave the promisor's performance entirely within his discretion and control, the 'promise' is illusory. Where there is an absolute right not to perform at all, there is an absence of consideration."). Accepting the reasoning of the Amazon and the district court would render the Prime contract illusory because Amazon's obligations under the contract would be "so indefinite" and "entirely discretionary" on the part of Amazon. *Hirocke*, 2021 WL 1575231, at *3. It would leave an ordinary consumer with absolutely no control over what they actually receive in exchange for their membership fee. Amazon could unilaterally terminate virtually all services under the contract at any time, including free Whole Foods delivery, free and commercial-free video streaming, free two-day delivery on any items, etc. According to Amazon and the district court, as long as Amazon provides *any* good or service to Prime members, no matter how small and no matter how insignificant to the consumer, the company would satisfy its part of the bargain. But that truly leaves Amazon's performance "entirely within the discretion, pleasure, and control

of" Amazon, the very definition of an illusory promise under Washington law. *Interchange Associates*, 557 P.2d at 358.6

Nor does the analysis change because Griffith received *some* free Whole Foods deliveries before Amazon unilaterally started charging a fee. In *Interchange Associates*, the plaintiffs promised to serve on a board of directors for ten years or until their earlier resignation and specifically reserved the right to unilaterally terminate the agreement. 557 P.2d at 358. Defendants removed plaintiffs from the board after four years of service, and plaintiffs sued to be retained on the board for the remainder of the ten years. *Id.* The court held that the resignation clause made the contract illusory and unenforceable despite the fact that plaintiffs had performed for four years. *Id.* at 359. "The resignation clause is indistinguishable from a contractual provision permitting one party to arbitrarily, unilaterally, and unconditionally cancel the contract. It follows that the plaintiffs' 'promise' is insufficient consideration to support enforcement of the executory portion of the defendants' counter promise." *Id.*

---

[6] For similar reasons, even if Amazon has a right to cancel Prime benefits, that right cannot be unbridled without rendering the contract illusory. There must be some limits on the company's discretion and the duty of good faith and fair dealing would adhere, as discussed in Section III below.

Of course, the point here is not that Amazon's Prime membership contract is illusory, but that the company and district court's interpretation of the contract is unreasonable and cannot be sustained. Under Washington law, courts "will not give effect to interpretations that would render contract obligations illusory." *Taylor*, 930 P.2d at 344. The Court should not construe the Prime membership contract in a manner that renders it illusory and should instead enable Griffith to pursue damages for Amazon's breach of its obligation to provide free Whole Foods delivery to her and other consumers for the duration of their annual Prime memberships.

### D. Amazon's Agreement with Prime Customers Is Not a Terminable-At-Will Contract.

In its motion to dismiss, Amazon also presented an alternative argument, not reached by the district court, that it was allowed to modify the terms of the Prime agreement because the contract is a terminable-at-will contract. This is also incorrect. A terminable-at-will contract exists only when a party receives notice of a modification **and** has the right to terminate the agreement. *See Capitol Pros, Inc. v. Vadata, Inc.*, No. C17-1410-JCC, 2018 WL 883870, at *3 (W.D. Wash. Feb. 14, 2018) ("When Plaintiff received notice of unilateral modification, it had the choice to preserve the benefit of continued business with Defendant by continuing to perform instead of terminating the agreement. Foregoing the right to terminate

constitutes sufficient consideration in the context of unilateral modification.")
(internal citation omitted).

Amazon has asserted that it notified consumers that it was terminating the free
Whole Foods delivery service. However, that "fact" was not alleged in the CAC or
the FAC. *See* CAC and FAC. 1-ER-15-58, 202-223. Indeed, Griffith alleged in the
FAC that she "does not recall ever having received or seen a specific, conspicuous
notice of Amazon's addition of a $9.95 service [sic] to all Whole Foods grocery
purchases." FAC ¶ 32, 1-ER-213. Moreover, "[w]hether particular notice was
reasonable is ordinarily a question of fact." *Cascade Auto Glass, Inc. v. Progressive
Cas. Ins. Co.*, 145 P.3d 1253, 1256 (Wash. Ct. App. 2006). These factual questions
alone are sufficient to preclude Amazon's motion to dismiss on this basis.

