*Appeal No. 24-5176*

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

DENA GRIFFITH,

*Plaintiff-Appellant,*

v.

AMAZON.COM, INC., a Delaware corporation,

*Defendant-Appellee.*

**On Appeal From The United States District Court
Western District Of Washington
Hon. Tana Lin
Case No. 2:22-cv-00743-TL**

**ANSWERING BRIEF OF DEFENDANT-APPELLEE AMAZON.COM, INC.**

Brian D. Buckley (WSBA No. 26423)
bbuckley@fenwick.com
Y. Monica Chan (WSBA No. 58900)
mchan@fenwick.com
FENWICK & WEST LLP
401 Union Street, 5th Floor
Seattle, WA 98101
Telephone: 206.389.4510

Jedediah Wakefield (CSB No. 178058)
jwakefield@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300

Counsel for Defendant-Appellee *Amazon.com, Inc.*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendant-Appellee

Amazon.com, Inc. states that it has no parent corporation and that no publicly held

corporation owns more than 10% of its stock.

Dated:  February 3, 2025    FENWICK & WEST LLP


By:  *s/ Brian D. Buckley*
       Brian D. Buckley

Attorneys for Defendant-Appellee
AMAZON.COM, INC.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ....................................................i

INTRODUCTION ................................................................................1

JURISDICTIONAL STATEMENT ..........................................................4

STATEMENT OF ISSUES ....................................................................4

FACTS ...............................................................................................5

    I.     THE AMAZON PRIME MEMBERSHIP ...........................................5

    II.    GROCERY DELIVERY FROM WHOLE FOODS MARKET..........7

    III.   GRIFFITH'S EXPERIENCE ....................................................9

PROCEDURAL HISTORY ..................................................................11

    I.     THE CONSOLIDATED AMENDED COMPLAINT......................11

    II.    THE FIRST AMENDED COMPLAINT ...................................13

STANDARD OF REVIEW ..................................................................16

SUMMARY OF ARGUMENT .............................................................16

ARGUMENT .....................................................................................18

    I.     THE DISTRICT COURT CORRECTLY DISMISSED
          GRIFFITH'S BREACH OF CONTRACT CLAIM. ...........................18

        A.    Amazon's Advertisements Cannot Alter The Prime
             Terms......................................................................20

        B.    Amazon Did Not Unilaterally Modify The Prime Terms.........23

            1.    Amazon Exercised Its Contractual Rights......................23

            2.    A Terminable-At-Will Contract Can Be
                 Unilaterally Modified. ....................................28

C.      The Prime Terms Are Not "Illusory." ........................................31

II.     THE DISTRICT COURT CORRECTLY DISMISSED GRIFFITH'S IMPLIED-COVENANT CLAIM.................................34

III.    THE DISTRICT COURT CORRECTLY DISMISSED GRIFFITH'S WCPA CLAIM............................................................39

A.      Griffith Pled No Unfair Or Deceptive Act.............................40

1.     Amazon Did Not Make Any False Or Misleading Statement. ........................................................................41

2.     Amazon Did Not Make A Material Omission................47

3.     Amazon Did Not Act Unfairly. ......................................51

B.      Griffith Did Not Plead Causation. .............................................56

CONCLUSION ............................................................................................59

# TABLE OF AUTHORITIES

**Page(s)**

C<span style="font-variant:small-caps">ASES</span>

*134th St. Lofts, LLC v. iCap Nw. Opportunity Fund, LLC*,
  479 P. 3d 367 (Wash. Ct. App. 2020)..........................................................34, 36

*Accretive Tech. Grp., Inc. v. Adobe Sys., Inc.*,
  No. C15-309RSM, 2015 WL 4920079 (W.D. Wash. Aug. 17,
  2015) ...........................................................................................................22

*Alpert v. Nationstar Mortg., LLC*,
  No. C15-1164 RAJ, 2019 WL 1200541 (W.D. Wash. Mar. 14,
  2019) ...........................................................................................................53

*Axon v. Freedom R.V., Inc.*,
  21 Wash. App. 2d 1073 (Wash. Ct. App. 2022), *review denied sub
  nom. Axon v. Freedom RV, Inc.,* 516 P.3d 382 (2022) .......................................58

*Badgett v. Sec. State Bank*,
  807 P.2d 356 (Wash. 1991) ..........................................................................35, 36

*Becerra v. Dr Pepper/Seven Up, Inc.*,
  945 F.3d 1225 (9th Cir. 2019) ...........................................................................50

*Behnke v. Ahrens*,
  294 P.3d 729 (Wash. Ct. App. 2012)...........................................................45, 49

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).........................................................................................48

*Capitol Pros, Inc. v. Vadata, Inc.*,
  No. C17-1410-JCC, 2018 WL 883870 (W.D. Wash. Feb. 14, 2018) ....29, 30, 31

*Cascade Auto Glass, Inc. v. Progressive Cas. Ins. Co.*,
  145 P.3d 1253 (Wash. Ct. App. 2006).........................................................28, 31

*Congrove v. W. Mesquite Mines, Inc.*,
  No. 08-CV-01191-H (PCL), 2010 WL 11508664 (S.D. Cal. Apr.
  15, 2010) ........................................................................................................22

# TABLE OF AUTHORITIES
## (CONTINUED)

**Page(s)**

*Davis v. HSBC Bank Nevada*,
    691 F.3d 1152 (9th Cir. 2012) ......................................................49, 53

*DePhillips v. Zolt Const. Co.*,
    959 P.2d 1104 (Wash. 1998) ......................................................20, 21

*Duncan v. Alaska USA Fed. Credit Union, Inc.*,
    199 P.3d 991 (Wash. Ct. App. 2008)..........................................29, 30

*Ebner v. Fresh, Inc.*,
    838 F.3d 958 (9th Cir. 2016) ......................................................16, 45

*Ekin v. Amazon Servs., LLC*,
    84 F. Supp. 3d 1172 (W.D. Wash. 2014) ...............................31, 32, 34

*Encore D.E.C., LLC v. APES I, LLC*,
    2015 WL 5007773 (W.D. Wash. Aug. 20, 2015)..............................38

*Farmers Ins. Co. of Wash. v. Miller*,
    549 P.2d 9 (Wash. 1976) ...................................................................56

*Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.*,
    935 P.2d 628 (Wash. Ct. App. 1997)................................................35

*Greenberg v. Amazon.com, Inc.*,
    553 P.3d 626 (Wash. 2024) ........................................51, 52, 53, 54

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,
    719 P.2d 531 (Wash. 1986) ......................................................40, 57

*Hard 2 Find Accessories, Inc. v. Amazon.com, Inc.*,
    58 F. Supp. 3d 1166 (W.D. Wash. 2014), *aff'd sub nom.*
    *Hard2Find Accessories, Inc. v. Amazon.com, Inc.*, 691 F. App'x
    406 (9th Cir. 2017)....................................................................25, 34

*Haywood v. Amazon.com, Inc.*,
    No. 2:22-cv-01094-JHC, 2023 WL 4585362 (W.D. Wash. July 18,
    2023) ..............................................................35, 51, 55, 56

*Hearst Commc'ns, Inc. v. Seattle Times Co.*,
    115 P.3d 262 (Wash. 2005) ......................................................20, 21

# TABLE OF AUTHORITIES
## (CONTINUED)

**Page(s)**

*In re Coleman*,
   560 F.3d 1000 (9th Cir. 2009) ...............................................................33

*Indep. Towers of Washington v. Washington*,
   350 F.3d 925 (9th Cir. 2003) ................................................................16

*Interchange Assocs. v. Interchange, Inc.*,
   557 P.2d 357 (Wash. Ct. App. 1976)....................................................33

*Johnson v. Fed. Home Loan Mortg. Corp.*,
   793 F.3d 1005 (9th Cir. 2015) ........................................................19, 30

*Johnson v. Yousoofian*,
   930 P.2d 921 (Wash. Ct. App. 1996)....................................................37

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ........................................................40, 42

*Keystone Land & Dev. Co. v. Xerox Corp.*,
   94 P.3d 945 (Wash. 2004) ...............................................................35, 37

*King Cnty. v. Walsh Constr. Co. II, LLC*,
   532 P.3d 182 (Wash. Ct. App. 2023)....................................................27

*Klem v. Wash. Mut. Bank*,
   295 P.3d 1179 (2013)............................................................................52

*Kwan v. SanMedica Int'l*,
   854 F.3d 1088 (9th Cir. 2017) .............................................................56

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992).............................................................................55

*Marquez v. Amazon.com, Inc.*,
   69 F.4th 1262 (11th Cir. 2023) ....................................................*passim*

*McAuliffe v. Vail Corp.*,
   69 F.4th 1130 (10th Cir. 2023) ...........................................................55

*Michak v. Transnation Title Ins. Co.*,
   64 P.3d 22 (Wash. 2003) .....................................................................55

# TABLE OF AUTHORITIES
## (CONTINUED)

**Page(s)**

*Nielson v. Eisenhower & Carlson*,
  999 P.2d 42 (Wash. Ct. App. 2000)....................................................57

*Nihon Ki-In Go Inst. of the W. v. Nihon Ki-In*,
  No. C12-0804RSL, 2012 WL 12941689 (W.D. Wash. June 27,
  2012).............................................................................................22

*Norcal Waste Sys., Inc. v. Apropos Tech., Inc.*,
  No. C 06-3410 CW, 2006 WL 2319085 (N.D. Cal. Aug. 10, 2006)..................22

*Nye v. Univ. of Wash.*,
  260 P.3d 1000 (Wash. Ct. App. 2011)................................................24

*P.E.L. v. Premera Blue Cross*,
  540 P.3d 105 (Wash. 2023) ............................................................18

*Panag v. Farmers Ins. Co.*,
  204 P.3d 885 (Wash. 2009) ............................................................56

*PBTM LLC v. Football Nw., LLC*,
  No. C19-2081-RSL, 2022 WL 670920 (W.D. Wash. Mar. 7, 2022) ...............37

*Quadrant Corp. v. Am. States Ins. Co.*,
  110 P.3d 733 (Wash. 2005) ............................................................31

*Rekhter v. State, Dep't of Soc. & Health Servs.*,
  323 P.3d 1036 (Wash. 2014) ...........................................................38

*Ruiz-Torres v. Mercer Canyons, Inc.*,
  835 F.3d 1125 (9th Cir. 2016) .........................................................49

*SAK & Assocs., Inc. v. Ferguson Constr., Inc.*,
  357 P.3d 671 (Wash. Ct. App. 2015)...............................................36, 39

*Sateriale v. R.J. Reynolds Tobacco Co.*,
  697 F.3d 777 (9th Cir. 2012) ..........................................................43

*Schaub v. JPMorgan Chase Bank N.A.*,
  No. 78439-1-I, 2019 WL 2751168 (Wash. Ct. App. July 1, 2019)...................57

*Schnall v. AT & T Wireless Servs., Inc.*,
  259 P.3d 129 (Wash. 2011) (en banc) ................................................56

# TABLE OF AUTHORITIES
## (CONTINUED)

**Page(s)**

*Schneider v. Cal. Dep't of Corr.*,
    151 F.3d 1194 (9th Cir. 1998) ...........................................................48

*Skansgaard v. Bank of Am., N.A.*,
    896 F. Supp. 2d 944 (W.D. Wash. 2011) .......................................38

*Smale v. Cellco P'ship*,
    547 F. Supp. 2d 1181 (W.D. Wash. 2008) .......................................50

*Smartwings, a.s. v. Boeing Co.*,
    No. C21-918 RSM, 2022 WL 579342 (W.D. Wash. Feb. 25, 2022) ................39

*State v. Hirocke*,
    17 Wash. App. 2d 1024, 2021 WL 1575231 (Wash. Ct. App. 2021) ...............33

*Storey v. Amazon.com Servs. LLC*,
    No. C23-1529-KKE, 2024 WL 2882270 (W.D. Wash. June 7,
    2024) ..........................................................................44, 55

*U.S. Bank Nat'l Ass'n v. Tait*,
    No. C16-767-JCC, 2016 WL 5141990 (W.D. Wash. Sept. 21,
    2016) ..............................................................................37

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ...........................................................42

*Voss-Curry v. Crown Equip. Corp.*,
    No. 2:22-cv-01062-BJR, 2022 WL 4368047 (W.D. Wash. Sept.
    21, 2022) ..........................................................................48

*Walters v. Vitamin Shoppe Indus., Inc.*,
    701 F. App'x 667 (9th Cir. 2017) .................................................43, 44

*Williams v. Gerber Prod. Co.*,
    552 F.3d 934 (9th Cir. 2008) .......................................................43, 44

**STATUTES**

28 U.S.C. § 1291 ...........................................................................4

28 U.S.C. § 1332(d) .......................................................................4

## TABLE OF AUTHORITIES
## (CONTINUED)

**Page(s)**

Washington Consumer Protection Act ........................................................*passim*

**OTHER AUTHORITIES**

Fed. R. Civ. P. 9(b) .............................................................................40, 42

Fed. R. Civ. P. 12(b)(6)......................................................................16, 48

## INTRODUCTION

Amazon Prime is a popular subscription-based membership program that offers members a bundle of valuable benefits, such as free and fast shipping, exclusive discounts on products, and free access to digital content like music and movies. Amazon has always made clear that the bundle of Prime benefits is subject to change. Every Prime customer agrees to the Amazon Prime Terms & Conditions (the "Prime Terms"), which plainly state: "From time to time, Amazon may choose in its sole discretion to add or remove Prime membership benefits." Thus, Amazon has never guaranteed that any particular Prime benefit will remain available indefinitely, or for the duration of a customer's membership.

