No. 24-5176

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

DENA GRIFFITH, ET AL.,
Individually and on behalf of those similarly situated,

*Plaintiff-Appellant*,

v.

AMAZON, INC.,

*Defendant-Appellee*.

_____

**On Appeal from the United States District Court**
**Western District of Washington**
**Hon. Tana Lin**
Case No. 2:22-cv-00743-TL

_____

**PLAINTIFF-APPELLANT'S REPLY BRIEF**

_____

ADAM J. BERGER
SCHROETER, GOLDMARK & BENDER
401 Union Street, Suite 3400
Seattle, WA 98101
Telephone: 206/622-8000

LAW OFFICES OF
RONALD A. MARRON
Ronald A. Marron (pro hac vice)
Alexis M. Wood (pro hac vice)
Kas L. Gallucci (pro hac vice)
651 Arroyo Drive
San Diego, CA 92103

BORDE LAW PLLC
Manish Borde, WSBA #39503
1700 7th Ave., Ste. 2100
Seattle, WA 98101

*Attorneys for Plaintiff-Appellant*

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ..................................................................................1

ARGUMENT .......................................................................................1

I.   Plaintiff Plausibly Pled Breach of Contract......................................1

A.   The Terms of the Contract Were Not Contradicted ................................1

B.   There Are Genuine Issues of Material Fact as to Whether the Prime Membership Agreement Is Terminable-At-Will and if So, Whether Griffith Was Provided with Reasonable Notice of the Unilateral Modification of the Agreement. ...........................................................................6

II.  Plaintiff Plausibly Alleged Breach of the Duty of Good Faith and Fair Dealing...........................................................................8

III. THE DISTRICT COURT INCORRECTLY DISMISSED GRIFFITH'S WCPA CLAIM. ...................................................................10

A.   Griffith Properly Pled Deception.............................................10

B.   Amazon Acted Unfairly........................................................22

C.   Plaintiff Adequately Pled Causation.........................................26

CONCLUSION .....................................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Accretive Tech Grp., Inc. v. Adobe Sys., Inc.,*
No. C15-309RSM, 2015 WL 4920079 (W.D. Wash. Aug. 17, 2015).......................................2

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)........................................................................................................21

*Axon v. Freedom R.V., Inc.,*
21 Wash. App. 2d 1073 (Wash. Ct. App. 2022) ...................................................................32

*Becerra v. Dr Pepper/Seven Up, Inc.,*
945 F.3d 1225 (9th Cir. 2019) .............................................................................................23

*Berg v. Hudesman,*
801 P.2d 222 (Wash. 1990)................................................................................................2

*Capitol Pros, Inc. v. Vadata, Inc.,*
No. C17-1410-JCC, 2018 WL 883870 (W.D. Wash. Feb. 14, 2018)........................................8

*Cascade Auto Glass, Inc. v. Progressive Cas. Ins. Co.,*
145 P.3d 1253 (Wash. Ct. App. 2006).............................................................................7, 9

*Davis v. HSBC Bank Nevada, N.A.,*
691 F.3d 1152 (9th Cir. 2012) .....................................................................................23, 27

*DC Farms, LLC v. Conagra Foods Lamb Weston, Inc.,*
317 P.3d 543 (Wash. Ct. App, 2014)...................................................................................6

*Frank Coluccio Const. Co., Inc. v. King County,*
150 P.3d 1147 (Wash. Ct. App. 2007)................................................................................3, 5

*FTC v. Crescent Publ'g Grp.,*
129 F. Supp. 2d 311 (S.D.N.Y. 2001)................................................................................26

*Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.,*
935 P.2d 628 (Wash. Ct. App. 1997)..................................................................................10

*Greenberg v. Amazon.com, Inc.,*
553 P.3d 626 (Wash. 2024).........................................................................................25, 28

*Griffith v. Centex Real Estate Corp.,*
969 P.2d 486 (Wash. Ct. App. 1998)..................................................................................26

*Haywood v. Amazon.com, Inc.,*
No. 2:22-cv-01094-JHC, 2023 WL 4585362 (W.D. Wash. July 18, 2023) .............................24

*Hearst Communications, Inc. v. Seattle Times Co.,*
115 P.3d 262 (Wash. 2005)................................................................................................3

*In re Coleman,*
560 F.3d 1000 (9th Cir. 2009) ..........................................................................................5

*Jeter v. Credit Bureau, Inc.,*
760 F.2d 1168 (11th Cir.1985) .........................................................................................19

*Keithly v. Intelius Inc.,*
764 F. Supp. 2d 1257 (W.D. Wash. 2011)...........................................................15, 16, 19, 20

*Kennewick Irrigation Dist. v. U.S.,*
880 F.2d 1018 (9th Cir.1989) ...........................................................................................4

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) ............................................................. 9

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ............................................................................ 29

*Marquez v. Amazon.com, Inc.*,
   69 F.4th 1262 (11th Cir. 2023) ...................................................... 5, 23

*McAuliffe v. Vail Corp.*,
   69 F.4th 1130 (10th Cir. 2023) ......................................................... 29

*Orkin Exterminating Co., Inc. v. FTC*,
   849 F.2d 1354 (11th Cir.1988) ......................................................... 27

*Palmiero v. Spada Distrib. Co.*,
   217 F.2d 561 (9th Cir. 1954) .......................................................... 3, 5

*Panag v. Farmers Ins. Co. of Washington*,
   204 P.3d 885 (Wash. 2009) ............................................................... 19

*Rathke v. Roberts*,
   207 P.2d 716 (Wash. 1949) ................................................................. 6

*Robinson v. Avis Rent A Car Sys., Inc.*,
   22 P.3d 818 (Wash. Ct. App. 2001) .............................................. 17, 19

*Sateriale v. R.J. Reynolds Tobacco Co.*,
   697 F.3d 777 (9th Cir. 2012) ............................................................ 15

