

401 Union Street
5th Floor
Seattle, WA 98101

206.389.4510
Fenwick.com

Brian D. Buckley
bbuckley@fenwick.com | 206.389.4515

February 26, 2025

**Filed Electronically**

Molly C. Dwyer, Clerk of the Court
Office of the Clerk
U.S. Court of Appeals for the Ninth Circuit
P.O. Box. 193939
San Francisco, CA 94119-3939

    Re: *Dena Griffith, et al. v. Amazon.com, Inc.*, Case No. 24-5176
        <u>Notice of Supplemental Authority</u>

Pursuant to Fed. R. App. P. 28(j), Amazon provides notice of *In re Amazon Prime Video Litig.* ("*Prime Video*"), No. 2:24-CV-186, 2025 WL 437743 (W.D. Wash. Feb. 7, 2025), attached as **Exhibit A**. Like this case, *Prime Video* addresses Amazon's right to change or remove benefits of the Amazon Prime membership.

In her reply brief filed on February 24, 2025 (Dkt. No. 27), Appellant Dena Griffith argues for the first time in this case that "[w]hen Amazon began charging $9.95 for WFM delivery, it effectively increased the price of the Agreement for those who sought to obtain deliveries from WFM" and that "permanently revoking the free delivery 'benefit' resulted in a price increase (the delivery fee(s)) for those individuals who had previously entered into an Agreement." Reply Br. at 8-9. That new argument is procedurally improper because it is raised for the first time on appeal and in reply. In any event, the *Prime Video* court rejected the same argument.

*Prime Video* involved a change to Amazon's Prime Video service, which is available to Prime members as a benefit. Amazon introduced limited advertisements on Prime Video, but offered users an optional ad-free version for $2.99/month. The plaintiffs argued that the change to Prime Video forced a "price increase" on Prime members because they had to pay more to enjoy the same ad-free Prime Video. The district court properly rejected that argument because "Amazon's actions did not constitute a price increase," as "the introduction of commercials to Prime Video alone did not result in any out-of-pocket price increase whatsoever." 2025 WL 437743 at *4. The court dismissed the plaintiffs' claims for breach of contract, breach of the implied covenant, and violation of the Washington Consumer

February 26, 2025
Page 2

Protection Act. The same reasoning defeats Appellant's newly raised "price increase" theory.

          Respectfully,

          FENWICK & WEST LLP

          */s/ Brian D. Buckley*

          Brian D. Buckley

cc:    All Counsel of Record

# EXHIBIT A

2025 WL 437743
Only the Westlaw citation is currently available.
United States District Court, W.D. Washington,
at Seattle.

IN RE AMAZON PRIME VIDEO LITIGATION

NO. 2:24-cv-186
|
Signed February 7, 2025

### ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

Barbara Jacobs Rothstein, United States District Court Judge

### I. INTRODUCTION

**\*1** This matter comes before the Court on a Motion to Dismiss filed by Defendant Amazon.com, Inc. ("Amazon"). Dkt. No. 54. Plaintiffs, annual subscribers to Amazon's Prime membership program, bring this putative class action against Amazon asserting claims for breach of contract, breach of the covenant of good faith and fair dealing, and violation of the Washington Consumer Protection Act. Having reviewed the briefs and exhibits filed in support of and in opposition to this motion, and the relevant caselaw, the Court finds and rules as follows.

### II. BACKGROUND

Amazon Prime ("Prime") is a subscription service that Amazon has offered consumers since 2005. Consol. Class Act. Compl., ("CCAC"), Dkt. No. 49, ¶ 24. To join Prime, subscribers currently pay either an annual fee of $139 or $14.99 a month, in exchange for a number of benefits, including access to certain shipping benefits [1] on eligible products available at Amazon.com; the streaming television and movie library known as Amazon Prime Video; and Amazon Music, a podcast and music streaming service, among other benefits. CCAC, ¶ 25.

In December 2023, Amazon notified its Prime members that it would start showing commercials on its Prime Video streaming service, which until then had been essentially ad-free. Amazon offered members the option of signing up to watch Prime Video without commercials, for an additional fee of $2.99 a month. This change went into effect on January 29, 2024. *See, e.g., id.*, ¶ 42.

