

401 Union Street
5th Floor
Seattle, WA 98101

206.389.4510
Fenwick.com

Brian D. Buckley
bbuckley@fenwick.com | 206.389.4515

July 18, 2025

**Filed Electronically**

Molly C. Dwyer, Clerk of the Court
Office of the Clerk
U.S. Court of Appeals for the Ninth Circuit
P.O. Box. 193939
San Francisco, CA  94119-3939

Re:  *Dena Griffith, et al. v. Amazon.com, Inc.*, Case No. 24-5176
<u>Notice of Supplemental Authority</u>

Pursuant to Fed. R. App. P. 28(j), Amazon provides notice of *In re Amazon Prime Video Litig.* ("*Prime Video*"), No. 2:24-CV-186, Dkt. No. 83 (W.D. Wash. July 16, 2025), attached as **Exhibit A**.

Like this case, *Prime Video* addresses Amazon's right to change or remove benefits of the Amazon Prime membership.  *Prime Video* involved a change to Amazon's Prime Video service, which is available to Prime members as a benefit.  Amazon introduced limited advertisements on Prime Video, but offered users an optional ad-free version for $2.99/month.  Plaintiffs, all annual Prime members, challenged the change and asserted claims for breach of contract, breach of the implied covenant, and violation of the Washington Consumer Protection Act.

Amazon submitted a Notice of Supplemental Authority on February 26, 2025, which attached the court's first order dismissing all claims without prejudice.  Plaintiffs in *Prime Video* thereafter filed an amended complaint asserting the same claims—all of which the court dismissed with prejudice in her second dismissal order dated July 16, 2025 ("Order").  The district court reasoned that "[a]dopting Plaintiffs' interpretation that Amazon can modify Prime Video in only limited circumstances would render meaningless the numerous Prime Terms and Video Terms that expressly afford Amazon the authority to modify Prime benefits at any time." Ex. A at 9.  The Order confirms that Appellant's arguments on appeal to limit Amazon's authority to remove Prime benefits—here, free Whole Foods Market grocery delivery—are contrary to law and the plain contractual language.

                Respectfully,

                FENWICK & WEST LLP

                /s/ *Brian D. Buckley*

                Brian D. Buckley

cc:    All Counsel of Record

# EXHIBIT A

The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IN RE AMAZON PRIME VIDEO LITIGATION | NO. 2:24-cv-186<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' AMENDED CONSOLIDATED CLASS ACTION COMPLAINT** |

## I.   INTRODUCTION

Before the Court is Defendant Amazon.com, Inc.'s Motion to Dismiss Plaintiffs' Amended Consolidated Class Action Complaint pursuant to Fed. R. Civ. P. 12(b). Dkt. No. 75. Plaintiffs oppose the motion. Dkt. No. 77. Having reviewed the briefs and exhibits filed in support of and in opposition to the motion, the record of the case, and the relevant legal authority, the Court will grant the motion. The reasoning for the Court's decision follows.

## II.   BACKGROUND

Amazon Prime ("Prime") is a subscription service that Amazon.com, Inc. ("Amazon") has offered consumers since 2005. Am. Consol. Class Act. Compl., ("ACCAC"), Dkt. No. 71, ¶ 24. To join Prime, subscribers currently pay either an annual fee of $139 or $14.99 a month, in exchange for a number of benefits, including access to certain shipping benefits on eligible

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS

- 1

products available at Amazon.com; the streaming television and movie library known as Amazon Prime Video ("Prime Video"); and Amazon Music, a podcast and music streaming service, among other benefits. ACCAC, ¶ 25. In December 2023, Amazon notified its Prime subscribers that it would start showing commercials on its Prime Video streaming service, which until then had been essentially ad-free. Amazon offered Prime subscribers the option of signing up to watch Prime Video without commercials, for an additional fee of $2.99 a month. *Id*. at ¶ 39. This change went into effect on January 29, 2024. *Id*.