More importantly, even if Amazon did provide reasonable notice (which
Griffith does not admit and her complaints did not allege), Amazon's argument fails
because Griffith certainly did not have the right to terminate the agreement.
Amazon's cancellation policy for its Prime membership service states:

> If you signed-up for your Prime membership directly through us, you
> may cancel your Prime membership any time by visiting Your Account
> and adjusting your membership settings. If you cancel within 3 business
> days of signing up for or converting from a free trial to a paid
> membership, we will refund your full membership fee; provided that
> we may charge you (or withhold from your refund) the value of Prime
> benefits used by you and your account during this 3-business day
> period. ***If you cancel at any other time, we will refund your full***

> ***membership fee only if you and your account did not make any eligible purchases or take advantage of Prime benefits since your latest Prime membership charge***.

1-ER-225 (emphasis added). Under this cancellation policy, Prime members who wanted to cancel their membership due to the imposition of the Whole Foods delivery fee, but who had used Amazon's Prime service even once during their annual membership, would not be allowed to terminate the agreement and receive a refund. Because there is no effective right to terminate the agreement, Amazon breached the contract by unilaterally modifying the agreement without consideration. *See Stein Distrib. Inc. v. Pabst Brewing Co.*, LLC, No. C17-5150-RBL, 2017 WL 2313489, at *4 (W.D. Wash. May 26, 2017) (finding that a contract was not terminable at will because "[t]he parties' contract explicitly sets forth when Pabst may cancel it."). Accordingly, the Court should reverse the district court and find that Griffith stated a plausible claim for breach of contract.

### III. Plaintiff Plausibly Alleged Breach of the Duty of Good Faith and Fair Dealing.

It bears repeating that to survive a motion to dismiss, a plaintiff is required to allege only "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Griffith met that standard with respect to her good faith and fair dealing claim.

41

The "'implied duty of good faith and fair dealing' in every contract 'obligates the parties to cooperate with each other so that each may obtain the full benefit of performance.'" *Skansgaard v. Bank of Am., N.A.*, 896 F. Supp. 2d 944, 948 (W.D. Wash. 2011) (quoting *Badgett v. Second State Bank*, 807 P.2d 356, 360 (Wash. 1991)). "Ordinary contract principles require that, where one party is granted discretion under the terms of the contract, that discretion must be exercised in good faith-a requirement that includes the duty to exercise the discretion reasonably." *Id*. (quoting *Craig v. Pillsbury Non–Qualified Pension Plan*, 458 F.3d 748, 752 (8th Cir. 2006) (applying Washington law)). "Good faith limits the authority of a party retaining discretion to interpret contract terms; it does not provide a blank check for that party to define terms however it chooses." *Id*. (quoting *Scribner v. Worldcom, Inc.*, 249 F.3d 902, 910 (9th Cir.2001)).

"Importantly, a violation of the duty of good faith and fair dealing does not require a breach of the underlying contract." *Smartwings, a.s. v. Boeing Co.*, No. C21-918, 2022 WL 579342, at *6 (W.D. Wash. Feb. 25, 2022); *see also Rekhter v. State, Dep't of Soc. & Health Servs.*, 323 P.3d 1036, 1041 (Wash. 2014) (holding "the duty of good faith and fair dealing arises when one party has discretionary authority to determine a future contract term" and may be breached even when a party does not breach the underlying contract). As explained in *Smartwings*,

> "there is no one-size-fits-all definition of good faith and fair dealing."
> *Id.* While not an exhaustive list, "[i]t may violate the duty of good faith
> and fair dealing to, for example, (1) evade the spirit of a bargain;
> (2) willfully render imperfect performance; (3) interfere with or fail to
> cooperate in the other party's performance; (4) abuse discretion granted
> under the contract; or (5) perform the contract without diligence." *Id.*
> (citing Restatement (Second) of Contacts § 205 cmt. d).

2022 WL 579342, at *6 (citing *Microsoft Corp. v. Motorola, Inc.*, 963 F. Supp. 2d

1176, 1184 (W.D. Wash. 2013)).