In June 2021, Appellant Dena Griffith enrolled in Amazon Prime and enjoyed the myriad benefits of Prime membership for the next two years. When Griffith joined Prime, free grocery delivery from Whole Foods Market ("WFM") was among those benefits. Griffith claims that, in deciding to join Prime, she saw and relied on Amazon's online advertisements for "FREE Delivery" and "FREE 2-Hour Grocery Delivery," including from WFM. But Griffith identified no Amazon advertisements that guaranteed free WFM delivery forever or for the entirety of any membership.

In October 2021, Amazon announced that it would begin charging a fee for WFM deliveries, while continuing to offer other free grocery deliveries. Griffith continued to use and enjoy her Prime membership for more than a year, even

1

renewing her annual subscription. But, in 2022, she sued Amazon, claiming that Amazon misled consumers and violated the Prime Terms when it offered and later removed free WFM deliveries as a Prime benefit. She asserted various claims, including for breach of contract, breach of the implied covenant of good faith and fair dealing, and violation of the Washington Consumer Protection Act ("WCPA").

The district court twice dismissed Griffith's claims. The court found that Amazon's advertisements about WFM delivery "were *true* at the time they were made" because, at that time, WFM delivery *was* free for Prime members. 1-ER-17. The court then concluded that Amazon "had contractual authority to suspend" "any benefits of Prime membership, including free delivery and two-hour delivery." 1-ER-23, 40. The court ultimately dismissed with prejudice all of Griffith's claims; it gave Griffith leave to amend only her WCPA claim, but she declined and instead took this appeal. On appeal, Griffith challenges the district court's dismissal of her claims for breach of contract, breach of the implied covenant, and violation of the WCPA. She has abandoned her remaining claims.

Because Griffith assented to and is bound by the Prime Terms, she cannot directly challenge Amazon's contractual right to periodically change Prime benefits. In search of a breach, Griffith instead looks outside the written contract. She argues that Amazon's advertisements regarding free grocery delivery were somehow integrated into the Prime Terms and *guaranteed* Prime members free WFM delivery.

2

But that argument cannot survive well-established Washington law that extracontractual representations can never contradict, modify, or vary the written terms of the contract. Thus, Griffith cannot rely on extrinsic evidence to restrict Amazon's contractual right. The breach of contract and implied-covenant claims fail on this basis alone.

Griffith's WCPA claim also fails because she cannot establish any unfair or deceptive conduct by Amazon. Her misrepresentation theory fails for the simple reason that Amazon's advertisements about free WFM delivery were *true* because WFM delivery *was* free at that time. Griffith never identified any instance when Amazon advertised WFM delivery as free when it was not. Struggling to find a WCPA violation, Griffith argues that Amazon's advertisements "omitted" that free WFM delivery was not "guaranteed." But Amazon's advertisements never promised that WFM delivery would remain free forever. Thus, reasonable consumers had no reason to believe that WFM delivery or any Prime benefit was guaranteed, particularly when the Prime Terms said exactly the opposite.

Griffith also argues that Amazon acted unfairly by using "the promise" of free WFM delivery to induce consumers to enroll in Prime and then refusing refunds after introducing the WFM service fee. But Griffith never sought or was denied a refund, so she has no standing to assert that argument. Moreover, Amazon never guaranteed any Prime benefit would remain in place indefinitely, and Prime

3

members like Griffith *agreed* that Amazon can change or remove benefits under the Prime Terms. This is fatal to all of Griffith's theories under the WCPA.

The law is clear that merely exercising a valid contractual right is not unfair or deceptive. Nor is it in any way improper to offer a membership program with a broad array of valuable benefits that change during the membership. That was what Amazon offered, and what Griffith accepted and enjoyed for years, even after the WFM delivery benefit was removed. The Court should affirm the district court's rulings in all respects and dismiss this action with prejudice.

## JURISDICTIONAL STATEMENT

The Court has jurisdiction under 28 U.S.C. § 1332(d) and 28 U.S.C. § 1291.

On July 18, 2024, the district court dismissed Griffith's claims with prejudice. 1-ER-25. On August 15, 2024, Griffith filed a Notice of Appeal. 3-ER-342. On August 28, 2024, the district court entered final judgment dismissing the action with prejudice. 1-ER-2.

## STATEMENT OF ISSUES

1. Whether the district court correctly ruled that Griffith failed to allege a breach of contract, because Amazon's Prime Terms unambiguously give Amazon the contractual authority to change or remove Prime membership benefits at any time, and the contract is not illusory.

4

2.      Whether the district court correctly ruled that Griffith failed to adequately allege a breach of the implied covenant of good faith and fair dealing because any such implied duty would contradict the express terms of the contract.

3.      Whether the district court correctly ruled that Griffith failed to adequately plead any unfair or deceptive act or practice under the WCPA.

4.      Whether Griffith failed to allege causation under the WCPA where her own inaction caused any alleged injury.

## FACTS

## I.      THE AMAZON PRIME MEMBERSHIP

Amazon Prime is a popular membership service.  2-ER-143 (¶ 7).  Customers subscribe to Prime on a monthly or annual basis to enjoy a wide range of benefits, which vary over time and depend on availability.  *Id.* (¶ 8).  The vast suite of valuable Prime benefits includes free and fast shipping; access to a huge library of music, video, and other digital content; and discounts and offers available only to Prime members.  *Id.* (¶ 7).

To enroll in a Prime subscription, a customer must agree to the Prime Terms. 2-ER-143 (¶ 8, n.2); *see also* 2-ER-309 (¶ 121).  Griffith herself relied on the Prime Terms as the "govern[ing]" agreement on the "respective rights and obligations" of Amazon and Prime members.  2-ER-137 (Prime Terms); 2-ER-143 (¶ 8).  The Prime Terms do not guarantee any specific Prime benefit, do not specify the duration of any particular Prime benefit, and do not represent that any particular benefit will

remain available throughout a customer's Prime membership period. To the contrary, under the heading "**Other Limitations**," the Prime Terms expressly state that "[f]rom time to time, Amazon may choose in its sole discretion to add or remove Prime membership benefits." 2-ER-138. Under the separate heading "**Agreement Changes**," Amazon also states that it "may in [its] discretion change these Terms, Amazon.com's Conditions of Use and Privacy Notice, or any aspect of Prime membership, without notice to you." *Id*. And, in the event of a change to the Prime benefits or Terms, customers are notified that: "YOUR CONTINUED MEMBERSHIP AFTER WE CHANGE THESE TERMS CONSTITUTES YOUR ACCEPTANCE OF THE CHANGES. IF YOU DO NOT AGREE TO ANY CHANGES, YOU MUST CANCEL YOUR MEMBERSHIP." *Id.*

The Prime Terms also explain Amazon's refund policy for membership fees. Under the heading "**Membership Cancellation**," Amazon states: "If you signed up for your Prime membership directly through us, you may cancel your Prime membership any time by visiting Your Account and adjusting your membership settings." 2-ER-137. The Prime Terms go on to state that Amazon will refund the full Prime membership fee if a customer "cancel[s] within 3 business days of signing up for or converting from a free trial to a paid Membership." *Id.* Otherwise, Amazon "will refund your full membership fee only if you and your account did not make

any eligible purchases or take advantage of Prime benefits since your latest Prime membership charge." *Id.*

## II.   GROCERY DELIVERY FROM WHOLE FOODS MARKET

WFM is an Amazon subsidiary.  2-ER-145 (¶ 10).  For some time before October 25, 2021, one benefit available to Prime members in select regions in the U.S. was free grocery deliveries (with a minimum order amount) from WFM.  2-ER-145-46 (¶¶ 10-11, 13); 2-ER-150 (¶ 20).  Amazon Prime members could also receive free grocery deliveries through Amazon Fresh, a different Amazon service.  2-ER-144 (¶ 9).

In September 2021, Amazon announced an upcoming change to WFM deliveries.  Amazon notified customers that it would begin charging a service fee for WFM deliveries in October 2021, while two-hour grocery delivery from Amazon Fresh would remain free for Prime members.  2-ER-228-30, 2-ER-232.  Amazon explained that the service fee for WFM deliveries would help "cover delivery operating costs like equipment and technology without raising product prices."  2-ER-147 (¶ 14).  As Griffith acknowledged, Amazon's announcement was widely covered by media and news outlets, including CNN and the Washington Post.  *See* 2-ER-228 (Washington Post reporting that, on September 24, 2021, Amazon sent "U.S. customers an email saying it was going to charge $9.95 per delivery on top of the Prime subscription cost beginning Oct. 25"); 2-ER-232 (CNN article).  The

7

district court considered the CNN and the Washington Post articles, noting that "Plaintiff does not object because she concedes that the articles are referenced in the [complaint]." 1-ER-27. On appeal, Griffith does not challenge that ruling.

As announced, starting around October 25, 2021, Amazon began charging customers a $9.95 service fee for WFM deliveries. 2-ER-146 (¶ 13). That fee applies only to *deliveries*; Amazon does *not* charge a fee for pick-up orders from WFM. 2-ER-147 (¶ 14). A Prime member can place an order by visiting the WFM section of amazon.com. 2-ER-147-48 (¶ 16). The initial webpage shows an array of items and their advertised prices. *Id.* Clicking on an item takes the customer to the item-specific page. 2-ER-148 (¶ 17). On that page, a customer must click the yellow "Add to Cart" button to add an item to her cart. *Id.* Just above that button, Amazon informs the customer: "$9.95 for 2-hour delivery." *Id.* In other words, Amazon draws the customer's attention to the service fee *every time she adds an item to her cart.*

When the customer is ready to check out, she can review her purchase details on the final "place your order" webpage. 2-ER-149 (¶ 18). The "Order Summary" section of the webpage shows the cost, fees, taxes, and order total, including a specific line item for "Service Fee," which again informs the customer that grocery delivery—if the customer chooses that option instead of pickup—is subject to a $9.95 fee. *Id.*

8

### III.  GRIFFITH'S EXPERIENCE

According to Griffith, in June 2021 she purchased an annual subscription to Amazon Prime because "[a]t various times in early and mid-2021," she saw and relied on Amazon's online advertisements for "FREE Delivery" and "FREE 2-Hour Grocery Delivery."  2-ER-151 (¶¶ 24-26).  Griffith's undated "examples" of Amazon's alleged advertisements referenced (1) "free two-hour delivery from Fresh and your local Whole Foods Market"; (2) "fast, free delivery" or "FREE One-Day Delivery" for *non-grocery* package deliveries; and (3) "Prime members get convenient 2-hour grocery delivery and 1-hour pickup from their local store" (with no mention of *free* delivery).  2-ER-143-46 (¶¶ 9, 11).  Notably, Griffith did *not* allege that she saw any advertisements for free WFM grocery delivery *after* Amazon implemented the WFM service fee in October 2021.  *Id.*