*Schaub v. JPMorgan Chase Bank N.A.*,
   No. 78439-1-I, 2019 WL 2751168 (Wash. Ct. App. July 1, 2019) ........................................ 31

*Schnall v. AT & T Wireless Servs., Inc.*,
   259 P.3d 129 (Wash. 2011) (en banc) ............................................... 30

*Smale v. Cellco P'ship*,
   547 F. Supp. 2d 1181 (W.D. Wash. 2008) ......................................... 24

*Storey v. Amazon.com Servs. LLC*,
   No. C23-1529-KKE, 2024 WL 2882270 (W.D. Wash. June 7, 2024) .............................. 17, 18

*Taylor v. Shigaki*,
   930 P.2d 340 (Wash. Ct. App. 1997) .................................................. 4

*United States v. Eric B.*,
   86 F.3d 869 (9th Cir. 1996) ................................................................. 1

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) .......................................................... 12

*Von Koenig v. Snapple Beverage Corp.*,
   No. 2:09-CV-00606, 2011 WL 43577 (E.D. Cal. Jan. 6, 2011) ................................... 13

## INTRODUCTION

Appellant Dena Griffith respectfully submits her reply brief pursuant to Fed. R. App. P. 28(c). Appellant does not respond to that which is adequately addressed in the opening brief. Any failure to address a specific issue in this optional reply brief is not a waiver or concession and no such inference should be made. *Cf. United States v. Eric B.*, 86 F.3d 869, 879 n.21 (9th Cir. 1996).

## ARGUMENT

### I. PLAINTIFF PLAUSIBLY PLED BREACH OF CONTRACT

#### A. The Terms of the Contract Were Not Contradicted

Amazon has agreed for purposes of the appeal to treat the Amazon Prime Membership Agreement ("Agreement") as a contract that was not fully integrated:

> For purposes of responding to Griffith's arguments, Amazon assumes without conceding that the Prime Terms are a partially (rather than fully) integrated contract.

Answering Brief ("AB") at 21.

The distinction between Amazon's "assumption" versus a "concession" is of no moment. The consequences are the same. Reversal of the District Court's orders is necessary where the starting point of the analysis is that the Agreement is ". . . a final expression of *those terms which it contains but not a complete expression of all terms agreed upon . . . .*" *Accretive Tech Grp., Inc. v. Adobe Sys.,*

1

*Inc.,* No. C15-309RSM, 2015 WL 4920079, at *4 (W.D. Wash. Aug. 17, 2015) (quoting *Berg v. Hudesman*, 801 P.2d 222 (Wash. 1990)).

This is because Amazon concedes that the Agreement does ". . . not mention free WFM delivery at all . . . ." AB at 21. Because the Agreement does "not mention free WFM delivery at all," or mention anything about Whole Foods Market ("WFM") deliveries or even WFM, ER 47-49, no reasonable reading of the Prime membership contract yields a conclusion that representations contained in the advertisements about "FREE Delivery" and "FREE 2-Hour Grocery Delivery" contradict terms expressed in the Agreement.

Moreover, because the Agreement is not a fully integrated contract and representations made in advertisements about "FREE Delivery" and "FREE 2-Hour Grocery Delivery" do not contradict the terms of the Agreement since the Agreement does not even mention WFM, dismissal of Plaintiff's breach of contract claim at the pleading stage further constitutes error since the issue of whether a party has breached a contract is a question of fact. *See e.g., Frank Coluccio Const. Co., Inc. v. King County*, 150 P.3d 1147, 1153 (Wash. Ct. App. 2007) (quoting *Palmiero v. Spada Distrib. Co.*, 217 F.2d 561, 565 (9th Cir. 1954)).

Amazon's only recourse, in light of the absence of any reference to WFM in the Agreement, is to contend that the representations, promises, and inducements made in the advertisements contradict the term in the Agreement that allows

2

Amazon to modify or remove any and all Prime benefits.  *See* AB at 23 ("Amazon would still retain the express contractual authority to modify or remove the WFM delivery benefit, just as it could any other Prime benefit.").  *See also* 2-ER-225 ("From time to time, Amazon may choose in its sole discretion to add or remove Prime membership benefits.").

However, accepting this contention means that Amazon would have the contractual right to remove *all benefits* afforded to Prime members and still not be in breach of its membership contract.  In *Hearst Communications, Inc. v. Seattle Times Co.*, 115 P.3d 262, 263 (Wash. 2005), the Supreme Court of Washington observed that "[t]he law of contracts is the same whether the parties are two publishing giants fighting for market control or two individuals disputing the cost of appliance repair work."  The law of contracts is also the same if it involves a tech behemoth such as Amazon and an individual.  In every other industry, a contract that enabled a party to unilaterally terminate all of its obligations would render the contract illusory.

Accepting as true that Amazon has the contractual right to "unilaterally avoid" all of its corresponding obligations, including the obligation to provide free WFM delivery, would render the contract illusory.  This is a result that "cannot be sanctioned" under Washington law. *Taylor v. Shigaki*, 930 P.2d 340, 344 (Wash.

Ct. App. 1997) (citing *Kennewick Irrigation Dist. v. U.S.,* 880 F.2d 1018, 1032 (9th Cir.1989)).

Although the *Marquez* court rejected the plaintiffs' contention that the unilateral right to modify benefits did not result in an illusory contract, at issue in *Marquez* was the temporary suspension of expedited shipping of certain goods. The M*arquez* court found that Amazon's ***temporary suspension*** of Rapid Delivery during a worldwide pandemic was not a breach of the Prime membership contract. The court held:

> To begin, we assume that Amazon's contract with Prime subscribers included a promise to provide Rapid Delivery. Proceeding from this assumption, we find that plaintiffs have not stated a claim for breach of contract because Amazon had the right to ***limit*** Rapid Delivery. (Emphasis added.)