Two of the named Plaintiffs chose to pay the additional fee; five chose not to. CCAC, ¶¶ 41-54. Plaintiffs bring this lawsuit on behalf of themselves and a putative class of "[a]ll persons in the United States who paid an annual membership fee for Amazon Prime between January 30, 2023, and December 26, 2023." *Id.*, ¶ 55. Plaintiffs claim that Amazon's introduction of commercials to Prime Video, combined with the $2.99-per-month opt-out provision, constituted a "price increase" implemented during the course of Plaintiffs' annual subscription, in breach of the terms and conditions governing their memberships. CCAC, ¶¶ 64-70. Plaintiffs also assert a claim for breach of the implied covenant of good faith and fair dealing; and a violation of the Washington Consumer Protection Act ("CPA"), RCW §§ 19.86.010, *et seq. Id.*, ¶¶ 71-94.

### III. DISCUSSION

#### A. Standard on a Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Dismissal is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008). In opposing a motion to dismiss, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

#### B. First Claim for Relief: Breach of Contract

**\*2** Plaintiffs' First Claim for Relief is for breach of contract. CCAC, ¶¶ 64-70. Under Washington law, "[a] breach of contract is actionable only if the contract imposes a duty,

the duty is breached, and the breach proximately causes damage to the claimant." *Marquez v. Amazon.com, Inc.*, 69 F.4th 1262, 1270 (11th Cir. 2023) (citing *Nw. Indep. Forest Mfrs. v. Dep't of Lab. & Indus.*, 78 Wn. App. 707 (1995)). "[O]f course, if an action is permitted by the contract, the performance of that action is not a breach." *Id.* (citing *Myers v. State*, 152 Wn. App. 823 (2009)). The questions presented by Amazon's request for dismissal of the breach-of-contract claim are which terms govern the parties' relationship, and whether those terms were breached.

### 1. Whether the Prime Video Terms Apply to Plaintiffs' Claims

At issue in this lawsuit are provisions found in two distinct contracts: the Amazon Prime Terms & Conditions ("Prime Terms"), and the Amazon Prime Video Terms of Use ("Video Terms"). *See* Buckley Decl., Exs. A & C. [2] It is undisputed that Plaintiffs' Prime memberships are governed by the Prime Terms. Plaintiffs argue that in addition, the parties are bound by the Video Terms, and that Amazon has breached in particular the final sentence of Section 6.e. of those Video Terms. Section 6.e. provides:

> **6. Additional Terms** ... e. **Amendments**. Amazon reserves the right to make changes to this Agreement for legal or regulatory reasons; for security reasons; to enhance existing features or add additional features to the Service; to reflect advancements in technology; to make reasonable technical adjustments to the Service; and to ensure the ongoing operability of the Service at any time by posting the revised terms in connection with the Service or on your Video Marketplace (noted [at a hyperlink accessed] here). You will be able not to accept these changes by canceling your membership at any time. To the maximum extent permitted by law, your continued use of the Service or Software following any changes will constitute your acceptance of such changes. However, **any increase in subscription fee will not apply until your subscription is renewed.** Video Terms, § 6.e., Buckley Decl., Ex. C (emphasis added).

While conceding that Plaintiffs' memberships may be governed by some of the provisions in the Video Terms, Amazon denies that those memberships are as a general matter governed by all of the Video Terms, including in particular Section 6.e., quoted above. Amazon argues that instead, the Video Terms generally apply to Amazon Prime Video-only memberships, as opposed to Amazon Prime memberships (like Plaintiffs'). While access to Prime Video is a benefit included in Amazon Prime, the Prime Video library can also be accessed as a separate, stand-alone streaming service, available for $8.99 a month. Thus, a threshold question on this Motion to Dismiss is whether Plaintiffs' memberships are governed by the Video Terms and, most importantly to Plaintiffs' claims, by Section 6.e. of that agreement.

Plaintiffs argue that the Prime Terms, which undisputedly govern their Prime memberships, incorporate the Video Terms in their entirety. The Prime Terms provide, in relevant part:

> Welcome to the terms and conditions ("Terms") for Amazon Prime ... Please note that your use of the Amazon.com website and Prime membership are also governed by the agreements listed and linked to below, as well as all other applicable terms, conditions, limitations, and requirements on the Amazon.com website, all of which (as changed over time) are incorporated into these Terms. If you sign up for a Prime membership, you accept these terms, conditions, limitations, and requirements. Prime Terms, Buckley Decl., Ex. A.

**\*3** One of the "agreements listed and linked to below" is a hyperlink for the "Amazon Video Terms of Use," which takes the user to the webpage displaying the Video Terms.