In September 2024, Plaintiffs—all annual Prime subscribers—filed a consolidated class action complaint, alleging that Amazon had breached the terms and conditions governing their prime memberships.[1] Consol. Class Act. Compl. ("CCAC"), Dkt. No. 49. Plaintiffs filed the lawsuit on behalf of themselves and a putative class of "[a]ll persons in the United States who paid an annual membership fee for Amazon Prime between January 30, 2023, and December 26, 2023." CCAC ¶ 55. Plaintiffs claimed that Amazon's introduction of commercials to Prime Video, combined with the $2.99-per-month opt-out provision, constituted a "price increase" implemented during the course of Plaintiffs' annual subscription, in breach of the terms and conditions governing their memberships. CCAC ¶¶ 64-70. Plaintiffs also asserted claims for breach of the implied covenant of good faith and fair dealing and violation of the Washington Consumer Protection Act ("WCPA"), RCW §§ 19.86.010. *Id*. ¶¶ 71-94.

Amazon moved to dismiss the consolidated class action, and, in February 2025, this Court granted the motion with leave to amend. Dkt. Nos. 54, 70. On March 7, 2025, Plaintiffs filed the

---

[1] This proceeding is the consolidation of proposed class actions *Napoleon v. Amazon.com, Inc*., 2:24-cv-00186-BJR; *Gianne v. Amazon.com, Inc*., 2:24-cv-00309-BJR; *Peterson v. Amazon.com, Inc*., 2:24-cv-00364-BJR; and *Milkes v. Amazon.com., Inc*., 2:24-cv-00728-BJR.

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS
- 2

current complaint, which largely asserts the same factual allegations as previously alleged and states the same causes of action: breach of contract, breach of the implied covenant of good faith and fair dealing, and violation of the WCPA. ACCAC ¶¶ 67-98. Once again, Amazon moves to dismiss Plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b). Dkt. No. 75.

### III. DISCUSSION

#### A. Standard on a Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Dismissal is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008). In opposing a motion to dismiss, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

#### B. First Claim for Relief: Breach of Contract

Plaintiffs allege that Amazon breached the terms of the parties' agreement. To prevail on a breach of contract claim in Washington, Plaintiffs must show that: (1) the contract imposes a duty, (2) the duty was breached, (3) and the breach proximately caused damages to Plaintiffs. *Nw. Indep. Forest Mfrs. v. Dep't of Lab. & Indus.*, 78 Wash. App. 707, 712, 899 P.2d 6 (1995) (citing *Larson v. Union Investment & Loan Co.*, 168 Wash. 5, 10 P.2d 557 (Wash. 1932).

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS

- 3

1.     **The Terms that Govern the Parties' Agreement**

At issue in this lawsuit are provisions found in two contracts: the Amazon Prime Terms & Conditions ("Prime Terms") and the Amazon Prime Video Terms of Use ("Video Terms"). *See* Dkt. No. 76, Buckley Decl., Exs. A & C.[2] It is undisputed that Plaintiffs' Prime memberships are governed by the Prime Terms. In granting Amazon's previous motion to dismiss, this Court determined that the parties are also bound by the Video Terms, a point Amazon does not contest for purposes of the instant motion. Dkt. No. 75 at 3 ("Amazon assumes but does not concede that 'both the Prime Terms and the [Video] Terms—to the extent that they do not conflict, and except where the plain language of the agreements specifically provides otherwise—govern Plaintiffs' Prime memberships.'").

2.     **Analysis**

In the first consolidated class action complaint, Plaintiffs argued that Amazon's introduction of commercials to Prime Video "increased the subscription fee of the Prime subscription by requiring Prime members to pay $2.99 to receive the same benefits Amazon agreed to provide when Plaintiffs paid for their annual subscription." Dkt. No. 49 at ¶ 33. According to Plaintiffs, this constituted an impermissible mid-subscription price increase in contravention of section 6e of the Video Terms, which states: "[A]ny increase in subscription fee will not apply until your subscription is renewed." Dkt. No. 76, Buckley Dec. Ex C Video Terms at § 6e.