Here, Griffith alleged that "[b]y failing to perform under the contract by

continuing to provide Plaintiff with free Whole Foods Market delivery with a

minimum $35 purchase during the duration of Plaintiff's annual contract, Defendant

breached the implied covenant of good faith and fair dealing." CAC ¶ 128, 1-ER-

41; FAC ¶ 69, 1-ER-220; *see Skansgaard*, 896 F. Supp. 2d at 948 ("Plaintiff has

sufficiently alleged a claim for breach of the covenant of good faith and fair dealing"

because "Plaintiff alleges Defendants unilaterally decided to require more insurance

than was required by the deed of trust."). Griffith further alleged that Amazon

breached its duty of good faith and fair dealing "by abusing its discretion under the

Amazon Prime contract to terminate the free delivery service without refund or

recourse to consumers and by engaging in surreptitious collection of an additional delivery fee." FAC ¶ 70, 1-ER-220.[7]

In dismissing Griffith's good faith and fair dealing claim, the district court again relied on Amazon's alleged authority under the Prime Terms to unilaterally remove any Prime membership benefits at any time. However, at a minimum, Washington law requires Amazon to exercise that unilateral discretion "reasonably." *Skansgaard*, 896 F. Supp. 2d at 948. And, as the court held in *Skansgaard*, "[w]hether Defendants action was reasonable is a question of fact that cannot be determined on the motion to dismiss, and does not provide a basis to dismiss the claim as a matter of law." *Id*. The same reasoning applies here. Whether Amazon's

---

[7] The district court seemed to suggest that Griffith did not identify the relevant contract terms from which her good faith and fair dealing claim arises. As an initial matter, Griffith is not required to allege in her complaint which specific contractual provisions relate the to the good faith and fair dealing claim. *See Puget Soundkeeper All. v. APM Terminals Tacoma, LLC*, No. C17-5016 BHS, 2020 WL 12583074, at *2 (W.D. Wash. Nov. 19, 2020) ("APMT cites no authority for the proposition that a party must specifically identify the provision of the contract relating to the breach of the implied duty of good faith and fair dealing. Moreover, the Court will not require the Port to file an amended pleading for an issue that may be easily resolved with a targeted discovery request."). More importantly, it is clear that her claims arise from two specific terms: first, the promise of free Whole Foods delivery that she has alleged was integrated into Amazon's contract with Prime members and that was breached by Amazon's imposition of a $9.95 delivery fee; and second, the Prime term that allows Amazon to unilaterally add or remove Prime benefits, which Griffith alleges Amazon invoked unreasonably and abused its discretion in exercising this case.

action in terminating the free Whole Foods delivery service was reasonable or whether Amazon abused its discretion under the contract is a question of fact that cannot be decided on a motion to dismiss. *See Encore D.E.C., LLC v. APES I, LLC*, No. 14-6006 RJB, 2015 WL 5007773, at *9 (W.D. Wash. Aug. 20, 2015) (finding "[t]here are issues of fact as to whether Defendants violated the duty of good faith and fair dealing in relation" to the contractual terms and that "Defendants' motion to dismiss this claim should be denied.").

Indeed, the district court's conclusion that the contract gives Amazon unfettered discretion to unilaterally remove Prime benefits proves that this exactly the type of situation in which the duty of good faith and fair dealing must apply. According to the district court's construction of the contract, Amazon can remove and replace any benefit regardless of the reasonable expectations of consumers or the benefits value to them. Thus, in the district court's view, Amazon could remove all free delivery, free video and game streaming, and free e-book access, and leave only a few benefits of much lower value, like on-line photo storage, without giving annual Prime subscribers any refund or practical ability to cancel. This would surely be unreasonable. But the fact that there must be some line between Amazon's reasonable and unreasonable exercise of its discretion to remove benefits proves that the duty of good faith adheres, and that the district court erred in deciding as a matter

of law that it did not apply to Amazon's decision to terminate the free Whole Foods delivery service.

In addition, reading the CAC and FAC in their entireties as required on a motion to dismiss, *see Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011), Griffith alleged more than "enough facts to state a claim to relief that is plausible on its face" that the manner in which Amazon charged the Whole Foods delivery service fee to Prime members, after previously promoting free delivery as an inducement to subscribe: (1) evaded the spirit of the bargain between Amazon and its customers; (2) constituted a willful rendering of imperfect performance on the part of Amazon; and/or (3) constituted an abuse of discretion under the Prime Terms and Conditions. *See Smartwings,* 2022 WL 579342, at *6; *Accretive*, 2015 WL 4920079, at *9 (holding that plaintiff stated plausible good faith and fair dealing claim where defendant interpreted limitation of warranty provision to keep "the entirety of the money paid" to it without providing plaintiff "the full benefit—any benefit—of its performance under the Agreement"). Finally, Griffith also alleged that Amazon imposed the $9.95 delivery fee in bad faith, including through employment of bait-and-switch advertising and surreptitious addition of the fee during the order process. *See*, *e.g.*, FAC ¶¶ 12-19 21-23, 32-33, 35, 38, 40, 1-ER-207-215. These allegations are all plausible and sufficient for the claim to survive a motion to dismiss.