After becoming a Prime member, Griffith received several free WFM deliveries, on June 5, July 6, and October 7, 2021.  2-ER-151-52 (¶¶ 28-30).  Notwithstanding Amazon's advance notice to customers about the change to WFM delivery (*see* 2-ER-232), and the extensive media coverage of the change, Griffith alleged that she "does not *recall*" seeing "a specific, conspicuous notice" about Amazon's implementation of the WFM service fee.  2-ER-152 (¶ 32) (emphasis added).  Tellingly, however, Griffith did not allege (and does not claim) that she never *received* Amazon's advance notice.  After that notice went out, Griffith

ordered WFM delivery on January 22, 2022 and was charged a $9.95 service fee. 2-ER-152 (¶ 31). Griffith claimed she did not expect the fee. *Id.*

Griffith alleged that she stopped ordering deliveries from WFM after January 2022 and stopped paying the service fee. *See* 2-ER-152 (¶¶ 31-32); SER-25 (MTD Hrg. Tr. at 23:18-25) (Griffith's counsel explaining, "I do not believe that she made delivery purchases from Whole Foods after that [January 2022]"). Griffith alleged that months later, on October 21, 2022, she saw an Amazon advertisement referencing: "Fast, free delivery" and "Groceries: Skip the lines with 2-hour delivery on a wide selection of fresh ingredients." 2-ER-152-53 (¶ 35). That ad notably said *nothing* about WFM, and Amazon has other grocery services like Amazon Fresh to which the ad could apply. Moreover, the ad stated, "Look for the Prime check mark as you shop. It means fast, free delivery!" *Id.* But Amazon had announced months earlier that WFM delivery was no longer free with Prime, and Griffith had stopped ordering delivery from WFM for that very reason. And Griffith did not allege seeing the "Prime check mark" associated with any WFM items at any time.

Although Griffith allegedly "resented" paying the service fee for her January 2022 order, 2-ER-153 (¶ 36), she never sought any refund—of the service fee or her Prime membership fee—or any other recourse from Amazon. And even though Griffith was free to "cancel [her] Prime membership any time," 2-ER-137, she chose not to. She admits that she never "got around to cancelling" before the annual

10

renewal date of her Prime membership in June 2022. 2-ER-153 (¶ 36). Instead, Griffith enjoyed the myriad Prime benefits for over a year and then "successfully declined to renew her Prime Contract with Amazon in June 2023." *Id.* (¶ 37).

## PROCEDURAL HISTORY

This case began as two separate putative class actions based on the same core allegations regarding Amazon's introduction of the WFM delivery fee in late 2021. 2-ER-329-30. On September 27, 2022, the district court consolidated the cases, appointed Griffith's counsel as interim class counsel, and directed Griffith to file a consolidated amended complaint. 2-ER-337; 3-ER-356.

## I. THE CONSOLIDATED AMENDED COMPLAINT

On October 25, 2022, Griffith filed the consolidated class action complaint ("CAC"), asserting claims against Amazon for violations of the WCPA and California's consumer protection statutes, and common-law claims for breach of contract, breach of the duty of good faith, unjust enrichment, fraud-based theories, and declaratory relief. 2-ER-298-311. Griffith alleged that Amazon's free WFM delivery advertisements were false because Amazon began charging a $9.95 service fee in October 2021. 2-ER-289 (¶¶ 12-13). Griffith also accused Amazon of "bait-and-switch advertising" and "drip pricing" because Amazon allegedly did not disclose the service fee on the landing page of the WFM website. 2-ER-290-94. On December 16, 2022, Amazon moved to dismiss the case for failure to state a claim.

11

After the parties briefed Amazon's motion to dismiss, the district court requested supplemental briefing on the Eleventh Circuit's then-recent decision in *Marquez v. Amazon.com, Inc.*, 69 F.4th 1262, 1270 (11th Cir. 2023). 1-ER-39. In *Marquez*, the Eleventh Circuit dismissed plaintiff-Prime members' breach of contract, implied-covenant, and WCPA claims predicated on Amazon's suspension of a different Prime benefit: expedited delivery. Amazon discusses *Marquez* in the Argument section below.

On December 7, 2023, the district court granted in full Amazon's first motion to dismiss. 1-ER-26-47 ("First MTD Order"). The district court dismissed Griffith's breach of contract claim with prejudice. Finding persuasive the rationale in *Marquez*, the district court held that, even "assuming (without deciding) that free Whole Foods delivery or two-hour delivery are terms that are integrated into the [Prime Terms]," Amazon "had contractual authority to suspend these benefits." 1-ER-39-40. The district court also dismissed Griffith's implied-covenant claim without prejudice, reasoning that "[b]ecause [Amazon's] conduct was authorized by the [Prime Terms], [Amazon] had no duty that was required to be performed in good faith." 1-ER-41. For the fraud-based claims (including the WCPA claim), the district court dismissed with leave to amend because "the CAC suffers from a lack of details about Plaintiff's own experience" (e.g., what advertisements she saw, when, or where) and therefore failed to meet the heightened pleading standard under

12

Federal Rule of Civil Procedure ("Rule") 9(b). 1-ER-36. The district court dismissed Griffith's remaining claims with prejudice and struck from the CAC certain overbroad class allegations. 1-ER-32, 1-ER-35-36, 1-ER-44.

For the first time in her supplemental brief regarding the *Marquez* decision, Griffith raised a new theory for her implied-covenant claim. She alleged that Amazon "abus[ed] its discretion under the contract to terminate the free delivery service without refund or recourse to consumers and by engaging in surreptitious collection of an additional delivery fee." *See* 1-ER-42. The district court declined to consider that new theory but granted Griffith leave to amend. *Id.*

## II.    THE FIRST AMENDED COMPLAINT

Armed with the district court's roadmap for repleading her deficient claims, on January 8, 2024, Griffith filed the First Amended Consolidated Class Action Complaint ("FAC"). In the FAC, Griffith asserted only two claims—for violation of the WCPA and breach of the implied covenant—and abandoned her other claims. 2-ER-157-59. The FAC included virtually identical misrepresentation and "bait-and-switch" theories as in the CAC. *Compare* 2-ER-286-93 (¶¶ 7-19) *and* 2-ER-298-300 (¶¶ 47-54), *with* 2-ER-143-49 (¶¶ 7-19) *and* 2-ER-157-59 (¶¶ 58-66). As the district court allowed, Griffith also alleged her new theory challenging Amazon's purported failure to provide any "refund," "recourse," or "reduction or rebate in

Prime membership fees" after implementing the WFM service fee.  2-ER-158-59 (¶¶ 61, 70).

Amazon moved to dismiss the FAC.  In her opposition, Griffith raised a new WCPA theory.  She argued, for the first time, that Amazon's advertisements "mis[led] consumers to believe that free delivery was guaranteed during the entirety of Prime membership."  1-ER-18.

The Court held a hearing on Amazon's motion on June 18, 2024.  *See* SER-3 (MTD Hrg. Tr.).  On July 18, 2024, the district court again dismissed all of Griffith's claims.  1-ER-1-25 ("Second MTD Order").  <u>First</u>, the district court dismissed with prejudice Griffith's claim for breach of the implied covenant.  1-ER-22-24.  The district court held that "Defendant's removal of free Whole Foods delivery was plainly authorized by the contract" because the Prime Terms "unambiguously authorize the modification of Prime benefits."  1-ER-23-24.  As the district court aptly noted, any restriction on Amazon's contractual right "would contradict the express terms of the [Prime Terms] and effectively renegotiate the original bargain."  1-ER-24.  The district court also rejected Griffith's theory that Amazon subsequently charging the service fee "evaded the spirit of the bargain," where Amazon "had the right to remove the benefit in the first place."  1-ER 24-25.

<u>Second</u>, the district court dismissed with prejudice Griffith's false advertising theory under the WCPA because "any ad statements that Whole Foods grocery

delivery was 'free' were *true* at the time they were made," and "Plaintiff does not allege that she saw an ad from Defendant *after* October 25, 2021, that offered free Whole Foods delivery." 1-ER-17 (emphasis in original). The district court also held that Griffith "could not have relied on" the October 2022 advertisement because, by that point, she had already discovered the service fee and had stopped placing WFM delivery orders. 1-ER-17-18.

Third, the district court dismissed with prejudice Griffith's WCPA theory challenging the online WFM checkout process, because "it cannot be said that Defendant engages in a bait-and-switch or in drip pricing where products are listed at their true price and the final cost of an order is solely dependent on a customer's decision to choose an *optional* delivery service for those products." 1-ER-19 (emphasis in original).

Fourth, the district court dismissed with prejudice Griffith's "no refund" theory, finding that Amazon did not violate the WCPA because the Prime Terms "expressly authorize the addition or removal of Prime benefits" and "expressly detail Defendant's refund policy for membership cancellations." 1-ER-21.

Having found all of Griffith's existing theories deficient as a matter of law, the district court nevertheless granted Griffith leave to amend (yet again) to assert her new WCPA theory that Amazon somehow misled customers that WFM delivery was "guaranteed during the entirety of Prime membership." 1-ER-18. Griffith chose

15

not to avail herself of that option; instead, she filed this appeal. 3-ER-342. Upon notice from this Court regarding the apparent lack of appellate jurisdiction (Dkt. No. 3), Griffith moved the district court to enter final judgment, which it did on August 28, 2024. 3-ER-360.

## STANDARD OF REVIEW

The Court reviews "*de novo* the district court's grant of a motion to dismiss under Rule 12(b)(6)." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 962-63 (9th Cir. 2016).

## SUMMARY OF ARGUMENT

The Court should affirm the district court's well-reasoned rulings in all respects.[1] Griffith's three claims on appeal all fail as a matter of law.

**Breach Of Contract.** Because the Prime Terms authorize Amazon to change, remove, or add Prime benefits in its sole discretion, Amazon did not breach the contract by doing exactly that. Griffith's arguments to the contrary all fail. As a matter of law, Amazon's advertisements (which do not guarantee permanently free WFM delivery) cannot be integrated into the Prime Terms to contradict or impinge on Amazon's contractual rights to modify those benefits. Amazon also did not

---

[1] On appeal, Griffith does not challenge the district court's dismissal of her claims with prejudice. Griffith therefore waives that challenge. *Indep. Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (the Ninth Circuit "review[s] only issues which are argued specifically and distinctly in a party's opening brief" and "will not consider any claims that were not actually argued in appellant's opening brief").

"unilaterally modify" the contract when it removed the free WFM delivery benefit because the contract never promised this specific benefit to begin with. Nor do Amazon's contractual rights render the contract illusory; Amazon continues to offer Prime members a vast suite of valuable Prime benefits.

**Implied Covenant Of Good Faith And Fair Dealing.** The implied covenant cannot contradict the express terms of the contract. Nor can it inject substantive terms into, or create any "free-floating" duty separate from, the contractual terms. Griffith's implied-covenant claim fails because Amazon never promised any specific Prime benefit and the contract expressly permits Amazon's specific challenged conduct: the removal of one of many Prime benefits.

**WCPA.** Griffith's WCPA claim fails because she alleged no unfair or deceptive conduct. There is no misrepresentation because Amazon's 2021 advertisements regarding free WFM deliveries were all undeniably *true* when made. Griffith admittedly received free WFM deliveries at the time. Amazon's 2022 advertisement is also inactionable because it said *nothing* about WFM delivery. On appeal, Griffith attempts to assert a new theory, arguing that Amazon's advertisements omitted the non-guaranteed nature of the free WFM delivery benefit. But the Court should decline to consider that theory because Griffith did not allege it in any of her complaints. It also has no merit: Amazon clearly and expressly disclosed that it could change Prime benefits at any time in its sole discretion, and it

17

never guaranteed—implicitly or otherwise—any particular benefit, including free WFM deliveries.