*Marquez v. Amazon.com, Inc*., 69 F.4th 1262, 1269 (11th Cir. 2023). For this Court to affirm the District Court's dismissal of Griffith's breach of contract claim, it would have to conclude that Amazon: (1) did not have a duty to provide "FREE Delivery" and "FREE 2-Hour Grocery Delivery," notwithstanding the express representations it would do so; or (2) assuming Amazon had a duty to provide "FREE Delivery" and "FREE 2-Hour Grocery Delivery," there was no breach as a matter of law. But it is improper to reach either of these conclusions at the pleading stage and as a matter of law, since whether a party breached a contract

is a question of fact. *Frank Coluccio Const. Co.*, 150 P.3d at 1153 (quoting *Palmiero v. Spada Distrib. Co.*, 217 F.2d 561, 565 (9th Cir. 1954)).

*In re Coleman*, 560 F.3d 1000 (9th Cir. 2009), cited by Amazon in its AB at page 33, also has no application here. Neither *In re Coleman* nor the doctrine of ripeness precludes Ms. Griffith from pointing out that Amazon's interpretation of its contract would render the agreement illusory, that there is a spectrum between temporarily suspending Rapid Delivery during a global pandemic and permanently revoking all Prime benefits, and that the materiality of the benefit(s) revoked in this instance and any resulting price increase (i.e., breach of the Agreement), is within the purview of the trier of fact.

Plaintiff Griffith and the putative class members are entitled to have a trier of fact determine whether Amazon breached its contract by effectively charging a higher price for delivery from WFM than what was bargained for, and the extent of any damages:

> *Any failure* to perform a contractual duty constitutes a breach and an injured party is generally entitled to those damages necessary to put that party in the same economic position it would have occupied had the breach not occurred. *Id.* (citing Restatement § 235(2); *Rathke v. Roberts*, 207 P.2d 716, 721 (Wash. 1949)).

*DC Farms, LLC v. Conagra Foods Lamb Weston, Inc.*, 317 P.3d 543, 555 (Wash. Ct. App. 2014) (emphasis added).

5

**B.    Genuine Issues of Material Fact Exist as to whether the Prime Membership Agreement Is Terminable-At-Will and, if so, whether Griffith Was Provided with Reasonable Notice of the Unilateral Modification of the Agreement**.

It is disputed that the Agreement is terminable-at-will.  First, for a contract to be construed as terminable-at-will, it must fail to specify the intended duration.  *See Cascade Auto Glass, Inc. v. Progressive Cas. Ins. Co.*, 145 P.3d 1253, 1256 (Wash. Ct. App. 2006) ("When a contract for a continuing performance fails to specify the intended duration, we construe it to be terminable-at-will by either party after a reasonable time.") (internal citations omitted).  The Agreement is subject to an auto-renewal.  2-ER-226.  A renewal by its nature means the term of a contract is completed and then renewed for a new term.  The term of the Agreement and each renewed term is one (1) year.  *See* 2-ER-214 (First Amended Consolidated Complaint Class Action Demand for Jury Trial at Paragraph 36) ("Amazon automatically renewed Plaintiff's **annual** subscription to its Prime Services in or around June 2022 . . . .") (emphasis added).

Second, Amazon's contention that there is a distinction between cancellations and refunds actually highlights the existence of a genuine issue of material fact.  To the extent refunds are divorced from and independent of cancellations, a genuine issue of material fact exists as to the sufficiency of consideration afforded to a customer (assuming arguendo the Agreements are viewed as terminable-at-will).  *Capitol Pros, Inc. v. Vadata, Inc.*, No. C17-1410-

JCC, 2018 WL 883870 at * 2 (W.D. Wash. Feb. 14, 2018) ("Still, a unilateral modification requires offer, acceptance, **consideration**, and reasonable notice."). (Emphasis added.) Foregoing the right to terminate does not constitute sufficient consideration where terminating a contract subjects a party to additional losses (here, the loss of all benefits without refund for the remainder of the contract term).

Finally, Amazon argues that Ms. Griffith received reasonable notice of Amazon's unilateral modification of the Agreement. Such a conclusion can only be reached by making wide-ranging assumptions, as opposed to relying on the allegations in the operative Complaint (or any admissible evidence). For example, Amazon asks the Court to *assume* Ms. Griffith read newspaper articles at the time Amazon modified its Prime Membership Agreement to remove free delivery from WFM. This was neither pled by Ms. Griffith nor proven by Amazon.

Ms. Griffith pled that she ". . . does not recall ever having received or seen a specific, conspicuous notice of Amazon's addition of a $9.95 service to all Whole Foods grocery purchases." 2-ER-213. This allegation must be taken as true and construed in the light most favorable to Ms. Griffith. *Knievel v. ESPN,* 393 F.3d 1068, 1072 (9th Cir. 2005).

Assuming that Ms. Griffith had read the articles referenced in her lawsuit at the time Amazon unilaterally increased the price of the Prime Membership Agreement by charging for Whole Foods Market delivery would construe the

7

pleadings in the light most favorable to the moving party, Amazon. Amazon's assumptions, arguments, and prognostications about what Ms. Griffith read and when, and the reasonableness of notice to Ms. Griffith, do not prevail over the notion that "[w]hether particular notice was reasonable is ordinarily a question of fact." *Cascade Auto Glass,* 145 P.3d at 1256.

## II. PLAINTIFF PLAUSIBLY ALLEGED BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING.

It bears repeating that Amazon has agreed to treat the Agreement as a partially integrated contract. AB at 21. Amazon promised "FREE Delivery" and "FREE 2-Hour Grocery Delivery" from WFM, supplementing the terms of the Agreement. There is nothing free-floating about these express promises that constitute part of the partially integrated contract.