Plaintiffs argue—and the Court agrees—that this mechanism incorporates the Video Terms by reference into the Prime Terms governing Plaintiffs' Prime memberships. *See Satomi Owners Ass'n v. Satomi, LLC*, 167 Wn. 2d 781, 801 (2009) ("If the parties to a contract clearly and unequivocally incorporate by reference into their contract some other document, that document becomes part of their contract.").

Defendants contend (without specific citation to authority or evidence) that while "certain provisions in the Prime Video Terms would cover Plaintiffs' *use* of the service, their *Prime* subscriptions, including the price, are governed by the *Prime* Terms." Def.'s Mot. to Dismiss at 9. But neither the plain language of the incorporating provision of the Prime Terms, quoted above, nor any specific provision in the Video Terms themselves, makes this broad distinction. It would have been quite simple for Amazon—which after all drafted the contract—to include language clarifying which provisions of the Video Terms applied in which situations if this distinction had been intended. With some narrow exceptions not at issue in this motion, it did not.[3] Accordingly, the Court concludes that as a general matter, both the Prime Terms and the Video Terms—to the extent they do not conflict, and except where the plain language of the agreements specifically provides otherwise—govern Plaintiffs' Prime memberships.

### 2. Whether the Introduction of Advertisements to Prime Video Breached the Video Terms

Having determined that the Video Terms govern the parties' relationship, the Court next turns to whether Amazon breached those terms. As noted above, it is Plaintiffs' position that Amazon breached its promise in the Video Terms that "any increase in subscription fee will not apply until your subscription is renewed" by introducing ads to its streaming service for all annual Prime members in January 2024, and providing subscribers the option of upgrading to an ad-free version of the service for an additional charge. CCAC, ¶ 66-68 (citing Video Terms, § 6.e.) ("Amazon increased the fees for the same service Plaintiffs and Class members paid upfront for. Amazon's unilateral price increase before annual subscribers' next subscription renewal violates Paragraph 6.e of the Amazon Prime Video Terms of Use.").

It is undisputed that Amazon never promised Prime subscribers—in writing or otherwise—that its streaming service was, or would remain, ad-free.[4] In contrast, both the Prime Terms and the Video Terms repeatedly reserve to Amazon the right to modify, add, or remove benefits associated with memberships in Amazon Prime and in Prime Video specifically. For example, the Prime Terms state under the heading "Other Limitations" that "[f]rom time to time, Amazon may choose in its sole discretion to add or remove Prime membership benefits." Buckley Decl., Ex. A at 2. The Video Terms contain several similar provisions: "[o]ffers and pricing for subscriptions (also referred to at times as memberships), the subscription services, the extent of available Subscription Digital Content, and the specific titles available through subscription services, may change over time and by location without notice (except as may be required by applicable law)." Buckley Decl., Ex. C, § 4.c.[5]; *see also id.*, § 6.d. ("Amazon reserves the right to suspend, or discontinue the Service, or any part of the Service, at any time and without notice (except as required by applicable law or set out above), and Amazon will not be liable to you should it exercise such rights, even if your ability to use Digital Content is impacted by the change.").

**\*4** Thus the question becomes whether Amazon's introduction of advertisements into its streaming service during Plaintiffs' subscription period constituted a change in membership benefits, which Amazon is authorized to make at any time, or a price increase, which Amazon can apply only when subscriptions are renewed. Contract interpretation requires "focusing on the objective manifestations of the agreement," and "imput[ing] an intention corresponding to the reasonable meaning of the words used," and giving the words in the contract "their ordinary, usual, and popular meaning." *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wn. 2d 493, 503–04 (2005) (en banc). Following these principles, the Court concludes that the "ordinary, usual, and popular meaning" of "increase in subscription fee"—a term that Plaintiffs do not argue is ambiguous—is an increase in the price paid in exchange for the benefits of the subscription, not a reduction in the value of the goods or services on offer while the price stays the same. Using this straightforward definition, Amazon's actions did not constitute a price increase, and it was therefore not obligated to wait for a subscription renewal to implement the change.

Plaintiffs insistently repeat—indeed, assume—without citation to authority or even much explanation, that Amazon's actions constituted an increase in price. *See, e.g.*, Pls.' Resp. at 1 ("[D]uring the annual term of Plaintiffs' and putative class members' contracts [Amazon] increased the cost of the annual subscription."). Plaintiffs' position is predicated on a flawed premise: that Plaintiffs (and other annual Prime

subscribers) purchased access to "ad-free Prime Video." *See, e.g.*, Pls.' Resp. at 2. But Plaintiffs did not purchase access to "ad-free Prime Video," let alone an ad-free Prime Video that Amazon promised would remain ad-free. They purchased access to Prime Video, subject to any changes that Amazon was contractually authorized "in its sole discretion" to make. Prime Terms, Buckley Decl., Ex. A at 2.