This Court disagreed, concluding that Amazon's introduction of advertisements into Prime

---

[2] Plaintiffs in their amended Consolidated Class Action Complaint repeatedly refer to both of these documents, which are thus incorporated by reference into the ACCAC. This Court therefore may, and does, rely on those documents without converting this motion into one for summary judgment. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS

- 4

Video during Plaintiffs' Prime subscription period constituted a change in subscription benefits as opposed to a price increase and, therefore, did not violate section 6e:

> The Court concludes that the 'ordinary, usual, and popular meaning' of 'increase in subscription fee'—a term that Plaintiffs do not argue is ambiguous—is an increase in the price paid in exchange for the benefits of the subscription, not a reduction in the value of the goods or services on offer while the price stays the same. Using this straight-forward definition, Amazon's actions did not constitute a price increase, and it was therefore not obligated to wait for a subscription renewal to implement the change.
>
> Plaintiffs insistently repeat—indeed, assume—without citation to authority or even much explanation, that Amazon's actions constituted an increase in price. Plaintiffs' position is predicated on a flawed premise: that Plaintiffs (and other annual Prime subscribers) purchased access to 'ad-free Prime Video.' But Plaintiffs did not purchase access to 'ad-free Prime Video,' let alone an ad-free Prime Video that Amazon promised would remain ad-free. They purchased access to Prime Video, subject to any changes that Amazon was contractually authorized 'in its sole discretion' to make.
>
> It is true that Amazon's introduction of commercials to its streaming service, for those Prime members who chose to pay more to keep their streaming ad-free, ultimately had an effect on those subscribers' wallets tantamount to a 'price increase.' The Court, however, is compelled to maintain the distinction between a benefit removal and a price increase for several reasons. First, this distinction is repeatedly reinforced in the contracts themselves. Benefit modifications and removals are expressly authorized throughout both contracts; price increases are circumscribed and allowed only according to certain conditions. The expressly distinct treatment of these things makes little sense if one could turn a benefit removal into a price increase by simply recharacterizing it as such.
>
> Furthermore, the introduction of commercials to Prime Video alone did not result in any out-of-pocket price increase whatsoever. The subscription fee for subscribers who took no action did not change at all. The only subscribers who experienced any increase in price were those who voluntarily chose to incur one by affirmatively opting in to the $2.99-a-month charge to avoid ads. Thus, even under Plaintiffs' reasoning, it would be undisputed that Amazon could have simply started showing commercials without violating the terms of the contracts, if it had not also offered the $2.99-a-month opt-out. It would be an anomalous result (and one not supported by the language in the contracts) to hold that while Amazon could remove a benefit, it could not offer subscribers the option to purchase one without violating the parties' agreements.

Dkt. No. 70 at 8-9 (internal citations omitted). This Court then dismissed Plaintiffs' breach of contract claim.

In the instant complaint, Plaintiffs acknowledge, as they must, this Court's conclusion that the addition of commercials to Prime Video mid-subscription did not constitute a price increase in violation the parties' agreements. Nevertheless, Plaintiffs argue that the foregoing conclusion was based on the faulty premise that Amazon "removed" a benefit—*i.e.*, ad-free Prime Video, when in fact, Amazon's decision to add commercials to Prime Video constituted a "modification" to the Prime benefits. Plaintiffs concede that they still have access to Prime Video—the Prime membership "benefit"—but argue that Amazon improperly "modified" the benefit by removing its ad-free nature in contravention of section 6b of the Video Terms. Section 6b of the Video Terms states:

> Amazon may modify the [] Service . . . from time to time (i) to improve existing, or add new, functionality and/or features, (ii) to improve or maintain the user experience, (iii) for operational or technical reasons, (iv) to support maintaining quality and quantity of content included in the Service, or (v) for legal or security reasons. . . . Amazon reserves the right to suspend, or discontinue the Service, or any part of the Service, at any time without notice (except as required by applicable law or set out above), and Amazon will not be liable to you should it exercise such rights, even if your ability to use Digital Content is impacted by the change.