The district court's reliance on *Marquez* was again misplaced. *Marquez* concluded that Amazon did not breach its duty of good faith and fair dealing in that case because the company had unconditional authority to suspend Rapid Delivery of some goods, the Prime contract conditioned Rapid Delivery on an "as is" and "as available" basis, and consumers had the right to cancel their Prime subscriptions if they disagreed with Amazon's modification of the contract. Here, however, Amazon did not have unfettered authority to start charging deceptive delivery fees after specifically promising (and integrating in the contract) "free" Whole Foods delivery, the "as available" clause of the Prime contract is not at issue (because delivery from Whole Foods was still available, albeit at a newly imposed price), and customers could not cancel their annual memberships and get a refund. Thus, Griffith has plausibly alleged that Amazon breached its duty of good faith and fair dealing by abusing its discretion under the contract to terminate the free Whole Foods delivery service without any refund or recourse to consumers and by engaging in surreptitious collection of an additional delivery fee.

Similarly, in *SAK & Assocs., Inc. v. Ferguson Const., Inc.*, the court held that there was no breach of the duty of good faith and fair dealing and the underlying contract was not illusory when the defendant invoked a termination for convenience clause partway through contract performance. 357 P.3d 671 (Wash. Ct. App. 2015).

47

However, the court indicated that it would have reached a different conclusion if there had been evidence of unreasonableness or bad faith or a disproportionate impact on the parties' rights and obligations from defendant's use of the clause:

> We are not faced with an attempt to invoke a termination for convenience clause before the commencement of any work or only after a nominal amount of work. Here, SAK completed 24 percent of the project, and Ferguson paid a proportionate amount of the fixed contract price. This level of partial performance provides adequate consideration.

357 P.3d at 676. That is quite different from the situation alleged here. To begin, Griffith alleged that Amazon improperly induced her and other consumers to subscribe to Prime based on the promise of ongoing free Whole Foods deliveries before unilaterally changing the deal. On top of that, she alleged that there was no proportionality in contract performance or consideration between the parties: while she and other consumers remained locked into the full term and cost of their annual Prime memberships, Amazon simply stopped performing a valuable part of the services it had promised.

In short, even if the Prime Terms allow Amazon to unilaterally terminate Prime benefits at will, it must exercise that discretion reasonably and in good faith. Griffith plausibly alleged that Amazon did not do so, and the Court should reverse the district court's dismissal of Griffith's breach of good faith and fair dealing claim.

## CONCLUSION

For the foregoing reasons, the Court should reverse the judgment of the district court, hold that Plaintiff plausibly alleged violations of the Washington Consumer Protection Act, breach of contract, and breach of the duty of good faith and fair dealing, and remand for further proceedings on those claims.

RESPECTFULLY SUBMITTED this 2nd day of December, 2024.

*s/ Adam J. Berger*
ADAM J. BERGER
SCHROETER GOLDMARK & BENDER
401 Union Street, Suite 3400
Seattle, WA 98101
Telephone: (206) 622-8000
berger@sgb-law.com

BORDE LAW PLLC
Manish Borde, WSBA #39503
600 Stewart St., 400
Seattle, WA 98101
Telephone: (206) 531-2722
mborde@bordelaw.com

LAW OFFICES OF RONALD A. MARRON
Ronald A. Marron (pro hac vice)
Michael T. Houchin (pro hac vice)
Lilach Halperin (pro hac vice)
651 Arroyo Drive
San Diego, CA 92103
Telephone: (619) 696-9006
ron@consumersadvocates.com
mike@consumersadvocates.com
lilach@consumersadvocates.com

*Counsel for Plaintiff-Appellant*

49

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Circuit Rule 32-1 because it contains 11,106 words, excluding the parts exempted by Rule 32(f). This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

December 2, 2024

*s/Adam J. Berger*
Adam J. Berger

*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on December 2, 2024. I certify that all participants in the case are registered CM/ECF users and will be served via the CM/ECF system.

December 2, 2024

 *s/Adam J. Berger*
Adam J. Berger

*Counsel for Plaintiff-Appellant*