Griffith contends that Amazon unfairly refused to give Prime members any refund or recourse after removing the free WFM delivery benefit. But Griffith lacks standing to assert this theory because she neither asked for nor was denied a refund. In all events, Amazon also fully discloses its refund policy for Prime membership fees. It is simply not "unfair" for Amazon to exercise its valid, fully disclosed contractual rights.

Finally, Griffith has failed to plead causation because any alleged harm she suffered was the direct result of her own inaction.

**ARGUMENT**

## I. THE DISTRICT COURT CORRECTLY DISMISSED GRIFFITH'S BREACH OF CONTRACT CLAIM.

To prevail on a breach of contract claim, a plaintiff must show that "the contract imposes a duty, the duty is breached, and the breach proximately causes damage to the claimant." *P.E.L. v. Premera Blue Cross*, 540 P.3d 105, 115 (Wash. 2023) (citation omitted). "[O]f course, if an action is permitted by the contract, the performance of that action is not a breach." *Marquez*, 69 F.4th at 1270 (interpreting Amazon's Prime Terms and Conditions of Use) (citing *Myers v. State*, 218 P.3d 241, 244 (Wash. Ct. App. 2009)).

18

It is undisputed that Amazon did not breach the Prime Terms themselves. Those terms repeatedly and unambiguously disclose that Prime benefits are subject to change, given that "[f]rom time to time, Amazon may choose in its sole discretion to add or remove Prime membership benefits." 2-ER-138 (Prime Terms) ("We may in our discretion change … any aspect of Prime membership..."). As the district court correctly found, those unambiguous provisions "establish [Amazon]'s authority to suspend any benefits of Prime membership, including free delivery and two-hour delivery and [Griffith] does not offer an alternative understanding of this contractual language." 1-ER-40. There is no alternative reading or understanding of the Prime Terms. Thus, unsurprisingly, Griffith has never identified any provision *of the Prime Terms themselves* that Amazon allegedly violated, highlighting her failure to plead a breach. *See Johnson v. Fed. Home Loan Mortg. Corp.*, 793 F.3d 1005, 1007 (9th Cir. 2015) (affirming dismissal of breach of contract claim where plaintiff failed to allege any contractual duty that defendant breached).

Because she cannot allege a direct breach of the Prime Terms, Griffith advances three alternative theories to salvage her contract claim. <u>First</u>, Griffith argues that Amazon's "FREE Delivery" and "FREE 2-hour grocery delivery" advertisements were integrated into the Prime Terms and that Amazon somehow breached those engrafted terms. Opening Brief ("OB") at 28. <u>Second</u>, Griffith argues that Amazon improperly "modified" the contract by implementing the WFM

service fee.  *Id*. at 32.  Third, Griffith argues that allowing Amazon to change or remove Prime benefits renders the Prime Terms illusory.  *Id*. at 35.  Those alternative theories cannot save Griffith's breach of contract claim.

## A.  Amazon's Advertisements Cannot Alter The Prime Terms.

According to Griffith, Amazon's "representations that it offers 'FREE Delivery' and 'FREE 2-hour grocery delivery' from Whole Foods Market are terms that were integrated into the prime membership contract."  OB at 28; 2-ER-309 (CAC, ¶ 121).  As a matter of well-established law, that argument fails because integrated terms can never contradict or modify the express terms of a contract.

Washington "follow[s] the objective manifestation theory of contracts," whereby courts "determine the parties' intent by focusing on the objective manifestations of the agreement, rather than on the unexpressed subjective intent of the parties." *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 115 P.3d 262, 267 (Wash. 2005)*.*  At most, "surrounding circumstances and other extrinsic evidence are to be used to determine the meaning of *specific words and terms used*," but they cannot be used "to show an intention independent of the instrument or to vary, contradict, or modify the written word." *Id.*  "Where a partially integrated contract is involved, parol evidence may be used to prove the terms not included in the writing, provided, of course, that the additional terms are not inconsistent with the written terms." *DePhillips v. Zolt Const. Co.*, 959 P.2d 1104, 1108 (Wash. 1998).

20

For purposes of responding to Griffith's arguments, Amazon assumes without conceding that the Prime Terms are a partially (rather than fully) integrated contract. The Court need not decide that issue, because even if the Prime Terms are only partially integrated (as Griffith contends; OB at 29), the ads cannot contradict or modify the express provisions of the Prime Terms.

As discussed above, the Prime Terms (1) do not mention free WFM delivery at all; (2) do not guarantee that any Prime benefit will be available, let alone for any specific period of time; and (3) provide that Amazon, in its sole discretion, may change, suspend, or remove Prime benefits at any time. Griffith contends that Amazon's delivery ads not only directly contradict but *trump* each of the above elements of the Prime Terms. The ads, Griffith argues, guarantee free WFM delivery as a Prime benefit and preclude Amazon from changing or removing that benefit. OB at 28, 30. In other words, Griffith argues that Amazon's delivery ads effectively "vary, contradict, or modify the written word" of the Prime Terms. That interpretation is *precisely* what the law *prohibits*. *Hearst*, 115 P.3d at 267; *DePhillips*, 959 P.2d at 1108. As the district court properly observed, "unwritten terms that guarantee certain benefits appear to conflict with the written provision of the [Prime Terms] that establish [Amazon's] authority to modify those same benefits." 1-ER-40 (n.9).

21

Griffith cites several inapposite cases where additional terms not included in writing could be proven with extracontractual statements or representations *without* contradicting the express terms of the contract. OB at 30-31; *see Accretive Tech. Grp., Inc. v. Adobe Sys., Inc.*, No. C15-309RSM, 2015 WL 4920079, at *7 (W.D. Wash. Aug. 17, 2015) (extracontractual warranty would "not directly contradict Section 9.4" of the contract); *Nihon Ki-In Go Inst. of the W. v. Nihon Ki-In*, No. C12-0804RSL, 2012 WL 12941689, at *1 (W.D. Wash. June 27, 2012) (court would only "consider extrinsic evidence regarding terms not included in the writing as long as they are not inconsistent with the written terms"); *Norcal Waste Sys., Inc. v. Apropos Tech., Inc.*, No. C 06-3410 CW, 2006 WL 2319085, at *5 (N.D. Cal. Aug. 10, 2006) (considering extracontractual representations, under California law, only where they "were not in direct variance (or were consistent with) the parties' written agreement"). And *Congrove v. W. Mesquite Mines, Inc.*, No. 08-CV-01191-H (PCL), 2010 WL 11508664, at *2-4 (S.D. Cal. Apr. 15, 2010) (*see* OB at 31), is even less relevant because it addressed a fraud claim, not contractual issues, under California law. But none of Griffith's cases can change the bedrock principle that extracontractual representations cannot be used to contradict or modify the contract's express terms.

Moreover, even if Amazon's advertisements (for WFM delivery or any other Prime benefit) could properly be engrafted onto the Prime Terms, it would not help

Griffith. Amazon would still retain the express contractual authority to modify or remove the WFM delivery benefit, just as it could any other Prime benefit.[2] *See, e.g.*, *Marquez*, 69 F.4th at 1270 (even assuming that "Amazon had a duty to provide Rapid Delivery" in the first instance, Amazon still "did not breach its contract because it had contractual authority to suspend Rapid Delivery").

## B. Amazon Did Not Unilaterally Modify The Prime Terms.

Griffith next contends that Amazon unilaterally (and improperly) modified the Prime Terms by implementing the WFM service fee without providing any additional consideration to Griffith. OB at 31. This argument also fails.

### 1. Amazon Exercised Its Contractual Rights.

Griffith's "unilateral modification" theory is predicated entirely on the underlying argument that "'FREE Delivery' and 'FREE 2-hour grocery delivery' from Whole Foods Market are terms that are integrated into the contract." OB at 32. As explained above, those advertisements were *not* integrated into the Prime Terms because they would contradict and modify the Prime Terms' plain and unambiguous

---

[2] Even if Amazon's delivery advertisements (which did not promise indefinite duration) could be "integrated" with the Prime Terms, there was no breach because those ads were *true*. As the district court correctly found, free WFM delivery (in certain areas, and on minimum orders) *was* in fact a Prime benefit at the time. 1-ER-17 (2nd MTD Order at 14). And Griffith admits that she used that benefit while it remained in effect. 2-ER-151-52 (FAC, ¶¶ 28-30).

provisions, which is legally impermissible. As a result, Griffith's unilateral modification theory is dead on arrival.

More to the point, Amazon cannot have "unilaterally modified" the Prime Terms by doing something Amazon was expressly entitled to do under the contract. Even if free WFM delivery had somehow become an "integrated" benefit under the Prime Terms, Amazon was contractually authorized to "remove" or change it at any time. 2-ER-138. Thus, far from "modifying" the contract, Amazon did exactly what the contract contemplates and permits. As the district court correctly concluded, "[b]ecause [Amazon]'s conduct is authorized by the terms of the [Prime Terms], there is no breach." 1-ER-40 (First MTD Order at 15); *see also Marquez*, 69 F.4th at 1270-71 (because "the contract repeatedly qualified the rights of Prime subscribers and gave Amazon the authority to modify Prime benefits," Amazon "did not breach its contract with plaintiffs by suspending Rapid Delivery"); *Nye v. Univ. of Wash.*, 260 P.3d 1000, 1005 (Wash. Ct. App. 2011) (contract authorized the alleged modification).

Rather than directly engage with the district court's sound reasoning on this point, Griffith deflects and brushes aside the Eleventh Circuit's decision in *Marquez*. *See* OB at 32-35. As an initial matter, the district court's rulings did not rise or fall with *Marquez*. The district court applied well-settled Washington law holding that "[w]here the defendant's conduct is expressly authorized by the terms of the

24

contract, there is no breach." *See* 1-ER-39-40 (First MTD Order at 14-15) (quoting *Talyancich v. Microsoft Corp.*, No. C12-1128, 2012 WL 12941690, at *2 (W.D. Wash. Nov. 2, 2012)); *see also Hard 2 Find Accessories, Inc. v. Amazon.com, Inc.*, 58 F. Supp. 3d 1166, 1172 (W.D. Wash. 2014) (dismissing breach of contract claim where the "plain language" of the contract unambiguously allowed Amazon's conduct), *aff'd sub nom. Hard2Find Accessories, Inc. v. Amazon.com, Inc.*, 691 F. App'x 406 (9th Cir. 2017).

Still, Griffith's attempts to distinguish *Marquez* are unavailing. First, Griffith suggests that *Marquez* was unique to the COVID-19 pandemic, saying that "[t]he emergent nature of the situation permeates the court's analysis." OB at 33. Not so. The pandemic had nothing to do with the court's conclusion that Amazon had "the contractual right to suspend Rapid Delivery, so it did not breach its contract with plaintiffs by suspending Rapid Delivery." 69 F.4th at 1270-71. The court addressed the pandemic only in the context of the WCPA's "public interest impact" element, which is irrelevant to the contract claim here. *Id.* at 1276-77.

Next, Griffith contends that *Marquez* is distinguishable because "Rapid Delivery" was "*not a contract term*." OB at 33 (citing *Marquez*, 69 F.4th at 1266 n.1). But Griffith misleadingly truncates the quote. The court went on to note that the term "Rapid Delivery" was a shorthand that "[t]he parties and the district court … used … to describe the enhanced shipping options available to Prime

25

subscribers." 69 F.4th at 1266 n.1. *Unlike free WFM delivery*, the Prime Terms expressly refer to enhanced shipping. Indeed, there is a standalone section, titled "Shipping Benefits and Eligible Purchases," that addresses "Prime Shipping Benefits," with a hyperlink to a separate webpage with detailed information on rapid delivery. 2-ER-137 (Prime Terms); *Marquez*, 69 F.4th at 1267. In other words, the *Marquez* plaintiffs had a far more compelling argument that "Rapid Delivery" (i.e., expedited shipping) was an express element of the Prime Terms than Griffith has for WFM delivery. The Eleventh Circuit nevertheless concluded that the shipping benefit, like any other Prime benefit, could be suspended or removed at Amazon's discretion. *See Marquez*, 69 F.4th at 1271-72.