Amazon did not simply remove, in isolation of a price increase, a benefit from the bundle of Prime benefits. This is not a situation where a certain channel from Amazon Prime Video was no longer available. When Amazon began charging $9.95 for WFM delivery, it effectively increased the price of the Agreement for those who sought to obtain deliveries from WFM.

*Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.,* 935 P.2d 628 (Wash. Ct. App. 1997), cited by Amazon, is inapposite because the dealer agreement expressly reserved Goodyear's right to sell in Whiteman Tire's trade area. There is no term in the body of representations, terms, and conditions here that unilaterally

8

gives Amazon the right to increase the price of membership for a given year (by requiring consumers to pay a delivery fee) after a consumer has already paid for that year's membership.

In the same vein, Amazon's contention that its unilateral decision to remove the free delivery benefit was not a determination of a future contract term such as quantity, price, or time, AB at 38, is unavailing since the determination to remove the free delivery "benefit" is simply a euphemism for increasing the price of the Agreement for those individuals who order deliveries from WFM.

In other words, it may be true that a suspension or removal of a benefit does not *always* correspond to an increase in price for a consumer. But here, permanently revoking the free delivery "benefit" resulted in a price increase (the delivery fee(s)) for those individuals who had previously entered into an Agreement.

By way of analogy, the elimination of the *benefit* of a tax rebate for electric vehicles increases the price of electric vehicles for consumers. The Court should not accept Amazon's use of the word "benefit" as a means to shield the economic reality of the price increase being imposed on a consumer who had agreed to pay a certain price for a one-year Prime membership which was promised to include delivery from WFM.

9

Amazon did not have unfettered authority to start charging deceptive delivery fees after specifically promising (and integrating in the contract) "free" Whole Foods delivery. Plaintiff has alleged more than "enough facts to state a claim to relief that is plausible on its face" that the manner in which Amazon charged the WFM delivery service fee to Prime members, after previously promoting free delivery as an inducement to subscribe: (1) evaded the spirit of the bargain between Amazon and its customers; (2) constituted a willful rendering of imperfect performance on the part of Amazon; (3) constituted an abuse of discretion under the Prime Terms and Conditions; and (4) constituted bad faith. *See*, *e.g.*, 2-ER-202 (FAC ¶¶12-19 21-23, 32-33, 35, 38, 40). These allegations are all plausible and sufficient for the claim to survive a motion to dismiss.

## III. THE DISTRICT COURT INCORRECTLY DISMISSED GRIFFITH'S WCPA CLAIM.

At the outset Plaintiff notes that Amazon only challenges Plaintiff's WCPA claim as to elements one (unfair or deceptive act) and five (causation). AB at 40. Thus, Plaintiff's analysis is limited to those challenges

### A. Griffith Properly Pled Deception

### 1. Plaintiff Meets Her Rule 9(b) Burden

Amazon challenges Plaintiff's allegations on Rule 9(b) grounds as to the "when" and "how" prongs of Rule 9(b)'s heightened pleading standard. *See* AB at 42. However, as the District Court properly found in its Second MTD Order,

"Plaintiff has pled her claims with sufficient particularity." 1-ER-16. Plaintiff has properly alleged the "who" (Amazon), "what" (advertisements indicating "FREE Delivery" and "FREE 2-Hour Grocery Delivery"), "when" (while visiting Amazon's platform in early and mid-2021), "where" (Amazon's platform), and "how" (advertising free delivery services from Whole Foods Market to bait consumers into subscriptions and then cancelling that service). Nonetheless, Amazon relies on *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003), for the proposition that Plaintiff's allegations are not specific enough. *See* AB at 42. However, in *Vess*, plaintiff did "not identify any specific misrepresentations or specify when and where they occurred." 317 F.3d at 1107 (emphasis added). Moreover, it is well established that representative samples (as provided within the FAC at ¶ 9; 2-ER-143-45) stemming from a specific time frame, here "early and mid-2021" (2-ER-151), give Defendant proper notice of its misconduct and are sufficient to overcome Rule 9(b)'s stricter pleading standard. *See Von Koenig v. Snapple Beverage Corp*., No. 2:09-CV-00606, 2011 WL 43577, at *2 (E.D. Cal. Jan. 6, 2011) (finding that plaintiffs met their Rule 9(b) burden where plaintiffs submitted examples of allegedly misleading labels and pled that such labels were used within a specific time frame ¬ not on a specific date).

Because Plaintiff has clearly pointed to advertisements that Amazon readily admits not only existed, but did in fact advertise "Free Delivery" from its WFM

locations (see AB at 41), while also pleading the specific time frame when she saw those advertisements, Plaintiff has met her Rule 9(b) burden. Therefore, the District Court properly rejected Amazon's arguments on Rule 9(b) grounds.

### 2. Amazon's Statements Were Misleading

Amazon continually relies on the assertion that in no way can its advertisements be misleading because allegedly those advertisements "were true at the time they were made." AB at 41 (quoting Second MTD Order at 14; 1-ER-17). However, Amazon blurs the line between two of Plaintiff's theories: (1) that Amazon's advertisements could be actually false and therefore deceptive (which only Amazon would know without the benefit of discovery) or (2) that a reasonable consumer would interpret the advertisements to mean that WFM delivery services will be available for the duration of a given consumer's Amazon Prime membership since the advertisements never mention the non-guaranteed nature of the benefit. *See* 2-ER-143-46 (FAC, ¶¶ 9-16). Within the latter vein of deceptive practice exists the possibility that not only would a reasonable consumer be confused by the advertisement itself (whether the advertisement is true or not), but that Amazon might have intended to deceive as properly alleged by the Plaintiff. *See* 2-ER-146-47 (FAC, ¶¶ 13-15). Contrary to Amazon's assertion in footnote 5 on page 42 of its Answering Brief, Plaintiff does not speak "from the

other side of her mouth" in contradiction but instead offers viable theories of deception equally plausible given the nature of Defendant's advertising practices.