It is true that Amazon's introduction of commercials to its streaming service, for those Prime members who chose to pay more to keep their streaming ad-free, ultimately had an effect on those subscribers' wallets tantamount to a "price increase." The Court, however, is compelled to maintain the distinction between a benefit removal and a price increase for several reasons. First, this distinction is repeatedly reinforced in the contracts themselves. Benefit modifications and removals are expressly authorized throughout both contracts; price increases are circumscribed and allowed only according to certain conditions. *See supra.* The expressly distinct treatment of these things makes little sense if one could turn a benefit removal into a price increase by simply recharacterizing it as such.

Furthermore, the introduction of commercials to Prime Video alone did not result in any out-of-pocket price increase whatsoever. The subscription fee for subscribers who took no action did not change at all. The only subscribers who experienced any increase in price were those who voluntarily chose to incur one by affirmatively opting in to the $2.99-a-month charge to avoid ads. Thus, even under Plaintiffs' reasoning, it would be undisputed that Amazon could have simply started showing commercials without violating the terms of the contracts, if it had not also offered the $2.99-a-month opt-out. It would be an anomalous result (and one not supported by the language in the contracts) to hold that while Amazon could remove a benefit, it could not offer subscribers the option to purchase one without violating the parties' agreements.

Moreover, Plaintiffs have failed to meaningfully distinguish persuasive caselaw from this Western District and from the Eleventh Circuit, which held that the Prime Terms granted Amazon the authority to remove a benefit, even if it was one that (unlike here) had explicitly been promised when the subscribers signed up. *See In re Amazon Serv. Fee Litig.*, 705 F. Supp. 3d 1255 (W.D. Wash. 2023); *Marquez*, 69 F.4th at 1270. In *Service Fee*, Judge Lin dismissed Plaintiffs' claims, brought when Amazon stopped offering its Whole Foods Market delivery service for free and began charging a $9.95 fee for that same benefit, a fact pattern that is materially indistinguishable from the one now before this Court. *Service Fee*, 705 F. Supp. 3d at 1269 ("Taken together, the plain terms of the [Prime Terms] appear to establish Defendant's authority to suspend any benefits of Prime membership .... Because Defendant's conduct is authorized by the [Prime Terms], there is no breach, and Plaintiff's claim fails."). In *Marquez*, Amazon suspended its "Rapid Delivery" service in the early days of the COVID-19 pandemic. Based in part on the Prime Terms provision that "Amazon may choose ... to add or remove Prime membership benefits," the Eleventh Circuit held that "[t]he contract repeatedly qualified the rights of Prime subscribers and gave Amazon the authority to modify Prime benefits—including Rapid Delivery" and upheld Amazon's right to eliminate the benefit. 69 F.4th at 1270.

**\*5** Apparently the plaintiffs in those cases did not argue that Amazon's actions were tantamount to a price increase (as the governing agreements there did not explicitly prohibit one), but in both cases, Amazon had eliminated what the plaintiffs claimed was a material benefit that they had bargained and paid for through their annual subscription fee. Both courts nevertheless held that Amazon had the authority to do so based on the same provisions that govern the parties' relationship in this case. It is not a material distinction, as Plaintiffs here argue, that the Video Terms (and specifically Section 6.e.) apply in this case, but not in *Service Fee* or *Marquez*. Plaintiffs themselves argue here that—even in the absence of an explicit contractual provision proscribing it—a price hike is a material change that cannot be unilaterally imposed without breaching the agreement. *See* Pls.' Resp. at 6 ("Even if the Prime Terms alone did govern here, the term permitting removal of benefits couldn't encompass this price hike, as price is a material term that cannot be unilaterally changed."). While a price hike might constitute a breach, Plaintiffs in this case have failed to demonstrate that Amazon's actions are properly characterized as a price hike. Instead, the Court has concluded that what occurred was a change in benefits, which the contracts permit.