Dkt. No. 76 Buckley Dec. Ex. C, § 6d. According to Plaintiffs, the first sentence of section 6b necessarily limits the circumstances in which Amazon is authorized to implement modifications to Prime Video and Amazon breached this provision when it introduced commercials to Prime Video for reasons other than one of the five circumstances enumerated in the first sentence.

This Court rejected this same argument when granting Amazon's first motion to dismiss, noting that Plaintiffs' argument ignores the final sentence of section 6d that provides "Amazon reserves the right to suspend, or discontinue the Service, or any part of the Service, at any time

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS

- 6

1  and without notice," and concluded:

2  > This unequivocal statement removes any doubt that in this context, the meaning of the word 'may' (as in 'Amazon *may* modify the Service') is permissive rather than restrictive. Accordingly, read as a whole, this section contains a list of circumstances under which Amazon may modify the Service, but clearly does not limit Amazon's authority to act to *only* those circumstances.

5  Dkt. No. 70 at 12 (emphasis in original).

6  Nevertheless, Plaintiffs disagree with this Court's prior interpretation of section 6d, arguing that the word "may" should be interpreted as restrictive rather than permissive—*i.e.*, "may" limits Amazon's authority to modify Prime Video to only the five enumerated circumstances. Once again, this Court disagrees with Plaintiffs. In interpreting the word "may," this Court must determine how the word is used in context. *See Plintron Technologies USA, LLC v. Phillips*, 2024 WL 1557661, * 2 (W.D. Wash. April 10, 2024) ("Because interpretation of [may] depends on how it is used in context, there is no binding case law for the Court to rely on and each case is different. Thus, the context and language in the clause is critical to the Court in making its determination."). First, the Court notes the bedrock principle that undefined words in contracts should be given their "plain, ordinary, and popular meaning." *Nishikawa v. U.S. Eagle High, LLC*, 138 Wash. App. 841, 849, 158 P.3d 1265 (2007). The word "may" is a modal verb that is "used to say that something is possible." *Plintron Technologies USA, LLC v. Phillips*, 2024 WL 1557661, * 2 (W.D. Wash. April 10, 2024) (quoting May, Oxford English Dictionary (2024)); *see also QBE Speciality Insurance Company v. Uchiyama*, 2023 WL 6796159, *11 (D. Hawai'i Oct. 13, 2023) citing Merriam Webster Dictionary ("A plain reading of the term 'may' is that it is 'used to indicate possibility or probability.'"); *Blueshield v. State Off. of Ins. Com'r*, 131 Wash. App. 639, 650, 128 P.3d 640 (2006) (explaining that "the use of 'may' ... indicates that the

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS

- 7

provision is permissive and not binding") (internal quotation omitted). Therefore, the ordinary meaning of the word "may" suggests permission or possibility, not a requirement.

Second, section 6d must be read in context with the remaining Prime and Video Terms, which repeatedly state that Amazon has broad authority to modify Prime benefits, including Prime Video, at its discretion and without notice. *See* Dkt. No. 76 Buckley Dec. Ex. A, Prime Terms at 2 ("We may *in our discretion* change . . . *any* aspect of Prime membership, *without notice* to you.") (emphasis added); ("From time to time, Amazon may choose *in its sole discretion* to add or remove Prime membership benefits") (emphasis added); *Id*. at Ex. C, Video Terms at 2, 6 ("We may terminate your access to the Service, including any subscription available as part of the Service, *at our discretion without notice*) (emphasis added); ("the subscription services … may change over time and by location *without notice*") (emphasis added); ("We make *no guarantee* as to the availability of specific Subscription Digital Content") (emphasis added); *Id.* at Ex. B, Amazon Prime Benefits ("We may change these benefits occasionally as outlined in the Amazon Prime Terms & Conditions.").[3] And, of course, the final sentence of section 6d provides that "Amazon reserves the right to suspend, or discontinue the Service, or *any part* of the Service, *at any time* and *without notice.*" *Id*. at Ex. C, Video Terms at 7. As this Court has already concluded, this unequivocal statement removes any doubt that in this context, the meaning of the word "may" is permissive not restrictive. Accordingly, once again this Court concludes that read as a whole, section 6d contains a list of circumstances under which Amazon may modify Prime