Griffith also argues that, in *Marquez*, Amazon only "*temporarily*" suspended Rapid Delivery, whereas here Amazon "*permanently* eliminated" free WFM delivery. OB at 34. That is a distinction without a difference. The Prime Terms expressly allow Amazon to "*remove* Prime membership benefits." 2-ER-138 (Prime Terms) (emphasis added). By Griffith's reasoning, Amazon cannot exercise that express contractual right, but can properly "suspend" a benefit "temporarily." Griffith does not define what "temporarily" means in this context, what suspension period would be acceptable, or how suspension is contractually permissible while the express term "remove" is not. It is axiomatic that the Court cannot construe a contract in a manner that yields absurd results; Griffith's argument certainly

qualifies. *See King Cnty. v. Walsh Constr. Co. II, LLC*, 532 P.3d 182, 186 (Wash. Ct. App. 2023) (rejecting plaintiff's contract interpretation because "courts must avoid construing contracts in a way that leads to absurd results") (citation omitted).

Griffith also urges the Court to disregard *Marquez*'s conclusion regarding "unconscionability" because the court found that "Prime subscribers had 'the option to cancel their Prime membership *at any time*.'" OB at 34. According to Griffith, that conclusion has "factual flaws" because "Prime subscribers with annual memberships, like Griffith, could not cancel their membership at any time." *Id*. To start, the unconscionability discussion is irrelevant here because Griffith has never challenged the Prime Terms as unconscionable. *See* 2-ER-284-312 (CAC). More to the point, Griffith is wrong on the facts. The Prime Terms state that "[y]ou may cancel your Prime membership any time." 2-ER-137. The Prime Terms state further that, if Amazon makes changes to Prime and "YOU DO NOT AGREE TO ANY CHANGES," then "YOU MUST CANCEL YOUR MEMBERSHIP." *Id*. If the customer fails to cancel, then "CONTINUED MEMBERSHIP … CONSTITUTES YOUR ACCEPTANCE OF THE CHANGES." 2-ER-137-38. Whether cancellation comes with a full or partial *refund* of Prime membership fees is a separate issue; but, as the *Marquez* court found, it is indisputable that Prime members are always free to cancel if they are unhappy with a change to their benefits. 69 F.4th at 1271 n.10.

### 2. A Terminable-At-Will Contract Can Be Unilaterally Modified.

Griffith acknowledges that, under Washington law, "a terminable-at-will contract may be unilaterally modified." *See* OB at 39-40; *see also Cascade Auto Glass, Inc. v. Progressive Cas. Ins. Co.*, 145 P.3d 1253, 1257 (Wash. Ct. App. 2006). The Prime Terms provide that Prime members can "cancel your Prime membership any time," and conversely Amazon can also "terminate your Prime membership at our discretion without notice." 2-ER-137, 139 (Prime Terms). That is clearly (and literally) a contract terminable, by either party, at will.

Griffith argues that the Prime Terms are not terminable at will because Prime members who used Prime benefits during their annual membership might not receive a full refund. OB at 40-41. But this again conflates *cancellation* with *refunds*. Prime members can always cancel at "any time." 2-ER-137 (Prime Terms). If they have enjoyed Prime benefits, they might not be entitled to a full refund, but that does not undercut either party's right to terminate. *Id.* Griffith never alleged that she tried to cancel but could not. Nor did Griffith allege that she sought any refund (full or partial) and was denied. To the contrary, Griffith opted to renew and continue her Prime membership for more than a year *after* she paid (and was obviously aware of) the WFM service fee. 2-ER-152-53 (FAC, ¶¶ 31, 36). And she ultimately "successfully declined to renew" (i.e., cancelled) her Prime membership when she chose to do so. 2-ER-153 (FAC, ¶ 37).

28

Griffith next argues that modification of a terminable-at-will contract requires "reasonable notice," and Griffith "does not recall ever having received or seen a specific, conspicuous notice of Amazon's addition of a $9.95 service [fee] to all Whole Foods grocery purchases." OB at 40. As an initial matter, Amazon informs Prime members that Amazon "may in our discretion change ... any aspect of Prime membership, without notice to you." ER-138 (Prime Terms). And, as noted above, Amazon did not *modify* any Prime Terms; it merely exercised its express contractual rights.

Even setting those points aside, under Washington law, provided that a party receives *reasonable* notice, *advance* notice is not required to unilaterally modify a contract. *See, e.g., Capitol Pros, Inc. v. Vadata, Inc.*, No. C17-1410-JCC, 2018 WL 883870, at *3 (W.D. Wash. Feb. 14, 2018) ("requiring advance notice would cut against the doctrine of unilateral modification and undermine the efficiencies of such contracts"). Moreover, "*[a]ctual* notice is reasonable notice." *Duncan v. Alaska USA Fed. Credit Union, Inc.*, 199 P.3d 991, 1000 (Wash. Ct. App. 2008) (emphasis added).

In all events, Griffith does not deny receiving Amazon's advance notice about the upcoming change to WFM deliveries. She carefully alleged only that she did not *recall* seeing "a specific, conspicuous notice." *See, e.g.*, 2-ER-152 (FAC, ¶ 32). But forgetful parties and artful pleading cannot carry the day, and the Court should not

29

"accept as true allegations contradicting documents that are referenced in the complaint." *Johnson*, 793 F.3d at 1008 (citation omitted). Griffith repeatedly referenced articles showing that the WFM delivery fee was widely reported, before October 2021, because Amazon sent "U.S. customers an email saying it was going to charge $9.95 per delivery." *See, e.g.*, 2-ER-289-90, 294 (CAC, ¶¶ 13-14, nn.3, 5, 9); 2-ER-228 (Washington Post article); 2-ER-232 (CNN article). Griffith also admitted that Amazon gives customers notice of the "$9.95 [WFM service fee] for 2-hour delivery" repeatedly throughout the WFM checkout process. *See, e.g.*, 2-ER-291-92 (CAC, ¶¶ 17-18); OB at 22. And Griffith was undeniably on notice of the $9.95 service fee *after she paid the fee* for her January 22, 2022 WFM order. 2-ER-152 (FAC, ¶ 31); 2-ER-294 (CAC, ¶ 25).

In short, Griffith received notice, both before *and* after Amazon removed the benefit. Even if removing a benefit "modified" the terms (it did not), that notice is all that would be required to modify the at-will Prime Terms. *See Capitol Pros*, 2018 WL 883870, at *3 (plaintiff received reasonable notice of contract modification when defendant assigned a competing firm to a worksite followed by oral confirmation); *see also Duncan*, 199 P.3d at 1000 (a contract modification is effective upon reasonable notice and "[t]here is no requirement for reasonable notice to be *prior* notice") (emphasis added).

Finally, Griffith argues that Amazon modified the contract without providing consideration to Prime members. This also misses the mark. When Griffith became aware of the upcoming change to WFM deliveries, she could immediately have cancelled her Prime membership but chose not to. "Foregoing the right to terminate constitutes sufficient consideration in the context of unilateral modification." *Capitol Pros*, 2018 WL 883870, at *3; *see also Cascade Auto Glass*, 145 P.3d at 1257 (consideration is adequate where party continues the contract despite right to terminate). And that is precisely what the Prime Terms provide. *See* ER-138 ("YOUR CONTINUED MEMBERSHIP AFTER WE CHANGE THESE TERMS CONSTITUTES YOUR ACCEPTANCE OF THE CHANGES."). Accordingly, Griffith's unilateral modification theory fails in all respects.

## C. The Prime Terms Are Not "Illusory."

Griffith next argues that allowing Amazon to "eliminate any and all Prime benefits at any time" would render the Prime Terms "illusory." OB at 35. The district court rejected that argument, and for good reason because it is inconsistent with Washington law. "In Washington, a contract is illusory only if it lacks all consideration and mutuality of obligation, e.g., the promisor has *no* obligations with regard to *any* parts of the contract." *Ekin v. Amazon Servs., LLC*, 84 F. Supp. 3d 1172, 1176 (W.D. Wash. 2014) (emphases in original); *Quadrant Corp. v. Am.*

31

*States Ins. Co.*, 110 P.3d 733, 734 (Wash. 2005) (illusory contracts are those without any consideration whatsoever).

The Prime Terms plainly do not fit that standard. Even accepting Griffith's allegation that she only joined Prime to get free WFM delivery—a dubious claim in light of her continued Prime membership for a year after implementation of the delivery fee—she received the benefit of her bargain. Griffith took advantage of the benefit and received several free WFM deliveries. 2-ER-151-52 (FAC, ¶¶ 28-30). And after the WFM delivery fee was implemented, Griffith continued to "mak[e] online purchases," thus taking advantage of her Prime membership. 2-ER-153 (FAC, ¶ 36). Griffith also acknowledged that Prime members enjoy an expansive suite of valuable benefits, such as "same, one or two-day delivery of goods and streaming music, video, e-books, gaming[,] and grocery shopping services." 2-ER-143 (FAC, ¶ 7). As the district court explained, "[c]ancellation of one benefit does not render the contract 'completely illusory.'" 1-ER-42 (First MTD Order at 17); *see also Marquez*, 69 F.4th at 1271 (the Prime Terms were not illusory because "there are other Prime benefits and services (such as streaming access for movies, television shows, and music) that were not suspended"); *Ekin*, 84 F. Supp. 3d at 1176 (Amazon's Conditions of Use were not illusory because they "created several performance obligations for Amazon, the alleged breach of which forms the basis of this suit").

Griffith conjures a counterfactual hypothetical where "Amazon could unilaterally terminate virtually all services under the contract." OB at 37. But that is not even remotely what occurred here. Amazon removed a single Prime benefit—which, incidentally, only some Prime members in certain locations were able to enjoy—but left intact many other Prime benefits, including free and fast shipping. And there is no question those remaining benefits were valuable because Griffith continued to take advantage of them. In fact, at oral argument before the district court, Griffith's counsel admitted that the "elimination of too many Prime benefits" is "not this case." SER-38 (MTD Hrg. Tr. at 36:11-17). The Court need not entertain or credit a fanciful hypothetical that "hangs on future contingencies that may or may not occur" and that is "too impermissibly speculative to present a justiciable controversy." *In re Coleman*, 560 F.3d 1000, 1005 (9th Cir. 2009).

Griffith's cases do not change the outcome. For example, in *Interchange Assocs. v. Interchange, Inc.*, the court found the contract illusory because the plaintiffs had an "absolute right to not perform [the contract] at all." 557 P.2d 357, 359 (Wash. Ct. App. 1976). And *State v. Hirocke*, 17 Wash. App. 2d 1024, 2021 WL 1575231 (Wash. Ct. App. 2021), which Griffith also cites, undermines her argument. There, the court found that the contract was *not* illusory because the promisor could not "avoid the obligations set forth in the contract," which meant that its performance was not "optional" or "entirely discretionary." *Id.* at *3. Here,

33

there is no credible argument that Amazon has "*no* obligations with regard to *any* parts" of the Prime Terms.[3] *Ekin*, 84 F. Supp. 3d at 1176. As such, the Prime Terms are not "illusory."

In summary, Griffith's breach of contract claim fails as a matter of law. She cannot allege any breach of the Prime Terms themselves, cannot engraft new and inconsistent terms onto the contract, and cannot show that the Prime Terms are illusory. The district court properly dismissed this claim.