First, Amazon argues that because Plaintiff received some free WFM delivery there can be no deceptive practices under the WCPA. *See* AB at 43. Amazon proffers this defense even where a reasonable consumer could easily assume — and indeed did assume — that such a benefit would last throughout their Prime membership period. Amazon glosses over the well-established principal that "statements not technically false or which may be literally true" are still considered deceptive based on the "net impression" of a given marketing technique being likely to deceive a reasonable consumer. *Keithly v. Intelius Inc*., 764 F. Supp. 2d 1257, 1266 (W.D. Wash. 2011). Moreover, without "meaningful disclosure regarding [a] service or its price," *id*. at 1267, reasonable consumers are unaware of Amazon's apparently unrestrained ability to renege on a primary benefit of a Prime membership (free WFM delivery) at any given time despite advertisements conspicuously pronouncing such a benefit. *See* 2-ER-143-46 (FAC, ¶¶ 9-16). Amazon's reliance on *Sateriale* is misplaced. In that case, plaintiffs alleged that defendant "intended to be bound by the statements," and that defendant "in fact honored the terms of the program for **15 years**." *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 795 (9th Cir. 2012) (emphasis added). Furthermore, *Sateriale* involved a redemption of certificates obtained upon

13

purchase of cigarettes (Camel Cash) for certain rewards and Camel products, not a primary benefit of given subscription service. *See id.*

Here, unlike in *Sateriale*, WFM delivery is reasonably considered a benefit of Amazon Prime membership which induced consumers to enter into the Agreement in the first place. Imagine, for example, an airlines reward credit card with an annual fee that gives both mileage points and free checked bags, then eliminate the free bags partway through the annual term. The free checked bag may be the main reason a consumer is willing to pay the annual fee, rather than choose some other or no fee credit card — it makes no difference whether there is an "ongoing contract" (AB at 44) between subscriber and Defendant to the fact that a such a benefit has been rescinded. To the contrary, a consumer would then be locked into a relationship where that consumer pays the same full price for the membership but now cannot enjoy the benefit which enticed them into the membership in the first place — just as had occurred with Plaintiff. 2-ER-151 (FAC ¶ 25). An ongoing relationship where a given Prime member is locked into a membership makes Amazon's deception all the more harmful to the consumer and even less defensible. Therefore, Amazon's argument on this ground is misguided.

Next, Amazon attempts to constrain the reasonable consumer test and immunize its deceptive advertising practices by conflating a claim of deceptive practices the WCPA and a cause of action for breach of the Prime membership

contract. *See* AB at 43-44. However, deception under the WCPA is not so limited, it is broad, such that deception under the WCPA is found where a given "practice [has] the capacity to deceive a substantial portion of the purchasing public." *Keithly,* 764 F. Supp. 2d at 1266. Defendant's contract terms do not serve as a shield: "a practice is unfair or deceptive if it induces contact through deception, even if the consumer later becomes fully informed before entering into the contract." *Robinson v. Avis Rent A Car Sys., Inc.*, 22 P.3d 818, 824-825 (Wash. Ct. App. 2001) (CPA claims dismissed on other grounds - namely that fees were disclosed by agents ***over the phone*** before plaintiffs entered into a rental agreement). Moreover, "knowing failure to reveal something of material importance is 'deceptive' within the CPA," and undoubtedly the failure of Amazon to reveal its power to terminate a key benefit would be considered material. *See id*. This well-established line of reasoning bolsters Plaintiff's other theory that were Amazon to advertise free WFM delivery *knowing* that it would cut short that benefit soon after thousands of reasonable consumers like Plaintiff signed up for a Prime membership, such failure to disclose (discussed further below) should be considered deceptive. Additionally, Amazon's reliance on *Storey v. Amazon.com Servs. LLC*, No. C23-1529-KKE, 2024 WL 2882270, at *7 (W.D. Wash. June 7, 2024), does not undercut the plausibility of Plaintiff's claims. In *Storey*, the court dismissed plaintiff's CPA claims with leave to amend because plaintiff's CPA

claims centered on confusing or deceptive terms *in the contract*. *Id*. at *6. Here, by contrast, the CPA claims are not reliant on the contract claims but focus on the deceptive and unfair advertising scheme Amazon employed to bait reasonable consumers into a Prime membership. 2-ER-146-147 (FAC ¶¶ 9-15). The court in *Storey* rightfully highlighted that plaintiff's CPA claim "could be based on a different theory," 2024 WL 2882270, at *7, and it should be noted that Amazon here (unlike in *Storey*) did not keep its promises but instead reneged on a key motivator for entering into a Prime membership in the first place.

Here, Plaintiff (like a multitude of other reasonable consumers) was exposed to Amazon's advertising scheme which promised free WFM delivery. 2-ER-143-147 (FAC ¶¶ 7-16). Amazon's pre-October 2021 advertisements were misleading in that reasonable consumers would expect WFM delivery throughout their Prime membership as this service was presented and received as a primary motive for signing up for Prime membership. 2-ER-151 (FAC ¶ 25). Regardless of whether a given Prime member enjoyed those benefits for a limited period of time, Defendant's focus on the difference between product packaging misrepresentations and the circumstance here is a red-herring (see AB at 44) — an advertising practice can be deceptive under the WCPA even when that advertisement contains technically true information if there exists a capacity to deceive a substantial portion of those consumers. *Keithly*, 764 F. Supp. 2d at 1266. Furthermore, if a

reasonable consumer was deceived prior to entering into a contract, that contract does not serve as a shield for the deception. *See Robinson*, 22 P.3d 824-825. Therefore, Amazon's theory that it cannot be held liable under the WCPA absent a breach of its contract should be rejected.