### C. Second Claim for Relief: Breach of the Covenant of Good Faith and Fair Dealing

Plaintiffs' Second Claim for Relief is for breach of the implied covenant of good faith and fair dealing. CCAC, ¶¶ 71-81. Plaintiffs contend that "Amazon's unilateral increase of Amazon Prime's price violates the spirit of the agreements

between Amazon on the one hand, and Plaintiffs and Class members on the other." *Id.*, ¶ 76. As discussed above, however, Amazon's introduction of ads to Prime Video and the attendant option to pay more to avoid them did not constitute a price increase, and therefore this premise of Plaintiffs' good faith claim necessarily fails. "Because Defendant's conduct was authorized by the [Prime Terms and Video Terms], Defendant had no duty that was required to be performed in good faith." *In re Amazon Serv. Fee Litig.*, 705 F. Supp. 3d at 1269 (citing *Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.*, 86 Wn. App. 732 (1997); *Marquez*, 69 F. 4th at 1274 ("Amazon did not breach the duty of good faith and fair dealing because it was non-existent in this instance.")).

In their Response to Amazon's Motion, Plaintiffs also argue that even if the introduction of ads was a benefit modification and not a price increase, the Video Terms still limit the circumstances in which Amazon was authorized to implement it. More specifically, Amazon breached its obligation to act in good faith, Plaintiffs contend, when it introduced ads for reasons other than those allowed in Section 6.d. of the Video Terms. That section provides:

> Amazon may modify the Service (including any subscription), any Digital Content and/or Software from time to time (i) to improve existing, or add new, functionality and/or features, (ii) to improve or maintain the user experience, (iii) for operational or technical reasons, (iv) to support maintaining quality and quantity of content included in the Service, or (v) for legal or security reasons. Buckley Decl., Ex. C., § 6.d.

Plaintiffs contend that there is at least a question of fact as to whether the introduction of ads served any of these purposes, and they argue that if it did not, Amazon's actions exceeded the bounds of good faith. Plaintiffs ignore, however, the final sentence of this section, which provides "Amazon reserves the right to suspend, or discontinue the Service, or any part of the Service, at any time and without notice." *Id.* This unequivocal statement removes any doubt that in this context, the meaning of the word "may" (as in "Amazon *may* modify the Service") is permissive rather than restrictive.

Accordingly, read as a whole, this section contains a list of circumstances under which Amazon may modify the Service, but clearly does not limit Amazon's authority to act to *only* those circumstances.

Plaintiffs fail to explain how a breach of the covenant of good faith might arise where a contract clearly grants Amazon such broad authority to modify its service; indeed, they fail to acknowledge or address the final sentence of Section 6.d. at all. As noted above, where "a Defendant's conduct was authorized by the [contracts] Defendant had no duty that was required to be performed in good faith." *In re Amazon Serv. Fee Litig.*, 705 F. Supp. 3d at 1269. Plaintiffs' claim for breach of the covenant of good faith and fair dealing is therefore dismissed as well.

### D. Third Claim for Relief: Violation of the Washington Consumer Protection Act

#### 1. Whether Federal Rule 9(b)'s Heightened Pleading Standard Applies

**\*6** Amazon seeks dismissal of Plaintiffs' Third Claim for Relief, for Violation of the Washington Consumer Protection Act. CCAC, ¶¶ 82-94. It first argues that Federal Rule 9(b)'s heightened pleading standard, for claims sounding in fraud, should apply. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). Amazon contends that Plaintiffs have failed to meet this standard.

Claims "that allege and depend upon a 'unified course of fraudulent conduct' as the basis of the claims 'sound in fraud,' and must be averred with particularity." *Nemykina v. Old Navy, LLC*, 461 F. Supp. 3d 1054, 1058 (W.D. Wash. 2020) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003)). The Court disagrees that Plaintiffs' CPA claims depend upon a "unified course of fraudulent conduct." Plaintiffs do aver (once) that Amazon's actions were a "classic 'bait and switch' " and that Amazon "misled" its Prime subscribers. CCAC, ¶ 89. But Plaintiffs do not claim Amazon was engaged in an "overarching fraudulent scheme," and their complaint never uses the words "fraud" or "fraudulent." *Cf. Nemykina*, 461 F. Supp. 3d at 1058 (finding heightened pleading standard applies where "Plaintiff repeatedly invokes claims of fraud"). They certainly do not claim Amazon acted with "an intent to deceive." *Id.* (citing *Vernon v. Qwest Commc'ns Int'l, Inc.*, 643 F. Supp. 2d 1256, 1265 (W.D. Wash. 2009)). Accordingly, Federal Rule 8(a)'s requirement of a

mere "short and plain statement of the claim showing that the pleader is entitled to relief" applies to Plaintiffs' CPA claim as currently pled.