---

[3] The webpage listing the suite of Amazon Prime benefits ("Prime Benefits page") is hyperlinked at the Prime Terms. Dkt. No. 76 Buckley Dec. Ex. A Prime Terms at 2. The Court considers the Prime Benefits page because it is linked from and forms part of the Prime Terms. *See Khoya v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS

- 8

Video but does not limit Amazon's authority to act to *only* those circumstances.[4]

Plaintiffs argue that their interpretation of section 6d is at least reasonable and therefore their breach of contract claim must survive dismissal. This Court disagrees. Adopting Plaintiffs' interpretation that Amazon can modify Prime Video in only limited circumstances would render meaningless the numerous Prime Terms and Video Terms that expressly afford Amazon the authority to modify Prime benefits at any time. This, of course, is contrary to basic contract interpretation and something the Court declines to do. *Dental Health Servs., Inc. v. Regul. Ins. Advisors, LLC*, 2020 WL 7385735, at *2 (W.D. Wash. Dec. 16, 2020) (quoting *Mastrobuono v.*

---

[4] Plaintiffs also argue that this Court incorrectly determined that the last sentence of section 6d should be read as giving the first sentence of section 6d a more expansive meaning. To the contrary, Plaintiffs argue, the last sentence of section 6d "expressly limits Amazon's reserved rights, 'as required by law or as set out above'—*i.e.* the modification limitations." ACCAC at ¶ 33. In making this argument, Plaintiffs fail to cite section 6d in its entirety. The full provision states:

> Amazon may modify the [] Service . . . from time to time (i) to improve existing, or add new, functionality and/or features, (ii) to improve or maintain the user experience, (iii) for operational or technical reasons, (iv) to support maintaining quality and quantity of content included in the Service, or (v) for legal or security reasons. **If you are located in EU or the UK (or otherwise required by applicable law) and such changes materially and adversely impact the usability of the Services ("Material Changes") a) we will notify you via email or other electronic communication regarding the scope, time and reason for the Material Change at least 30 days before they take effect and b) you may also cancel the Service at any time within 30 days after the Material Changes take effect, and we will give you, if applicable, a prorated refund of any fees paid for the billing period of your membership.** Amazon reserves the right to suspend, or discontinue the Service, or any part of the Service, at any time without notice (except as required by applicable law or set out above), and Amazon will not be liable to you should it exercise such rights, even if your ability to use Digital Content is impacted by the change.

Thus, when stated in full, it is clear that the phrase "as . . . set out above" refers to the "without notice" language immediately preceding the phrase. The only provision regarding notice "set out above" in section 6d is the one regarding EU and UK customers (which is inapplicable here). That is the only limit on Amazon's right to modify the service without notice.

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS

- 9

*Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995)) ("[A] document should be read to give effect to all its provisions and to render them consistent with each other."); *Nishikawa*, 138 Wn. App. at 850 (2007) ("Our goal is to interpret the agreement in a manner that gives effect to all the contract's provisions"); *Snohomish Cty. Pub. Transp. Benefit Area Corp. v. FirstGroup Am., Inc.*, 173 Wn.2d 829, 840, 271 P.3d 850 (2012) ("An interpretation of a contract that gives effect to all provisions is favored over an interpretation that renders a provision ineffective, and a court should not disregard language that the parties have used.").[5]

Lastly, even if the Court were to adopt Plaintiffs' interpretation of section 6d, Plaintiffs have not produced factual support demonstrating that Amazon's addition of commercials to Prime Video fell outside the enumerated circumstances. The December 28, 2024 email notifying Prime subscribers of the upcoming change to Prime Video states that the change "will allow [Amazon] to continue investing in compelling content and keep increasing that investment over a long period of time." Buckley Dec., Ex. D at 1.[6] This falls squarely within at least two of the enumerated circumstances in section 6b: "to improve existing, or add new, functionality and/or features" and "to support maintaining quality and quantity of content included in the Service." *Id.*, Ex. C at 6. Plaintiffs, on the other hand, simply speculate that the reason Amazon implemented the change was "to generate more revenue." ACCAC at ¶ 32. Raw speculation about Amazon's