## II. THE DISTRICT COURT CORRECTLY DISMISSED GRIFFITH'S IMPLIED-COVENANT CLAIM.

The district court properly dismissed Griffith's implied-covenant claim because Amazon's "conduct was authorized by the [Prime Terms] and thus [Amazon] had no duty that was required to be performed in good faith." 1-ER-22 (Second MTD Order at 19). Under well-established Washington law, the implied covenant "cannot add or contradict a contract's express terms." *134th St. Lofts, LLC v. iCap Nw. Opportunity Fund, LLC*, 479 P. 3d 367, 374 (Wash. Ct. App. 2020) (citing *Rekhter v. State, Dep't of Soc. & Health Servs.*, 323 P.3d 1036, 1041 (Wash. 2014)); *see also Hard 2 Find Accessories*, 58 F. Supp. 3d at 1173-74. There also is "no 'free-floating' duty of good faith and fair dealing that is unattached to an existing

---

[3] Even setting aside the valuable Prime benefits, the Prime Terms also obligate Amazon (among other things) to "give you a prorated refund based on the number of full months remaining in your membership" if Amazon terminates a member's membership and to adjudicate any dispute or claim in Washington courts. ER-139.

contract." *Keystone Land & Dev. Co. v. Xerox Corp.*, 94 P.3d 945, 949 (Wash. 2004). The duty of good faith and fair dealing does not "'inject substantive terms into the parties' contract.'" *Badgett v. Sec. State Bank*, 807 P.2d 356, 360 (Wash. 1991) (citations omitted). Instead, "the duty arises only in connection with terms agreed to by the parties." *Id.*

Griffith first argues that Amazon was obligated to exercise its discretion under the Prime Terms "reasonably" because "there must be some line between Amazon's reasonable and unreasonable exercise of its discretion." OB at 44-46. There is no "reasonableness" question to decide here. The Prime Terms provide that Amazon has the sole discretion to change Prime benefits. 2-ER-138. Because the Prime Terms "unambiguously permit" Amazon's conduct, as a matter of law, there is "no room for the exercise of discretion" and "nothing to which to apply the covenant of good faith." *Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.*, 935 P.2d 628, 633 (Wash. Ct. App. 1997); *see also Haywood v. Amazon.com, Inc.*, No. 2:22-cv-01094-JHC, 2023 WL 4585362, at *6 (W.D. Wash. July 18, 2023) (rejecting implied-covenant claim; "because the contract unambiguously grants Amazon the sole discretion to moderate content, it does not appear that such a 'good faith' requirement exists") (collecting cases).

Griffith's proposed "reasonable discretion" exception would effectively swallow the rule. Griffith argues that Amazon's removal of free WFM delivery was

35

inherently unreasonable because she personally valued the benefit. OB at 21, 45; 2-ER-151 (¶¶ 25, 27). But such an argument would apply to any Prime benefit and render Amazon's "sole discretion" effectively meaningless. Griffith nevertheless falls back on her generic allegations that Amazon "evaded the spirit of the bargain," rendered "imperfect performance," and "imposed the $9.95 delivery fee in bad faith." OB at 46. Those are just euphemisms for Griffith's attempt to impose on Amazon contractual obligations that "contradict [the parties'] express [contract] terms." *134th St. Lofts*, 479 P. 3d at 374; *see also SAK & Assocs., Inc. v. Ferguson Constr., Inc.*, 357 P.3d 671, 676 (Wash. Ct. App. 2015) ("[C]ovenants of good faith and fair dealing do not trump express terms or unambiguous rights in a contract."). Again, the Prime Terms expressly allow Amazon to remove any Prime benefits. 2-ER-137-38. Amazon merely exercised its contractual rights. The implied covenant does not require Amazon "to accept a material change in the terms of its contract," and "there cannot be a breach of the duty of good faith" when Amazon "simply stands on its rights to require performance of a contract according to its terms." *Badgett*, 807 P.2d at 360.

Griffith again fixates on, and misconstrues, *Marquez*. She argues that the district court misapplied *Marquez* because "the 'as available' clause of the Prime contract is not at issue" in this case and Amazon "promis[ed] (and integrat[ed] in the contract) 'free' Whole Foods delivery." OB at 47. Those arguments are baseless.

36

*Marquez* did not turn on the "availability" language in the Prime Terms. The Eleventh Circuit held that Amazon's right to "choose in its *sole discretion* to add or remove" Prime benefits is "the quintessential case of 'a contract [that] gives a party unconditional authority,'" such that "there is no duty of good faith and fair dealing" under Washington law. 69 F.4th at 1274 (citing *Rekhter*, 323 P.3d at 1044). And as discussed above, Amazon's extracontractual delivery advertisements cannot be "integrated" into the Prime Terms if they conflict with or undermine Amazon's rights under the contract's unambiguous terms. Because the Prime Terms do not even mention WFM, let alone promise free WFM delivery, Griffith's argument is the epitome of a "free-floating" duty untethered to the contract. *See Johnson v. Yousoofian*, 930 P.2d 921, 925 (Wash. Ct. App. 1996) ("The implied duty of good faith is derivative, in that it applies to the performance of specific contract obligations. If there is no contractual duty, there is nothing that must be performed in good faith.") (citations omitted); *Keystone Land*, 94 P.3d at 949; *PBTM LLC v. Football Nw., LLC*, No. C19-2081-RSL, 2022 WL 670920, at *4 (W.D. Wash. Mar. 7, 2022) (dismissing claim where the alleged "implied duty [was] untethered to the plain language of the agreement"); *U.S. Bank Nat'l Ass'n v. Tait,* No. C16-767-JCC,

37

2016 WL 5141990, at *7 (W.D. Wash. Sept. 21, 2016) ("If there is no contractual duty, there is nothing that must be performed in good faith.").[4]

Griffith's cases are easily distinguishable or affirmatively undercut her claim. OB at 42-43, 45, 47. In *Skansgaard v. Bank of Am., N.A.*, the court declined to dismiss the implied-covenant claim because a key contract term was ambiguous, such that the reasonableness of the defendant's actions was a factual question. 896 F. Supp. 2d 944, 948 (W.D. Wash. 2011). Here, there is nothing ambiguous about the Prime Terms. In *Rekhter*, the court explained that "the duty of good faith and fair dealing arises when one party has discretionary authority to determine a *future* contract term," such as "quantity, price, or time." *Rekhter*, 323 P.3d at 1041 (emphasis added). There is no future contract term at issue here. And in *Encore D.E.C., LLC v. APES I, LLC*—which was decided on summary judgment, not a motion to dismiss—the contract did not give defendants an unconditional right or sole discretion. 2015 WL 5007773, at *9 (W.D. Wash. Aug. 20, 2015). Unlike in *Skansgaard*, *Rekhter*, and *Encore*, the Prime Terms clearly give Amazon "sole

---

[4] In a footnote, Griffith argues that the district court erred by suggesting that Griffith must allege "which specific contractual provisions relate" to her implied-covenant claim. OB at 44 n.7. To the contrary, the district court had it exactly right. The duty of good faith and fair dealing "is not free-floating, but arises only in connection with terms agreed to by the parties." 1-ER-22 (Second MTD Order at 19) (quotation omitted). Griffith must identify how Amazon performed *some specific element of the Prime Terms* unfairly or in bad faith. She has not even attempted to do that.

discretion" with respect to Prime benefits. ER-138. Griffith's arguments would drain that phrase of all meaning and deprive Amazon of the benefit of *its* bargain with Prime subscribers.

Griffith also cites *Smartwings, a.s. v. Boeing Co.*, No. C21-918 RSM, 2022 WL 579342 (W.D. Wash. Feb. 25, 2022). OB at 49-50. But in that case, there was no suggestion that the implied-covenant claim would contradict the express terms of the contract. *Smartwings*, 2022 WL 579342, at *6. And in *SAK & Assocs.*, the court explained that the implied covenant "do[es] not trump express terms or unambiguous rights in a contract" and "does not restrict" rights under "an express and unambiguous" contractual clause. 357 P.3d at 676. Thus, *Smartwings* and *SAK* dictate that Griffith's implied-covenant claim must be dismissed because it directly conflicts with Amazon's contractual rights.

In sum, the district court got it right: any "restriction on Defendant's right to modify Prime benefits, or an obligation to provide a refund when Prime benefits are modified, would contradict the express terms of the [Prime Terms] and effectively renegotiate the original bargain." 1-ER-24 (Second MTD Order at 21). This Court should affirm dismissal of Griffith's implied-covenant claim.

## III. THE DISTRICT COURT CORRECTLY DISMISSED GRIFFITH'S WCPA CLAIM.

To state a claim under the WCPA, a plaintiff must establish (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) public interest

39

impact, (4) injury to the plaintiff's business or property, and (5) causation. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 532 (Wash. 1986). As addressed below, Griffith did not adequately plead elements one (unfair or deceptive act) and five (causation).

### A. Griffith Pled No Unfair Or Deceptive Act.

The district court correctly ruled that Griffith alleged no "unfair or deceptive practice." 1-ER-16-22 (Second MTD Order at 13-19). As a threshold matter, Griffith does not challenge the district court's ruling that her WCPA claim sounds in fraud, in light of her allegations that Amazon "*knowingly and intentionally* failed to disclose and actively concealed material facts and made false and misleading statements regarding its service fee." 1-ER-13-14 (Second MTD Order at 10-11). Thus, her allegations must clear the much higher pleading bar set by Rule 9(b). *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (Rule 9(b) requires factual allegations of "the who, what, when, where, and how," beyond just "the neutral facts necessary to identify the transaction.") (citation omitted).

In her pleadings, Griffith asserted three theories in support of her WCPA claim: (1) a misrepresentation-in-advertising theory, that Amazon's "representations that Prime members will receive 'FREE Delivery' and 'FREE 2-Hour Grocery Delivery' are false [and] misleading;" (2) an omission-in-pricing theory (or what Griffith called a "bait-and-switch" scheme or "drip pricing"), that the landing page

40

of the WFM website fails to disclose the "service fee along with the advertised price of the Whole Foods grocery items;" and (3) a "no-refund" theory concerning Amazon's alleged "failure to provide any reduction or rebate in Prime membership fees or any way for annual members to cancel their membership in response to its imposition of the service fee." *See* 2-ER-146-47 (FAC, ¶¶ 12-13, ¶ 15), 2-ER-150-52 (FAC, ¶¶ 23, 34), 2-ER-158 (FAC, ¶ 61).

Griffith has abandoned her omission-in-pricing theory, conceding that Amazon *does* in fact "disclose[] the service fee during the check-out process." *See* OB at 21-22; 1-ER-19 (Second MTD at 16); *see also* 2-ER-147-49 (FAC, ¶¶ 16-18) (reflecting Amazon's repeated disclosures of the optional WFM service fee before checkout). Instead, Griffith doubles down on her other theories and advances a new theory that never appeared in her pleadings. Those flawed theories cannot revive Griffith's WCPA claim.

### 1. Amazon Did Not Make Any False Or Misleading Statement.

The district court rejected Griffith's WCPA misrepresentation theory because "any ad statements that Whole Foods grocery delivery was 'free' were true at the time they were made." 1-ER-17 (Second MTD Order at 14). On appeal, Griffith argues that there are "unknown facts regarding … when [Amazon] stopped advertising this specific benefit that made it inappropriate for the district court to

41

dismiss" the claim without discovery. OB at 16.[5] That is exactly backward. Because the WCPA claim is subject to Rule 9(b)'s heightened pleading standard, it is *Griffith* who must identify with particularity "the who, what, when, where, and how" of Amazon's misconduct. *Kearns*, 567 F.3d at 1124. She cannot meet that standard by relying on undated "representative examples" of Amazon's purported misrepresentations (*see* 2-ER-143-45 (FAC, ¶ 9)), without specifying when Amazon made the statements and, more importantly, *how or why they were false* at the time. *See, e.g., Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106-07 (9th Cir. 2003) (plaintiff cannot satisfy Rule 9(b) without allegations identifying "specific misrepresentations," "when and where they occurred," and "what is false or misleading about a statement, and why it is false").

Griffith's own experience indeed dooms her misrepresentation theory. Griffith alleged that in "early and mid-2021," she "saw and reasonably relied on Amazon's online advertisements of its free delivery of Whole Foods groceries" in

---

[5] Griffith argues that she needs discovery regarding when Amazon "decided to terminate or started contemplating termination of the free Whole Foods delivery service" and whether "these advertisements continued even after Amazon knew it might terminate the benefit." OB at 17-18. She claims to need discovery to probe Amazon's "present intent." *Id*. at 18. But, from the other side of her mouth, Griffith argues that she "need not show the act in question was intended to deceive." *Id*. at 15-16 (quoting *Panag v. Farmers Ins. Co.*, 204 P.3d 885, 894 (Wash. 2009)). In all events, before conducting discovery, Griffith must first plead a viable false or misleading statement, which she has not done.

deciding "to subscribe to Amazon's Prime services." 2-ER-151 (FAC, ¶¶ 24-25). But as Griffith admitted, she received several free WFM delivery orders, just as advertised, after becoming a Prime member in June 2021. 2-ER-151-52 (FAC, ¶¶ 28-31). Griffith was not charged any WFM delivery fee until January 22, 2022 (after Amazon's notice to members of the upcoming change). 2-ER-152 (FAC, ¶ 31). In other words, as the district court concluded, there is no discrepancy between what Amazon said and what it did; it is not false or deceptive for Amazon to advertise free WFM delivery at a time when it was indeed free. *See, e.g.*, *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 794 (9th Cir. 2012) (dismissing misrepresentation-based consumer-protection claims absent allegations that defendant's representations "were false or deceptive when made"). To hold otherwise would make it unlawful to advertise anything and later stop offering it.