Finally, by focusing on its October 2022 ad in isolation, Amazon attempts to dismiss Plaintiff's assertion that the net impression of its entire advertising scheme might dupe a reasonable consumer into thinking that it continues to make WFM delivery available for free. *See* AB 46. Amazon's argument boils down to the assertion that the October 2022 ad should override Defendant's previous malfeasance and that Plaintiff "did not allege that she was misled or deceived." *Id.* at 47. However, courts look to whether an advertising campaign has the tendency to deceive not by judging based upon "the most sophisticated readers but rather [the] least." *Panag v. Farmers Ins. Co. of Washington*, 204 P.3d 885, 895 (Wash. 2009) (quoting *Jeter v. Credit Bureau, Inc*., 760 F.2d 1168, 1174 (11th Cir.1985)). Thus, whether a reasonable consumer would forget Amazon's prior advertising campaign or ignore that Defendant's purchase of WFM was national news in 2017[1] such that consumers would not easily treat Amazon groceries and WFM as synonymous is fanciful. And again, the test is not simply relegated to whether

---

1 Paul R. La Monica and Chris Isidore, Amazon is buying Whole Foods for $13.7 billion, CNNMoney (June 16, 2017), https://money.cnn.com/2017/06/16/investing/amazon-buying-whole-foods/index.html.

Plaintiff was deceived, as she properly alleges based on the earlier advertising scheme, but whether such a scheme has the capacity to deceive a substantial portion of the purchasing public. *Keithly*, 764 F. Supp. 2d at 1266.

Therefore, Defendant's arguments on these grounds should be rejected.

### 3. Amazon Made a Material Omission

Amazon first attacks Plaintiffs theory that reasonable consumers would rightfully assume that the benefit of free WFM delivery would last for the duration of their Prime membership on the grounds that the "theory was not asserted in her complaints." AB at 47. However, Plaintiff did raise that theory in her FAC: "Prime members who had used a Prime benefit at any time outside a three-day period at the start of their membership could not cancel their annual membership in response to the unilateral termination of the free delivery program until their next annual renewal date." 2-ER-150-151 (FAC ¶23). Additionally, "After Amazon terminated its free Whole Foods grocery delivery service and began surreptitiously collecting additional delivery fees, it provided no refund or recourse to consumers who, like Plaintiff, had already paid for a one-year Amazon Prime membership." 2-ER-152 (FAC 34). Plaintiff has pled sufficient "factual content for the court to draw the reasonable inference that defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Amazon's assertion that the theory is too vague to satisfy proper notice under Fed. R. Civ. P. 8(a) is mistaken

considering that Plaintiff cited facts in support of that theory throughout her FAC. *See* 2-ER-143-153. Therefore, Defendant's attack on these grounds should be rejected.

Amazon next attacks the merits of Plaintiff's argument regarding duration because "Amazon never suggested or implied that WFM delivery would be free for the duration of any prime membership," and because examples given by Plaintiff "did not even state that free WFM delivery was a Prime benefit." AB at 49. Taking all the images in context, Amazon's argument is hard to reconcile with the facts. For example, Plaintiff's FAC clearly provides an example of Amazon's advertisement espousing "Free 2-Hour Grocery Delivery." 2-ER-144 (FAC ¶ 9). Additionally, Amazon advertises that same "2-Hour Delivery" with an image of a vehicle stocked with Amazon Prime grocery bags, ***and parked in front of a Whole Foods Marketplace store*** — an image provided by Plaintiff in the FAC. 2-ER-146 (FAC ¶11). Furthermore, the duration of a Prime membership of one year combined with the words "Enjoy fast, free delivery, just for being a Prime member," easily dupes reasonable consumers into thinking that not only is this benefit an aspect of Prime membership (as is blatantly stated in the advertisements) but also that such benefits last during the Prime membership of a year — it does not take a leap in logic to reach that conclusion. *See* 2-ER-144 (FAC ¶ 9). Again, based on the entire context, or "net impression" of Defendant's advertising scheme

it is more than reasonable that a substantial number of reasonable consumers would think that they would enjoy such a benefit throughout their Prime membership such that Defendant's arguments on these grounds should fail.

Next, Amazon challenges whether the advertisement could be considered deceptive because, as *Defendant* sees it, only an insignificant number of individuals are likely to have understood the representations made by Amazon as offering free delivery from WFM. *See* AB at 50. Amazon cites to *Davis*, but in that case (discussing whether an annual fee was properly disclosed) it appears that plaintiff did not state that a given credit card which offered a rewards program would be free, and the court found that given the characteristics of a credit card (with interest payments, late payment fees, etc.) it would be unreasonable for a consumer to assume that just because there were rewards there would not be a fee. *See Davis v. HSBC Bank Nevada, N.A*., 691 F.3d 1152, 1162 (9th Cir. 2012). Unlike here, where reasonable consumers expected to pay for their Prime membership, but enjoy the benefits that were advertised as free by Defendant. 2-ER-144 (FAC ¶¶ 9-15). Amazon's citation to *Becerra* is also flawed as in that case plaintiff argued to re-define the word "diet" in a way that was blatantly inapposite to the common understanding of that word (when used as an adjective) as a reduced calorie item. *See Becerra v. Dr Pepper/Seven Up, Inc*., 945 F.3d 1225,

1229 (9th Cir. 2019). No such blatant contradiction of terms exists here, "Free Delivery" means just that.

Finally, Amazon argues that its advertising scheme cannot be deceptive because it "fully disclosed" the terms of the Prime membership. AB at 50. Amazon circles back to *Marquez* to support the proposition that Prime membership terms were disclosed, but again, *Marquez* did not involve any claim of false advertising but was completely derivative of the contract claims. *See Marquez*, 69 F.4th at 1275. Amazon's reliance on both *Smale* and *Haywood* are similarly misplaced. For example, *Smale* is easily distinguishable in that ***there was no allegation of deceptive advertisement***, instead plaintiffs focused purely on the language of explicit disclosures. *See Smale v. Cellco P'ship*, 547 F. Supp. 2d 1181, 1188 (W.D. Wash. 2008). Similarly in *Haywood,* again there was no deceptive advertisement drawing plaintiff into a membership agreement. *See Haywood v. Amazon.com, Inc*., No. 2:22-cv-01094-JHC, 2023 WL 4585362 (W.D. Wash. July 18, 2023). Instead, *Haywood* centered on the revocation of privileges having to do with the ability to make book reviews on Amazon, and in fact Amazon informed plaintiff multiple times about violating the guidelines Amazon set forth. *Id*. at *1. There was no violation of any guidelines on plaintiff's part here.