### 2. Whether Plaintiffs Have Pled "Unfair or Deceptive Acts"

"To prevail in a private CPA claim, the plaintiff must prove (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation." *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn. 2d 27, 37 (2009) (citing *Hangman Ridge Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn. 2d 778, 784 (1986)). Amazon argues that Plaintiffs have failed to allege that Amazon committed unfair or deceptive practices. Based upon the analysis and conclusions already discussed above, the Court agrees.

"Deception exists if there is a representation, omission or practice that is likely to mislead a reasonable consumer." *Panag*, 166 Wn. 2d at 50 (citation omitted); *Young v. Toyota Motor Sales, U.S.A.*, 196 Wn. 2d 310, 317 (2020) (CPA plaintiff must "establish that the unfair or deceptive act or practice had the capacity to deceive a substantial portion of the public."). Plaintiffs aver that they "reasonably understood, based on their past dealings with Amazon, that by purchasing an annual Prime subscription they would receive access to ad-free Prime Video streaming for one year from the start date of their subscription and that they locked-in that price for one year," and that "Amazon unilaterally increased the prices for the same service by an additional $2.99 per month." CCAC, ¶¶ 86, 88.

As discussed at length above, however, Amazon's introduction of advertisements into its Prime Video streaming service was not a price increase; it was benefit modification, contemplated and authorized by the parties' governing agreements. Plaintiffs' "understanding" that Amazon would not modify the Prime Video service was *not* "reasonable," given the broad discretion those agreements granted Amazon to do just that. As the court held in the *Service Fee* litigation, where Amazon "is not liable for breach of contract because the Prime Terms [ ] expressly authorize the addition or removal of Prime benefits, ... any surprise or harm from the modification of benefits was 'reasonably avoidable' by Plaintiff," and Amazon's actions did not violate the CPA. 2024 WL 3460939, at *9 (W.D. Wash. July 18, 2024) (citing, inter alia, *Haywood v. Amazon.com, Inc.*, 2023 WL 4585362, at *7 (W.D. Wash. July 18, 2023) ("[E]xercising a right that a contract permits and is fully disclosed to the parties in advance is not an unfair or deceptive act or practice."). Because Plaintiffs have failed to plead an essential element of their CPA claim, it is hereby dismissed.

### IV. CONCLUSION

*7 For the foregoing reasons, Plaintiffs' claims are dismissed. Plaintiffs have requested that any dismissal be without prejudice and with leave to amend. Under Federal Rule 15(a), such "leave shall be freely given when justice so requires." Amazon opposes dismissal without prejudice, but has failed to articulate how leave to amend would cause it undue prejudice, or to demonstrate that Plaintiffs have acted in bad faith or with dilatory motive. Accordingly, the Court hereby DISMISSES Plaintiffs' Consolidated Class Action Complaint without prejudice. Plaintiffs may file an amended complaint, but shall do so, if at all, within 30 days of the date of this Order.

**All Citations**

Slip Copy, 2025 WL 437743

### Footnotes

1   The parties refer to this as "free" and fast shipping, but of course it is not exactly "free," as consumers pay the Prime membership fee to access it.

2   Plaintiffs in their Consolidated Class Action Complaint repeatedly refer to both of these documents, which are thus incorporated by reference into the CCAC. This Court therefore may, and does, rely on those documents

| | |
|---|---|
| | without converting this motion into one for summary judgment. *See* United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003) |
| 3 | The Video Terms do provide, for example, that "[i]f you are accessing the [Video]Service as part of a Prime membership, the cancellation and refund terms that apply to you are set forth in the Prime Terms of Use," making clear that Amazon knew how to make sure certain provisions applied under certain circumstances when it intended to. *See* Buckley Decl., Ex. C, § 4.d. |
| 4 | Plaintiffs make reference to a 2011 Amazon press release touting Prime Video as "unlimited, commercial free, instant streaming," but they do not argue any of the Plaintiffs saw, let alone relied upon, this representation, or that it in any way created a legal duty. CCAC, ¶ 28. |
| 5 | That provision goes on to say "[u]nless otherwise indicated, any price changes are effective as of the beginning of the next subscription period." As discussed below, however, the Court concludes Amazon's introduction of advertisements was not a "price change" and furthermore, Amazon did in fact "otherwise indicate" that the change in advertising would be effective January 29, 2024. *See* CCAC, ¶ 42 (referencing email from Amazon advising members of change starting January 29, 2024). |

End of Document     © 2025 Thomson Reuters. No claim to original U.S. Government Works.