---

[5] Plaintiffs also argue that the "general provisions" in the Video Terms that give Amazon discretion to change, suspend, or discontinue the Service at any time "conflict with the clear and more specifically applicable limitations in Video Terms Sections 6(d) and (e)" and therefore renders the agreements "ambiguous." ACCAC § 71. There is no ambiguity. As addressed above, Plaintiffs mischaracterize and misapply the unambiguous terms of Sections 6(d) and (e) of the Video Terms. Neither of those sections curtails, let alone conflicts with, Amazon's contractual rights.
[6] The December 28, 2024 is incorporated into the amended consolidated complaint, stating that it is how Plaintiffs' received notice of the upcoming change to Video Prime streaming; therefore it is considered by this Court in resolving the instant motion. *See Garner v. Amazon.com, Inc.*, 603 F. Supp. 3d 985, 992-93 (W.D. Wash. 2022) (incorporating by reference Amazon FAQs, terms, and privacy notice because while references were "few and far between," "the play[ed] and important [role] in the complaint).

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS

- 10

subjective motives is not a well-pled factual allegation that can save Plaintiffs' claims from dismissal. *Twombly*, 550 U.S. at 555. The only *facts* alleged show that Amazon's motive for modifying Prime Video was authorized by the unambiguous terms of section 6d.

Based on the foregoing, the Court concludes that Amazon's introduction of advertisements to Prime Video was not a price increase; it was a benefit modification, and such modification was specifically contemplated and authorized by the parties' governing agreements. Therefore, Plaintiffs' breach of contract claim must be dismissed as a matter of law. *See Marquez v. Amazon.com, Inc.*, 69 F.4th 1262, 1270 (11th Cir. 2023) (applying Washington law) ("[I]f an action is permitted by the contract, the performance of that action is not a breach."); *Haywood v Amazon.com, Inc.*, 2023 WL 4585362, at *4 (W.D. Wash. July 18, 2023) ("Failing to identify a breached contractual provision dooms a breach of contract claim.").

C.   **Second Claim for Relief: Breach of the Covenant of Good Faith and Fair Dealing**

Plaintiffs' second claim is that Amazon breached the implied covenant of good faith and fair dealing. With respect to this claim, Plaintiffs allege that they agreed to pay the annual Prime subscription fee "upfront to lock in the price of Amazon Prime and Prime Video, ad free, at a lower price" for one year but Amazon took away this benefit when it began to charge "additional fees" for ad-free video streaming, a service "they had long enjoyed" and "for which they had already paid." ACCAC ¶¶ 77-78. According to Plaintiffs, "Amazon's decision to increase the price for an already-bargained-for service under the pretext of exercising its discretion to modify the Prime Video service [] violated the covenant of good faith and fair dealing implied in the subscription terms." *Id*. at ¶ 82.

This Court rejected Plaintiffs' claim previously and does so again here. The claim rests on

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS

- 11

at least two false premises: (1) that paying the annual subscription "lock[ed] in" the right to ad-free video streaming at a set price for one year, and (2) that Amazon's introduction of ads to Prime Video and the attendant option to pay more to avoid them constituted a price increase, both contentions that this Court has already rejected. *See* Dkt. No. 70 at 8, 10 ("Plaintiffs did not purchase access to "ad-free Prime Video," let alone an ad-free Prime Video that Amazon promised would remain ad-free. They purchased access to Prime Video, subject to any changes that Amazon was contractually authorized 'in its sole discretion' to make."); ("Plaintiffs . . . have failed to demonstrate that Amazon's actions are properly characterized as a price hike. Instead, . . . what occurred was a change in benefits, which the contracts permit.").