Griffith nevertheless doubles down on her WCPA claim premised on Amazon's pre-October 2021 delivery advertisements. She argues that Amazon's advertisements "have the capacity to induce a reasonable consumer to sign up for the Prime service," and a "reasonable consumer should not be expected to look beyond Amazon's misleading advertisements to discover the truth from small print buried in the Prime Terms." OB at 21-22. But this theory presupposes that Griffith has met her burden to allege any misrepresentation. In support of that misguided argument, Griffith relies on two cases, *Williams v. Gerber Prod. Co*., 552 F.3d 934

(9th Cir. 2008), and *Walters v. Vitamin Shoppe Indus., Inc.*, 701 F. App'x 667 (9th Cir. 2017).  OB at 22.  Both cases involved one-time product purchases with no ongoing contract, much unlike the ongoing Prime membership that is governed by the Prime Terms.  *Walters*, 701 F. App'x at 670 (explaining that the "operative question" in that case was "not whether [the plaintiff] unreasonably failed to read the terms of a contract" because "no contract exists"); *Williams*, 552 F.3d at 940 (addressing product packaging on children's snacks).  *See also Storey v. Amazon.com Servs. LLC*, No. C23-1529-KKE, 2024 WL 2882270, at *7 (W.D. Wash. June 7, 2024) ("It is one thing … to assume that consumers shopping at a grocery store do not read every word printed on a food packaging label before purchasing it, but another thing to assume that parties to a valid contract have not read its terms.").  Moreover, *Williams* and *Walters* merely held that corrective "fine print" on the back or side of product packaging cannot "correct" misrepresentations on the front of the packaging.  *Williams*, 552 F.3d at 939-40; *Walters*, 701 F. App'x at 670.

Here, even if product packaging were an apt analogy for a contract, there is no "front-back" dichotomy: Griffith failed to allege any misrepresentation on the "front" because Amazon never guaranteed, expressly or implicitly, that free WFM delivery would remain a Prime benefit.  Absent a misrepresentation on the "front" of the product (whatever that would be in this context), there is nothing for the "fine

44

print" on the "back" to "correct." As this Court has explained, only "*if* the defendant commits an act of deception, the presence of fine print revealing the truth is insufficient to dispel that deception." *Ebner*, 838 F.3d at 966 (dismissing packaging-based claim because there is "no deceptive act to be dispelled"). Accordingly, Griffith failed to state a WCPA claim premised on Amazon's pre-October 2021 delivery advertisements.

For the first time in the FAC, Griffith alleged that, on October 21, 202<u>2</u> (a year *after* the service fee was introduced), she saw an Amazon ad for "Fast, free delivery" and "2-hour delivery on a wide selection of fresh ingredients." 2-ER-152-53 (FAC, ¶ 35). But the FAC never identified that ad as a basis for Griffith's WCPA claim. Moreover, at oral argument before the district court, Griffith's counsel affirmatively disavowed that the October 2022 ad relates to Griffith's WCPA claim, stating that the "ad is in the complaint partly to address the class allegations" and "does not go to [Griffith's] injury," but is merely "informative." SER-48 (MTD Hrg. Tr. 46:5-14).

Even if the October 2022 advertisement were relevant, it was not deceptive. "Deceptiveness," for WCPA purposes, must be judged by an objective "'reasonable' or 'ordinary' consumer standard" to "prevent every consumer complaint from becoming a triable violation of the act." *Behnke v. Ahrens*, 294 P.3d 729, 736 (Wash. Ct. App. 2012) (citing *Panag*, 204 P.3d at 895). The October 2022 ad said *nothing*

45

at all about WFM. 2-ER-153 (FAC, ¶ 35). Thus, no ordinary, reasonable consumer could understand that advertisement to somehow guarantee free WFM delivery, especially when the service fee for WFM deliveries had been in effect for a full year *and* Amazon offered other grocery delivery services like Amazon Fresh.

On appeal, Griffith nevertheless argues that Amazon's October 2022 ad created a deceptive "net impression" because "a reasonable consumer could be misled into believing this ad promises free Whole Foods deliveries in light of Amazon's past promotion and provision of free Whole Foods Market deliveries, its well-publicized ownership of Whole Foods, and the omission from the ad of any qualifiers." OB at 20. That argument is belied by the facts and Griffith's own allegations. <u>First</u>, it is undisputed that, a full year before the October 2022 advertisement, Amazon notified Prime members of the upcoming introduction of the WFM delivery fee and the media widely covered that change. *See, e.g.*, 2-ER-146 (FAC, ¶ 13, n.3); 2-ER-289-90, 294 (CAC, ¶¶ 13-14, nn.3, 5, 9); 2-ER-228 (Washington Post article); 2-ER-232 (CNN article). Griffith offers no coherent explanation for why Amazon's "past promotion" of free WFM deliveries would be stubbornly lodged in consumers' memories, but they would entirely forget that Amazon publicly discontinued that benefit. <u>Second</u>, Amazon offers a different grocery delivery service, Amazon Fresh, and had previously advertised "free two-hour [grocery] delivery from Fresh." 2-ER-143-44 (FAC, ¶ 9). Again, Griffith

cannot explain why reasonable consumers would assume that the October 2022 grocery delivery ad means delivery specifically *from WFM*, rather than Fresh or other Amazon services. Third, Amazon's October 2022 advertisement stated that only items with "the Prime check mark … means fast, free delivery," notifying consumers that "free delivery" was not universally available. 2-ER-152-53 (FAC, ¶ 35). Tellingly, and as discussed further below, Griffith did not allege that *she* was misled or deceived by the October 2022 advertisement in any way. In sum, Griffith's own allegations show that the October 2022 ad created no deceptive "net impression."

## 2. Amazon Did Not Make A Material Omission.

In her opposition to Amazon's motion to dismiss the FAC, Griffith raised for the first time a new argument that Amazon's advertisements were deceptive because they omitted the "non-guaranteed nature" of the free WFM delivery benefit. 2-ER-74-75 (Opp. to Amazon's Second MTD). Griffith now raises that argument on appeal, claiming that the "advertising could mislead consumers into believing they would receive free Whole Foods delivery for the term of their annual Prime membership." OB at 18-19, n.2. That argument fails on several fronts.

First, Griffith's "implied-guarantee" theory was not asserted in her complaints. *See* 2-ER-141-61 (FAC); 2-ER-284-312 (CAC); *see also* SER-28-29 (MTD Hrg. Tr. at 26:15-27:1) (Griffith's counsel admitting that the FAC "does not

expressly or explicitly" allege that Amazon's advertisements should have disclosed whether the benefit would be available for "the term of her annual subscription").[6] It is well-established that, "[i]n determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (citation omitted); *see also Voss-Curry v. Crown Equip. Corp.*, No. 2:22-cv-01062-BJR, 2022 WL 4368047, at *2 (W.D. Wash. Sept. 21, 2022) (citation omitted).  Because Griffith made this implied-guarantee argument for the first time in her dismissal opposition, the district court properly declined to address it, and this Court should do the same. 1-ER-18 (Second MTD Order at 15).  The district court granted Griffith leave to amend to pursue this new theory, but Griffith opted to forgo that opportunity and seek immediate appeal.

---

[6]  In a footnote, Griffith contends that she *did* raise the implied-guarantee theory in the FAC by alleging "(1) that Amazon acted unfairly and deceptively by inducing consumers to sign up for Prime memberships with the promise of free Whole Foods Market delivery while later refusing to refund or permit cancellation of the annual memberships when free delivery was terminated, and (2) that Amazon 'fail[ed] to perform under the contract by continuing to provide Plaintiff with free Whole Foods Market delivery … during the duration of Plaintiff's annual contract.'"  OB at 19 n.2.  Those allegations are far too generic and vague to give Amazon "fair notice" of the claim "and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (applying rule 8(a)).

Griffith's implied-guarantee theory also fails on the merits. The only "example" advertisements included in Griffith's complaints show that Amazon never suggested or implied that WFM delivery would be free for the duration of any Prime membership. 2-ER-143 (FAC, ¶ 9). In fact, those examples did not even state that free WFM delivery was a Prime benefit. *See* 2-ER-143-44 (FAC, ¶ 9) (first image showing "FREE 2-Hour Grocery Delivery" but never mentioning Prime; second and third images showing "FREE … Delivery" for Prime members, but for non-grocery package deliveries, not WFM); 2-ER-146 (FAC, ¶ 11) (image stating that "Prime members get convenient 2-hour grocery delivery," but nothing about free delivery). No ordinary, reasonable consumer would read those ads as guaranteeing free WFM delivery for any particular time period.

Griffith relies on a wholly inapposite case, *Ruiz-Torres v. Mercer Canyons, Inc.*, 835 F.3d 1125 (9th Cir. 2016), which arose from a motion for class certification. OB at 18. *Ruiz* stands for the unremarkable proposition that an omission theory *could* be viable under the WCPA, *id.* at 1136, but that is no help to Griffith. As discussed, WCPA claims are judged by the standard of the "ordinary," "reasonable" consumer. *Behnke*, 294 P.3d at 732. Even if a small subset of consumers might unreasonably misconstrue Amazon's ads as an implied guarantee of perpetually free WFM deliveries (a conclusion that Amazon does *not* agree with or concede), that would not render Amazon's conduct unfair or deceptive. *See, e.g., Davis v. HSBC*

*Bank Nevada*, 691 F.3d 1152, 1162 (9th Cir. 2012) (dismissing false advertising claim because "[a] representation does not become 'false and deceptive' merely because it will be unreasonably misunderstood by an insignificant and unrepresentative segment of the class of persons to whom the representation is addressed"); *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1230 (9th Cir. 2019) (dismissing consumer protection claims; "[j]ust because some consumers may unreasonably interpret" a statement does not render it false or deceptive).

Griffith's implied-guarantee theory also faces the same insurmountable hurdle as her other theories: conduct cannot be "unfair or deceptive" if it is fully disclosed to the consumer and she consents to it.  *See Marquez*, 69 F.4th at 1274-75 ("a representation that does not 'hid[e] the ball in any way,' … is not unfair or deceptive—despite the impact that those terms may have on the consumer—because '[p]erfection is not the standard'"); *Smale v. Cellco P'ship*, 547 F. Supp. 2d 1181, 1188 (W.D. Wash. 2008) (no unfair or deceptive conduct where the contract unambiguously disclosed that Verizon has "the right to assess additional fees," even if it did not specifically spell out the charge at issue).  Here, Amazon fully and unequivocally disclosed that it can "add or remove Prime membership benefits" in its "sole discretion."  2-ER-138 (Prime Terms).  Consumers can easily avoid any alleged injury by simply reviewing the Prime Terms and declining to purchase or renew their Prime membership if they are uncomfortable with the fact that the suite

50

of Prime benefits can change over time. Simply put, "Amazon's exercise of a right permitted by the contract and disclosed to Plaintiff is not an unfair or deceptive act or practice." *Haywood*, 2023 WL 4585362, at *11. Griffith's belated implied-guarantee theory cannot save her WCPA claim.

### 3. Amazon Did Not Act Unfairly.

According to Griffith, "Amazon acted unfairly by inducing consumers to sign up for annual Prime subscriptions with the promise of free Whole Foods delivery, then refusing to refund or permit members to cancel those subscriptions when it unilaterally terminated the service with little or no warning." OB at 24. To start, that argument is completely contrary to the facts. As addressed above, Amazon never "promised" free WFM delivery for the duration of the Prime membership. Nor did Amazon introduce WFM delivery fees with "little or no warning." Amazon notified Prime members *30 days* before the change, which was ample time for members to cancel their subscriptions (which Griffith chose not to until after her membership had renewed for another year). Griffith never asked for a refund, and there is also no allegation that Amazon refused to refund anyone.