In summary, Amazon's arguments fail because they ignore the crux of Plaintiff's claim—Amazon's **advertisements** deceptively induced consumers into Prime membership by omitting its unilateral power to rescind the free WFM delivery benefit. Nowhere in its marketing did Amazon disclose that it could revoke this benefit at will, leaving consumers locked into annual memberships without the service they reasonably believed they had paid for. The deceptive "net impression" of Amazon's advertising—promising "Free 2-Hour Grocery Delivery" alongside imagery reinforcing WFM delivery as a Prime benefit—reasonably led consumers to believe this benefit would last for the duration of their membership. Amazon's cited cases only reinforce the distinction between contract disputes and deceptive advertising, as they focus on disclosed contract terms rather than misleading inducements. Because Plaintiff has plausibly alleged that Amazon's advertising created a false expectation and omitted material information, Defendant's arguments should be rejected

### B. Amazon Acted Unfairly

While Plaintiff does not dispute that the applicable standard articulated in *Greenberg v. Amazon.com, Inc.*, 553 P.3d 626, 639-41 (Wash. 2024), involves unfairness criteria (as interpreted by the Federal Trade Commission) that encompass circumstances involving substantial injury not reasonably avoidable, immoral, unethical, oppressive, or unscrupulous conduct, or that which offends

public policy, Amazon improperly concludes that its malfeasance was avoidable and that reasonable consumers could have mitigated their potential for injury. *See* AB at 51-52. Additionally, Amazon ignores that courts must view the *totality* of a defendant's conduct, including its acts before, during, and after the transactions at issue, and the impact those actions had on consumers. *See FTC v. Crescent Publ'g Grp.*, 129 F. Supp. 2d 311, 322 (S.D.N.Y. 2001) (finding "free tours" promotion unfair based on manner in which defendants obtained credit card numbers and difficulty consumers had challenging charges); *Griffith v. Centex Real Estate Corp.*, 969 P.2d 486, 492 (Wash. Ct. App. 1998) (stating that the "CPA applies to activities both before and after a sale").

Here, Plaintiff had no means to avoid the harm thrust upon her after being locked into her Prime membership because Amazon rescinded the WFM delivery benefit after she and a multitude of other consumers were already enticed into a year-long membership which offered a mere three-day cancellation period — not to mention that she could not have known of the cancellation of the benefit until months into her membership. Amazon's citation to *Davis* does not change the calculus because, as the court in *Davis* notes, "an injury is reasonably avoidable if consumers 'have reason to anticipate the impending harm and the means to avoid it,' or if consumers are aware of, and are reasonably capable of pursuing, potential avenues toward mitigating the injury after the fact." *Davis*, 691 F.3d at 1168–69

(quoting *Orkin Exterminating Co., Inc. v. FTC*, 849 F.2d 1354, 1365–66 (11th Cir.1988)). Plaintiff had no reason to be aware of the impending harm when looking at the advertisements themselves as nowhere do those advertisements mention the possibility of a cancellation of free WFM delivery services. 2-ER-144 (FAC ¶¶ 9-15). Not to mention that in *Davis **the advertisements*** clearly stated that "other restrictions may apply." *Id*. at 1169. Moreover, Amazon argues that "Griffith also could have mitigated her alleged injury by canceling her Prime membership" but that rings hollow where the mitigation involves no refund of Prime membership fees or service charges but instead allows mere cancellation (and therefore immediate loss of all benefits already paid for). 2-ER-138. Finally, Amazon cites to *Davis* to argue that a penalty or a cost of some kind (like a negative credit score) does not automatically mean that a fee was avoidable (AB at 53), but this ignores that "the annual fee was completely refundable if Davis closed his account within 90 days," unlike the mere three-day period here. *Davis*, 691 F.3d at 1170.

Amazon next argues that the public policy prong is limited by a necessary root within formal sources such as statutes, judicial decisions, or the constitution, and cannot be "ascertained form the general sense of national values." AB at 54 (quoting *Greenberg*, 553 P.3d at 639-40). For one, the court in *Greenberg* explored the interpretation of the public policy criterion and cited this language in

24

circumstances where unfairness was alleged *only* under this prong. *See id*. at 640. Defendant ignores the thrust of the court's analysis in *Greenberg*, namely that the court has yet to define the phrase "unfair acts or practices" and promotes a "liberal construction" of the CPA to effectuate the purpose of preventing harm to the consumer and the public such that "plaintiffs may satisfy the first element of a private CPA claim—an unfair or deceptive act—in a number of ways." *Id.* at 41.

Here, it is clear that a mega-corporation behaves unfairly and against the public interest by offering a specific inducement for consumers to sign up for an annual membership, not disclosing the conditional nature of the inducement in the promotion and not allowing the consumers any recourse when it unilaterally changes the terms of the deal and terminates the benefit.

Finally, Amazon circles back to muddying the waters between Plaintiff's contract claim and the WCPA claim (AB at 55), but for the reasons discussed above those arguments are unavailing.

Additionally, Amazon throws in an argument against standing (AB at 55) regarding what Defendant categorizes as the "no refund theory" and citing to *McAuliffe v. Vail Corp*., 69 F.4th 1130 (10th Cir. 2023). In *McAuliffe*, in large part due to the unique circumstances surrounding the Covid-19 pandemic, the court interpreted the advertisement language regarding the length of a ski season to refer to "the ***period it was safe*** for Vail to keep its resorts open." *Id*. at 1155 (emphasis

added).  Obviously, the facts of that case are distinguishable from the facts here.