In their response, Plaintiffs argue that their implied-covenant claim survives because section 6d of the Video Terms limits Amazon's discretion to modify Prime Video and Amazon must exercise this discretion "reasonably." However, as this Court has already concluded *infra*, section 6d is permissive; it does not limit Amazon's ability to modify Prime Video at any time and without notice. In short, because the challenged conduct is expressly and repeatedly authorized by both the Prime Terms and the Video Terms, Plaintiffs' implied-covenant claim fails and must be dismissed. *See Haywood v. Amazon.com, Inc.*, 2023 WL 4585362, *5 (W.D. Wash. July 18, 2023) ("[T]he implied duty claim cannot create new contractual obligations; it requires the parties to adhere to the contracts they create. Because Plaintiff identifies no contractual provisions that Amazon allegedly breached, Plaintiff has failed to state a cognizable claim for breach of implied duty of good faith and fair dealing."); *Est. of Carter v. Carden*, 11 Wash.App.2d 573, 583, 455 P.3d 197 (2019) (quoting *Badgett v. Sec. State Bank*, 116 Wash.2d 563, 807 P.2d 356, 360 (1991)) ("'There is in every contact an implied duty of good faith and fair dealing' but that duty 'is not free-floating, but 'arises only in connection with terms agreed to by

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS
- 12

1  the parties.'"); *In re Amazon Service Fee Litigation*, 705 F. Supp. 2d 1255, 1269 (W.D. Wash.
2  2023) (dismissing implied-covenant claim because Amazon's conduct was authorized by the
3  parties' agreements).

4              **D. Third Claim for Relief: Violation of the Washington Consumer Protection Act**

5        "To prevail in a private CPA claim, the plaintiff must prove (1) an unfair or deceptive act
6  or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a
7  person's business or property, and (5) causation." *Panag v. Farmers Ins. Co. of Wash*., 166 Wn.2d
8  27, 37, 204 P.3d 885 (2009) (citing *Hangman Ridge Stables, Inc. v. Safeco Title Ins. Co*., 105
9  Wn.2d 778, 784, 719 P.2d 531 (1986)). "Deception exists 'if there is a representation, omission or
10 practice that is likely to mislead' a reasonable consumer." *Id*. at 50. "Whether an act is unfair or
11 deceptive under the CPA is a question of law." *State v. LA Invest., LLC*, 2 Wn. App. 2d 524, 538,
12 410 P.3d 1183 (2018).

13       Plaintiffs allege that Amazon engaged in a "bait and switch" and "misled Prime
14 subscribers", claiming that they "reasonably understood, based on their past dealing with Amazon
15 . . . that Prime Video would remain ad-free." ACCAC ¶¶ 90, 93. This Court previously denied this
16 claim, concluding that "Plaintiffs' 'understanding' that Amazon would not modify the Prime
17 Video service was *not* 'reasonable,' given the broad discretion [the Prime Terms and Video
18 Terms] granted Amazon to do just that." Dkt. No. 70 at 14 (emphasis in original). Nothing in the
19 amended consolidated complaint calls this Court's conclusion into question. Because the Court
20 concludes that given the language reserving discretion to Amazon no Prime subscriber could
21 reasonably believe that Amazon could not modify Prime Video—particularly that it would remain
22 ad-free—during the subscription period, Plaintiffs have failed to allege an unfair or deceptive

23

24 ORDER GRANTING DEFENDANT'S
    MOTION TO DISMISS

25  - 13

practice by Amazon and its WCPA claim must be dismissed. *See Haywood v. Amazon.com, Inc.*, 2023 WL 4585362, *7 (W.D. Wash. July 18, 2023) ("[E]xercising a right that a contract permits and is fully disclosed to the parties in advance is not an unfair or deceptive act or practice.").

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs' claims are dismissed. As this is Plaintiffs' third attempt to plead viable claims against Amazon, and each time it has asserted substantially similar claims and theories, no further amendment will be permitted. Accordingly, the Court hereby DISMISSES Plaintiffs' Amended Consolidated Class Action Complaint with prejudice. This matter is HEREBY DISMISSED.

DATED this 16th day of July, 2025.

_____
Barbara Jacobs Rothstein
U.S. District Court Judge