Moreover, nothing about Amazon's conduct was "unfair." The district court applied the same standard that the Washington Supreme Court articulated in *Greenberg v. Amazon.com, Inc.*, 553 P.3d 626 (Wash. 2024). In *Greenberg*, the court noted that Washington is guided by federal interpretations of the Federal Trade

Commission ("FTC") Act and similar statutes, and held that the FTC's three unfairness criteria apply to the WCPA. *Id*. at 639-40. Under the "substantial injury" criterion, an act or practice is unfair when it "causes or is likely to cause substantial injury to consumers," "which is not reasonably avoidable by consumers themselves," and "not outweighed by countervailing benefits to consumers or to competition." *Id.* at 641. As the court noted, this is the prevailing federal standard on unfairness and considered the "most important" of the three criteria. *Id.* at 639-40; *see also Klem v. Wash. Mut. Bank*, 295 P.3d 1179, 1187 (2013). The other two criteria include whether an act or practice is "immoral, unethical, oppressive, or unscrupulous" or "offends public policy." *Greenberg*, 553 P.3d at 639. While the *Greenberg* court noted that there "may [] be additional ways" to show unfairness, it did not define or offer guidance on what those ways might be. *Id.* at 641.

Griffith first argues that the district court erred "by concluding that the substantial injury test is the only standard for unfair conduct under the WCPA." OB at 25. But the district court did no such thing. Instead, it held that exercising a valid and fully disclosed contractual right is not unfair, including because any alleged injury would be "reasonably avoidable" by consumers under the substantial injury criterion. *See* 1-ER-21 (Second MTD Order at 18).

The district court got it exactly right. As the Washington Supreme Court explained, "[a]n injury is reasonably avoidable if consumers 'have reason to

anticipate the impending harm and the means to avoid it,' or if consumers are aware of, and are reasonably capable of pursuing, potential avenues toward mitigating the injury after the fact." *Greenberg*, 553 P.3d at 642 (quoting *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1168-69 (9th Cir. 2012)). In *Davis*, this Court rejected the plaintiff's claim that defendant acted unfairly by failing to disclose a credit card annual fee. 691 F.3d at 1168. The Court found that the plaintiff had "the means to avoid" the alleged harm because he agreed to terms that "were enough to give a reasonable consumer 'reason to anticipate' the possibility of fees." *Id.* at 1169. The Court found that the plaintiff also had the means to avoid his injury after-the-fact by terminating his account and seeking a refund, even if doing so might negatively impact his credit score. *Id.* at 1169. As the Court explained, "the question [] is not whether subsequent mitigation was convenient or costless, but whether it was 'reasonably possible.'" *Id.* at 1169.

Here, the Prime Terms fully disclose that Prime benefits are subject to change, and they also disclose Amazon's refund policy. 2-ER-138. Griffith does not dispute that she assented to and is bound by the Prime Terms. Griffith also never alleged that the Prime Terms were hidden or unavailable to her. As in *Davis*, Griffith had "the means to avoid" the alleged injury because she could simply have read the Prime Terms and, if they were unacceptable, chosen not to enroll. *See Greenberg*, 553 P.3d at 642; *see also Alpert v. Nationstar Mortg., LLC*, No. C15-1164 RAJ,

53

2019 WL 1200541, at *6 (W.D. Wash. Mar. 14, 2019) (alleged forced placement of insurance policy was not "unfair" because plaintiff "was free, at any time, to choose his own insurance policy"). Griffith also could have mitigated her alleged injury by canceling her Prime membership at "any time"—including after she was aware that Amazon had introduced WFM delivery fees—and seeking a refund. Griffith took none of those steps, and chose instead to remain a Prime member for another year and a half because she did not "g[et] around to cancelling her subscription." 2-ER-153 (FAC, ¶ 36).

Griffith nevertheless argues that Amazon acted unfairly "against the public interest" by "burying a disclosure of the contingent nature of its promises in terms and conditions that ordinary consumers do not read." OB at 25-26. That argument has no basis in the law. <u>First</u>, an amorphous reference to the "public interest" is insufficient to support an unfairness claim. As the *Greenberg* court explained, for a public policy consideration to give rise to a WCPA claim, it must be "clear and well-established," meaning that the interest "should be declared or embodied in formal sources such as statutes, judicial decisions, or the Constitution as interpreted by the courts, rather than being ascertained from the general sense of the national values." 553 P.3d at 639-40, 644. Griffith's claim has no "well-established" basis in any public policy and instead, relies on her subjective sense of "unfairness."

Second, Griffith's argument runs counter to the principle that "[p]arties to a valid contract are bound by its terms even if they choose not to read the terms, and conduct conforming with a valid contract is generally not unfair or deceptive for purposes of a CPA claim." *Storey*, 2024 WL 2882270, at *7; *see also Michak v. Transnation Title Ins. Co.*, 64 P.3d 22, 28 (Wash. 2003) ("[A] party who signs an instrument manifests assent to it and may not later complain about not reading or not understanding."); *Haywood*, 2023 WL 4585362, at *7 (dismissing WCPA claim where the applicable terms "expressly provide that Amazon may take these actions," because "exercising a right that a contract permits and is fully disclosed to the parties in advance is not an unfair or deceptive act or practice").

Griffith contends that Amazon also "unfair[ly] terminat[ed]" the WFM delivery benefit "without refund of [*sic*] recourse to Prime subscribers." OB at 27. That argument suffers the same fate. The Prime Terms disclose upfront that Amazon will "refund your full membership fee" "[i]f you cancel within 3 business days" of joining Prime; "[i]f you cancel at any other time, [Amazon] will refund your full membership fee only if you and your account did not make any eligible purchases or take advantage of Prime benefits since your latest Prime membership charge." 2-ER-137 (Prime Terms). Because Griffith does not allege that Amazon refused to give her (or any other Prime members) a refund, she lacks standing to pursue a "no-refund" theory in the first place. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560

(1992). And even if Amazon had refused, it would not be unfair for Amazon to exercise a fully disclosed and bargained-for contractual right. *See McAuliffe v. Vail Corp.*, 69 F.4th 1130, 1156 (10th Cir. 2023) (affirming dismissal of WCPA and other consumer protection claims because it was not unfair or deceptive to enforce a contractual no-refund clause); *Haywood*, 2023 WL 4585362, at *7.

In sum, the Court should reject Griffith's attempt to penalize Amazon for merely exercising its contractual rights and affirm the district court's ruling. *See Farmers Ins. Co. of Wash. v. Miller*, 549 P.2d 9, 11 (Wash. 1976) ("[T]he court cannot … create a contract for the parties which they did not make themselves, nor can the court impose obligations which never before existed.").

### B. Griffith Did Not Plead Causation.

Griffith's WCPA claim additionally fails because she did not plead causation.[7] *See Schnall v. AT & T Wireless Servs., Inc.*, 259 P.3d 129, 137 (Wash. 2011) (en banc) (a plaintiff "must establish that, but for the defendant's unfair or deceptive practice, the plaintiff would not have suffered an injury"). The district court did not

---

[7] Griffith argues that "[r]eliance is not a required element under the WCPA, and it is not even necessary that the plaintiff was actually deceived." OB at 20. That conflates the legal standard for the "unfair or deceptive" prong of the WCPA with the separate issue of causation. *See Panag*, 204 P.3d at 894 ("capacity to deceive" relates to whether an act was unfair or deceptive). Whether *reliance* is required under the WCPA is irrelevant, because *causation* undeniably is a required element. *Id.* at 899 ("Washington requires a private CPA plaintiff to establish the deceptive act *caused* injury.") (emphasis added).

need to reach this issue, but this Court "may affirm the dismissal 'based on any ground supported by the record.'" *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1093 (9th Cir. 2017).

To show causation, Griffith must plead "a causal link between the alleged acts and [Griffith's] injury." *Hangman Ridge*, 719 P.2d at 539. Amazon fully discloses the terms and conditions of a Prime membership upfront, including that Amazon can "add or remove Prime membership benefits" at "its sole discretion" and that Amazon "will refund your full membership fee" under specific circumstances. 2-ER-137 (Prime Terms). Amazon also publicly announced that it would charge a service fee for WFM deliveries starting in October 2021. *See* 2-ER-146 (FAC, ¶ 13, n.3); 2-ER-228 (Washington Post article); 2-ER-232 (CNN article). And, as Griffith concedes, Amazon repeatedly discloses the $9.95 service fee throughout the WFM checkout process. 2-ER-148-49 (FAC, ¶¶ 17-18); OB at 21-22 (acknowledging Amazon's "disclosure of the delivery fee at the time of order").

In the face of Amazon's myriad disclosures, Griffith chose to purchase a Prime membership, placed several WFM delivery orders (all of which were free except for the order on January 22, 2022, when Griffith was on notice of the service fee), and did not seek any refund or recourse from Amazon. Instead, Griffith continued her Prime subscription for another 16 months "before Plaintiff got around to cancelling her subscription" in June 2023. 2-ER-151-53 (FAC, ¶¶ 26, 28-31, 36).

Griffith's own inaction in the face of Amazon's ample disclosures were "the sole cause[s]" of her injury, which "breaks the chain of causation." *Nielson v. Eisenhower & Carlson*, 999 P.2d 42, 48 (Wash. Ct. App. 2000); *see also Schaub v. JPMorgan Chase Bank N.A.*, No. 78439-1-I, 2019 WL 2751168, at *6 (Wash. Ct. App. July 1, 2019) (dismissing WCPA claim for lack of causation where the plaintiff's "own conduct," after being placed on notice, "broke the chain of causation and caused his loss").

Nor can Griffith possibly show that Amazon's October 2022 advertisement caused her any injury. Griffith alleged that she decided to join Prime in or around June 2021 and stopped ordering WFM deliveries well before October 2022. 2-ER-151-52 (FAC, ¶¶ 26, 32). Thus, Griffith's purported injury—whether it is joining Prime in the first place or later paying the service fee—happened long before she allegedly saw the October 2022 advertisement. It is, therefore, impossible that the ad caused her injury. *See Axon v. Freedom R.V., Inc.*, 21 Wash. App. 2d 1073, n.4 (Wash. Ct. App. 2022) (because plaintiffs did not review the brochure prior to their purchase, they "could not establish causation; that is, that the purportedly deceptive brochure caused them to purchase" the product), *review denied sub nom. Axon v. Freedom RV, Inc.*, 516 P.3d 382 (2022). And Griffith's counsel conceded this point, noting that the 2022 advertisement "does not go to her injury." SER-48

58

(MTD Hrg. Tr. at 46:5-12). In short, Griffith's WCPA claim independently fails for lack of causation.

## CONCLUSION

For the reasons above, Amazon respectfully requests that the Court affirm the district court's dismissal of Griffith's claims with prejudice.

Dated: February 3, 2025     Respectfully submitted,

FENWICK & WEST LLP


By: *s/ Brian D. Buckley*
    Brian D. Buckley (WSBA No. 26423)
    bbuckley@fenwick.com
    Jedediah Wakefield (CSB No. 178058)
    jwakefield@fenwick.com
    Y. Monica Chan (WSBA Bar No. 58900)
    mchan@fenwick.com

Attorneys for Defendant-Appellee
AMAZON.COM, INC.

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

**9th Cir. Case Number: 24-5176**

I am the attorney or self-represented party.

**This brief contains** __13,855__ **words,** including no words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ X ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
   [ ] it is a joint brief submitted by separately represented parties.
   [ ] a party or parties are filing a single brief in response to multiple briefs.
   [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature:** *s/ Brian D. Buckley*          **Date:** February 3, 2025

60

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on February 3, 2025.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: February 3, 2025      Respectfully submitted,

FENWICK & WEST LLP

By: *s/ Brian D. Buckley*
    Brian D. Buckley

Attorneys for Defendant-Appellee
AMAZON.COM, INC.

61