Moreover, Amazon's refund policy does not negate Plaintiff's standing because the

injury-in-fact arises from the unilateral removal of a paid-for benefit, not merely

the absence of a refund.  The refund policy is also restrictive, applying only if no

Prime benefits were used, meaning many members could not recover their fees

despite losing WFM delivery.  Defendant's conduct amounts to a bait-and-switch,

where consumers were induced to subscribe based on advertised benefits that were

later revoked.  This constitutes a concrete and particularized injury under *Lujan*, as

Plaintiff and other Prime members paid for a materially different service than what

they ultimately received.  *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560

(1992).    Thus, whether Defendant technically offers refunds under limited

conditions does not eliminate economic harm or defeat standing.

### C.    Plaintiff Adequately Pled Causation

Amazon argues that Plaintiff "did not plead causation."    AB at 56.

Amazon's argument boils down to a theory it was Plaintiff's conduct that caused

her injury because she did not heed Defendant's warnings within the Prime terms,

or seek a refund once she was charged a service fee.  *See* AB at 57-58.  Amazon's

argument ignores key facts and mischaracterizes the nature of Plaintiff's injury.

For one, to establish causation a plaintiff must show that but for the defendant's

unfair or deceptive conduct, she would not have suffered harm. *See Schnall v. AT & T Wireless Servs., Inc*., 259 P.3d 129, 137 (Wash. 2011) (en banc).

Here, Plaintiff relied on Aamzon's representations that WFM delivery was a Prime benefit when she purchased or renewed her membership. Amazon's broad disclosure that it "may add or remove benefits" does not excuse the specific deceptive practice of advertising free WFM delivery and later imposing a fee without providing a meaningful opt-out or compensation. The fact that Plaintiff continued her membership does not break the chain of causation; rather, it underscores the difficulty consumers face in remedying such deceptive practices. Thus, Plaintiff's injury—paying for a materially different service than what was promised—was directly caused by Defendant's deceptive conduct, satisfying the WCPA's causation requirement. Defendant's cited cases are not to the contrary. The facts of *Schaub* are distinguishable from Plaintiff's case because, in *Schaub*, the plaintiff had a clear and available legal remedy—seeking an injunction under the Deed of Trust Act (DTA)—but failed to pursue it, breaking the chain of causation. *See Schaub v. JPMorgan Chase Bank N.A*., No. 78439-1-I, 2019 WL 2751168, at *6 (Wash. Ct. App. July 1, 2019). The court found that his inaction, rather than the defendant's conduct, was the proximate cause of his injury. *Id*. By contrast, Plaintiff was not presented with a similar legal avenue to prevent or undo Amazon's deceptive conduct. Unlike *Schaub*, where the plaintiff could have

27

stopped the foreclosure through timely action, Plaintiff had no realistic means of avoiding harm once Defendant unilaterally revoked a core Prime benefit. Amazon's restrictive refund policy made recourse impractical for most consumers, especially those who, like Plaintiff, had used any Prime services. Additionally, *Schaub* involved a plaintiff who was explicitly notified of missing documents and had a statutory mechanism to challenge the foreclosure, whereas Defendant's disclosures did not provide consumers with a meaningful way to contest the removal of WFM delivery before it was implemented. Thus, *Schaub* does not apply because Plaintiff's injury was not caused by her own failure to act but by Amazon's deceptive practices, which left consumers with no viable remedy. Finally, in *Axon*, the court explicitly found that plaintiffs had not even read the brochure that was supposedly the cause of deception underlying their CPA claim. *Axon v. Freedom R.V., Inc.*, 21 Wash. App. 2d 1073, n.4 (Wash. Ct. App. 2022). That fact clearly distinguishes *Axon* from the case at bar where Plaintiff plainly alleges that she saw Amazon's deceptive advertisements and was motivated to obtain a Prime membership based upon Defendant's promise to provide free delivery from its WFM locations. 2-ER-151 (FAC ¶¶ 24-25).

Therefore, Defendant's arguments as to causation should be rejected.

## CONCLUSION

For the foregoing reasons, the Court should reverse the judgment of the District Court, hold that Plaintiff plausibly alleged violations of the Washington Consumer Protection Act, breach of contract, and breach of the duty of good faith and fair dealing, and remand for further proceedings on those claims.

Dated: February 24, 2025    Respectfully Submitted,


LAW OFFICES OF RONALD A. MARRON

By: /s/ Ronald A. Marron
  Ronald A. Marron (pro hac vice)
  ron@consumersadvocates.com
  Alexis M. Wood (pro hac vice)
  alexis@consumersadvocates.com
  Kas L. Gallucci (pro hac vice)
  kas@consumersadvocates.com
  651 Arroyo Drive
  San Diego, CA 92103
  Telephone: (619) 696-9006
  Facsimile: (619) 564-6665


Attorneys for Plaintiff-Appellant
DENA GRIFFITH

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)**

I am the attorney or self-represented party.

**This brief contains _____ words,** including _____ words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

☐ complies with the word limit of Cir. R. 32-1.

☐ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

☐ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

☐ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

☐ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    ☐ it is a joint brief submitted by separately represented parties.
    ☐ a party or parties are filing a single brief in response to multiple briefs.
    ☐ a party or parties are filing a single brief in response to a longer joint brief.

☐ complies with the length limit designated by court order dated     .

☐ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature**                          **Date**
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**            *Rev. 12/01/22*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on February 24, 2025.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: February 24, 2025                    Respectfully submitted,


LAW OFFICES OF RONALD A. MARRON

By: /s/ Ronald A. Marron
    Ronald A. Marron (pro hac vice)


Attorneys for Plaintiff-Appellant
DENA GRIFFITH